**AGREED-UPON REDACTED COPY —MAY BE MADE PUBLIC**

**THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| OTI AMERICA, INC.<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Civil Action No. 06-00571<br>(Judge Lettow) |

# MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

William M. Weisberg
SULLIVAN & WORCESTER LLP
1666 K Street, NW
Washington, DC 20006
(202) 775-1200
(202) 293-2275 (fax)

*Counsel of Record for Plaintiff OTI America, Inc.*

Beth L. Jacobson
Joyce L. Tong
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2872
(617) 338-2880 (fax)

*Of Counsel for Plaintiff OTI America, Inc.*

August 22, 2006

**AGREED-UPON REDACTED COPY**
**—MAY BE MADE PUBLIC**

**TABLE OF CONTENTS**

**Page**


TABLE OF AUTHORITIES ....... iii

I. STATEMENT OF THE ISSUE ....... 1

II. STATEMENT OF THE CASE ....... 2

A. Background ....... 2

III. JURISDICTION ....... 2

IV. STANDARD OF REVIEW ....... 3

V. ARGUMENT ....... 4

A. The GPO's Improper Dismissal of OTI From the Procurement Violated Applicable Laws and Regulations, Lacked a Rational Basis, Was Arbitrary and Capricious, Was an Abuse of Discretion, and Prejudiced OTI ....... 4

1. Standard Of Review. ....... 4

2. The GPO Acted Unreasonably and Violated Procurement Regulations and Procedures in Eliminating OTI From the Competition ....... 5

(i) *The GPO Relied Upon Undisclosed Evaluation Criteria in Eliminating OTI from the Competition.* ....... 5

(ii) *The GPO Incorrectly Evaluated OTI's Product* ....... 7

(iii) *The GPO Accepted Materially Noncompliant Products in Violation of Applicable Procurement Standards* ....... 7

(iv) *The GPO Treated OTI Unequally Vis-à-Vis Other Competitors.* ....... 9

B. The GPO's Improper Actions Require the Imposition of a Temporary Restraining Order and a Preliminary Injunction. ....... 12

1. OTI is Likely to Succeed in its Claim Against the United States. ....... 13

2. OTI Will Suffer Irreparable Harm if Relief Is Not Granted. ....... 14

3. The Balance of Hardships Tips in OTI's Favor. ....... 15

4. A Temporary Restraining Order or Preliminary Injunction Will Serve the Public's Best Interest. ....... 16




{B0548198; 1}

VI. CONCLUSION ........................................................................................................17

APPENDIX A (attached)

**AGREED-UPON REDACTED COPY**
**—MAY BE MADE PUBLIC**

## TABLE OF AUTHORITIES

### FEDERAL CASES

Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365 (Fed. Cir. 1999)....6

Banknote Corp. of America, Inc. v. United States, 56 Fed. Cl. 377 (2003)....6, 9,10 11

Beta Analytics International, Inc. v. United States, 44 Fed. Cl. 131 (1999)....8

Beta Analytics International, Inc. v. United States, 67 Fed. Cl. 384 (2005)....11

Cardinal Maintenance Serv., Inc. v. United States, 63 Fed. Cl. 98 (2004)....14

DeMat Air, Inc. v. United States, 2 Cl. Ct. 197 (1983)....13

Doty v. United States, 53 F.3d 1244 (Fed. Cir. 1995)....10

Dubinsky v. United States, 43 Fed. Cl. 243 (1999)....5

EDP Enterprises, Inc. v. United States, 56 Fed. Cl. 498 (2003)....12

Gentex Corp. v. United States, 58 Fed. Cl. 634 (2003)....4, 5, 6, 10, 14, 15

Gulf Group, Inc. v. United States, 56 Fed. Cl. 391 (2003)....6

Gulf Group, Inc. v. United States, 61 Fed. Cl. 338 (2004)....3

Hawaiian Dredging Construction Co. v. United States, 59 Fed. Cl. 305 (2004)....5, 12, 14

Hospital Klean of Tex., Inc. v. United States, 65 Fed. Cl. 618 (2005)....2

Hunt Building Co. v. United States, 61 Fed. Cl. 243 (2004)....4, 5, 13, 14, 15, 16

Isratex, Inc. v. United States, 25 Cl. Ct. 223 (1992)....6

Mack Trucks, Inc. v. United States, 6 Cl. Ct. 68 (1984)....8, 9

Mangi Environmental Group, Inc. v. United States, 47 Fed. Cl. 10 (2000)....7, 8

OTI America, Inc. v. United States, 68 Fed. Cl. 108 (2005)....3

OTI America, Inc. v. United States, 68 Fed. Cl. 646 (2005)....5, 13, 14,



{B0548198; 1}

15

PGBA, LLC v. United States, 57 Fed. Cl. 655 (2003) ....................12

PGBA, LLC v. United States, 60 Fed. Cl. 196 (2003) ....................10

Portfolio Disposition Management Group LLC v. United States, 64 Fed. Cl. 1 (2005) ....................3

TLT Construction Corp. v. United States, 50 Fed. Cl. 212 (2001)....................9, 10

United Payors & United Providers Health Services, Inc. v. United States, 55 Fed. Cl. 323 (2002) ....................2, 3, 4, 5, 12, 14, 17

University Research Co., LLC v. United States, 65 Fed. Cl. 500 (2005)....................3, 4, 13, 16, 17

## DOCKETED CASES

Electro-Voice, Inc., B-278319, B-278319.2, 98-1 CPD 23 (GAO)....................3

## FEDERAL STATUTES

10 U.S.C. § 2305 (West 2005)....................6, 7

28 U.S.C. § 1491(b) ....................1, 2, 4, 13

5 U.S.C. § 706....................13

FAR Parts 15.303(b), 15.305(a), 15.308....................7

**AGREED-UPON REDACTED COPY**
**—MAY BE MADE PUBLIC**

**THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| OTI AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Civil Action No. 06-00571<br>(Judge Lettow) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff OTI America, Inc. ("OTI"), by its undersigned counsel, respectfully submits this Memorandum in Support of its Emergency Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction ("PI"), which OTI has filed concurrently with this Memorandum and with the Complaint in this case.[1]

OTI makes its motion pursuant to the Rules of the United States Court of Federal Claims ("RCFC") 65, Appendix C, and 28 U.S.C. § 1491(b), which grants this Court jurisdiction over this matter, and permits the Court to "award any relief that the court considers proper, including . . . injunctive relief." Id. § 1491(b)(2).

## I. STATEMENT OF THE ISSUE

Whether the United States of America, by and through the Government Printing Office ("GPO"), with assistance from the National Institutes of Standards and Technology ("NIST"), should be enjoined from: (1) proceeding with further testing and evaluation of various offerors' offerings, and (2) proceeding with award of a production contract or contracts to any offeror or

offerors, under Solicitation Number EP-2004 (and any contracts related thereto) (the "Contract"), unless and until the GPO fully and fairly evaluates OTI's product and until this Court has issued a decision on the merits.

## II. STATEMENT OF THE CASE

### A. Background

Solicitation Number EP-2004 (the "Solicitation") is part of the Department of State's Electronic Passport ("EP") program. Under an arrangement with the Department of State, the GPO is the actual procuring agency, with assistance from NIST. [

]

OTI, a company specializing in the design and production of electronic identity card and related products, was one of many initial offerors. OTI relies on the facts set forth in ¶¶ 30-56 of its Complaint, those pages which have been reproduced in Appendix A.

## III. JURISDICTION

As previously set forth, this Court has jurisdiction over post-award bid protests pursuant to 28 U.S.C. § 1491(b). Hosp. Klean of Tex., Inc. v. United States, 65 Fed. Cl. 618, 620 (2005)

---

[1] Pursuant to RCFC Rule 5.2(b)(3), OTI relies on ¶¶ 30-56 of its Complaint, those pages which have been

(granting a temporary restraining order); see also United Payors & United Providers Health Servs., Inc. v. United States, 55 Fed. Cl. 323, 328 (2002). The statute provides that in bid protest cases, this Court "may award any relief that [it] considers proper, including declaratory and injunctive relief." United Payors, 55 Fed. Cl. at 328, quoting 28 U.S.C. § 1491(b)(2).

The Court has jurisdiction to hear bid protests regarding this specific type of competition which results in "downselection" of offerors. See OTI Am., Inc. v. United States, 68 Fed. Cl. 108, 117 (2005). The Federal Acquisition Streamlining Act of 1994 did not deprive the Court of jurisdiction in this type of "downselect" case. Id. ("In light of the broad language of Subsection 1491(b) and Congress's expressed intent that the Subsection encompass the entire procurement process, ***the court holds that it has subject matter jurisdiction to consider OTI's claim***.") (internal citations omitted) (emphasis added); see also Electro-Voice, Inc., B-278319, B-278319.2, 98-1 CPD 23 (GAO).[2]

Even post-award government actions, if having the effect of making the ultimate procurement decision, are protestable. Here, by notifying OTI that it would not receive orders for further CLINs, the GPO downselected OTI from the competition for CLIN 6, the production contract CLIN. This Court has adopted Electro-Voice's reasoning and held that in downselect cases, the Court has jurisdiction to hear such bid protests. OTI Am., 68 Fed. Cl. at 117 (2005).

## IV. STANDARD OF REVIEW

This Court reviews the GPO's decision directly, using the standard set forth below. See Gulf Group, Inc. v. United States, 61 Fed. Cl. 338, 350 (2004); Portfolio Disposition Mgmt.

---

reproduced in Appendix A.

[2] "Although GAO decisions are persuasive on this Court, they are not binding." Univ. Research Co., LLC v. United States, 65 Fed. Cl. 500, 503 (2005) (citing Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728 (2000) and CACI Field Servs. v. United States, 13 Cl. Ct. 718 (1987), aff'd, 854 F.2d 464 (Fed. Cir. 1988)).

Group LLC v. United States, 64 Fed. Cl. 1, 3 (2005). OTI asks this Court to again review the GPO's actions.

Pursuant to RCFC 65, Appendix C, part V, and 28 U.S.C. § 1491(b)(2), Plaintiff must demonstrate the following: "1) that it will suffer irreparable injury if the procurement is not enjoined; 2) a reasonable likelihood of success on the merits of its claim; 3) that the harm suffered by it, if the procurement is not enjoined, will outweigh the harm to the Government and third parties; and 4) that granting injunctive relief serves the public interest." Univ. Research, 65 Fed. Cl. at 504. No one factor is dispositive, as the Court balances the four factors to determine whether granting the requested relief is appropriate. See id.

## V. ARGUMENT

### A. The GPO's Improper Dismissal of OTI From the Procurement Violated Applicable Laws and Regulations, Lacked a Rational Basis, Was Arbitrary and Capricious, Was an Abuse of Discretion, and Prejudiced OTI.

#### *1. Standard Of Review.*

The Court "shall review the agency's decision pursuant to the standards set forth in section 706 of title 5 of the Administrative Procedures Act ("APA")." 28 U.S.C. § 1491(b)(4); see also Univ. Research, 65 Fed. Cl. at 504 (granting preliminary injunction). Under the pertinent part of the APA, the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." Gentex Corp. v. United States, 58 Fed. Cl. 634, 648 (2003) (holding, in post-award bid protest, that evaluation of proposal was unfair as evaluation was not conducted on a level playing field).

The agency action should be set aside if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." United Payors, 55 Fed. Cl. at 328. The burden rests upon the Plaintiff to show by a

preponderance of the evidence that the agency acted without a rational basis. Gentex, 58 Fed. Cl. at 648; see also Hunt Bldg. Co. v. United States, 61 Fed. Cl. 243, 269 (2004) ("The protestor must show by a preponderance of the evidence that the agency's actions were either without a reasonable basis or in violation of applicable procurement law or procedure"). Alternatively, the protestor must show that there was a clear and prejudicial violation of the applicable statutes or regulations. See id. Although contracting officers are entitled to exercise their discretion, the "test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion." United Payors, 55 Fed. Cl. at 329 (emphasis added) (internal quotation marks omitted).

The protestor must also demonstrate that the error in the procurement process prejudiced the protestor, meaning that there was a "substantial chance" that had the error not occurred, the protestor would have received the contract." Id. at 329; Hawaiian Dredging Constr. Co. v. United States, 59 Fed. Cl. 305, 309 (2004) (granting, in a post-award bid protest, permanent injunctive relief). Here, OTI meets these requirements.

2. ***The GPO Acted Unreasonably and in Violation of Procurement Regulations and Procedures by Eliminating OTI From the Competition.***

(i) ***The GPO Relied Upon Undisclosed Evaluation Criteria.***

In the Federal Circuit, "[i]t is hornbook law that agencies must evaluate proposals and make awards based on the criteria stated in the solicitation. . . . The government may not rely upon undisclosed evaluation criteria in evaluating proposals." OTI Am., Inc., 68 Fed. Cl. at 655, quoting from Banknote Corp. of Am., Inc. v. United States, 56 Fed. Cl. 377, 386 (2003), aff'd, 365 F.3d 1345 (Fed. Cir. 2004); see also Gentex, 58 Fed. Cl. at 652 (making offerors aware of rules of the game is "fundamental to fairness and open competition"); Dubinsky v. United States,

43 Fed. Cl. 243 (1999) (holding that improper evaluations rendered the award arbitrary and capricious).

The Federal Acquisition Regulation ("FAR") requires that, "[a]ll factors and significant subfactors that will affect contract award and their relative importance shall be stated clearly in the solicitation". FAR Part 15.304(d) (West 2005); see also 10 U.S.C. § 2305 (West 2005). If an agency wishes to deviate from the Solicitation or relax the evaluation factors, the agency must notify the bidders. See Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365 (Fed. Cir. 1999) (holding that the agency's deviation from the solicitation was arbitrary and capricious and resulted in prejudicial error). Moreover, if a given factor is essential to the contract award and failure of that factor gives rise to termination, in the interest of fairness and competition, the bidders must have knowledge of the importance of that factor. See Isratex, Inc. v. United States, 25 Cl. Ct. 223, 229 (1992); see also Gentex, 58 Fed. Cl. at 652 (holding that the procurement process was unfair and prejudicial to the protester and stating " 'making offerors aware of the rules of the game in which they seek to participate is fundamental to fairness and open competition' ").

To determine whether the GPO relied upon an undisclosed factor to eliminate the offeror, the Court must assess whether: "1) the procuring agency used a different basis in evaluating the proposals than was disclosed and 2) the protester was prejudiced as a result – that it had a substantial chance to receive the contract award but for that error." See Banknote, 56 Fed. Cl. at 386-87; Gulf Group, Inc. v. United States, 56 Fed. Cl. 391, 397 (2003), citing Bean Stuyvesant, LLC v. United States, 48 Fed. Cl. 303 (2000). Here, the evidence demonstrates that the GPO again relied upon undisclosed evaluation criteria,[

**AGREED-UPON REDACTED COPY**
**—MAY BE MADE PUBLIC**

] the specifications of which were not set forth in the Solicitation, to eliminate OTI. OTI was prejudiced as a result.

The specifications of the [ ] used by the GPO to eliminate OTI were not in the Solicitation, nor were they ever disclosed to OTI. [

] were undisclosed evaluation criteria, in violation of FAR 15.304 and other applicable law, and fly in the face of the disclosed collaborative evaluation procedure that OTI relied upon.

(ii) ***The GPO Accepted Materially Noncompliant Products from [ ] in Violation of Applicable Procurement Standards.***

The GPO did not perform an evaluation based solely on the factors and subfactors in the Solicitation. See 10 U.S.C. § 2305(b)(1) ("The head of an agency shall evaluate sealed bids and competitive proposals and make an award based solely on the factors specified in the solicitation."); see also FAR Parts 15.303(b), 15.305(a), 15.308. The GPO is not permitted to consider noncompliant proposals. "[W]here a proposal is not compliant with the mandatory

technical requirements of the solicitation, the proposal is unacceptable for award." Mangi Envtl. Group, Inc. v. United States, 47 Fed. Cl. 10, 17, 19 (2000) (holding Mangi had a "substantial chance to receive the contract award because it submitted the only proposal meeting all of the government's requirements"), citing Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365 (Fed. Cir. 1999) (holding that where protestor can demonstrate that but for the violation of the awardee it had a substantial chance to receive the award, it will prevail).

The acceptance of materially noncompliant proposals violates applicable procurement guidelines. In Mangi, the agency improperly awarded the contract to a contractor that failed to conform to the Solicitation requirements. As such, the Court granted injunctive relief, declared the contract award null, void and without legal effect, and ordered the agency to either amend the solicitation to inform all offerors within the competitive range that it relaxed the solicitation's requirements or resolicit the contract and consider only those bids that are technically compliant). Mangi, 47 Fed. Cl. at 17; see also Beta Analytics Int'l, Inc. v. United States, 44 Fed. Cl. 131, 138 (1999) ("[I]f a protestor can demonstrate an instance in which a procuring official failed to abide by a mandatory solicitation provision, the protestor will prevail . . ."); Mack Trucks, Inc. v. United States, 6 Cl. Ct. 68, 71 (1984) ("Nonresponsive bids must be rejected to avoid unfairness to other contractors who could have made a better offer if their bid had varied from the terms of the [solicitation] … and to prevent the contracting officer from having to compare a bid which deviates from the solicitation with one that is in compliance.") (emphasis added).

Here, the GPO violated procurement regulations by accepting [ ] materially noncompliance product. Specifically, at a May 2006 interoperability conference attended by competitors for EP-2004 and the Department of State, [



{B0548198; 1}

], including OTI's. See Complaint at ¶¶ 44-46. OTI was given [ ]. Id. ¶ 47. Upon further testing, OTI discovered that [ ]. Id. ¶ 48. [ ] As the GPO accepted a materially non-compliant proposal or product in the procurement process, it violated applicable procurement standards.

(iii) ***The GPO Treated OTI Unequally Vis-à-Vis Other Competitors.***

Since [ ] has not been eliminated, the GPO must have permitted [ ] to correct the discovered chip problems. That same opportunity apparently was not granted to OTI, which according to the GPO suffered from less serious problems (the load modulation or durability issues). "A fundamental principle of government procurement is that [the agency] treat all offerors equally and consistently apply . . . evaluation factors." TLT Constr. Corp. v. United States, 50 Fed. Cl. 212, 216 (2001) (holding that the government was arbitrary and capricious in

evaluation); see also Banknote, 56 Fed. Cl. at 383 (noting that "it is beyond peradventure that a contracting agency must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria.") (emphasis added). Furthermore, "[w]hen procedural violations committed by the agency are egregiously removed from fairness, this constitutes an abuse of the agency's administrative discretion." Doty v. United States, 53 F.3d 1244, 1251 (Fed. Cir. 1995) (holding that the government was arbitrary and capricious in its determination that a dairy farmer acted in bad faith in violation of a 'Dairy Termination Program' contract).

The burden rests on OTI to prove that the GPO acted "unfairly or irrationally in evaluating the [protestor's] offer" and that OTI was prejudiced as a result of the disparate treatment. See Banknote, 56 Fed. Cl. at 383. The apparent discussions with and second chances given to the awardee, but not the protester "skew[ed] the playing field" in [ ] favor and resulted in disparate treatment. See Gentex, 58 Fed. Cl. at 652-53.

As the Solicitation set forth that [ ], and OTI passed such tests, the GPO acted arbitrarily and capriciously in eliminating OTI and accepting [ ] non-compliant passport, or giving it a second or third chance to cure its problems. The GPO denied [ ] This type of disparate treatment is not permitted under the law and this type of improper disparate treatment is forbidden under both the regulations and this Court's precedent. PGBA, LLC v. United States, 60 Fed. Cl. 196, 207 (2003), aff'd, 389 F.3d 1219 (Fed. Cir. 2004) (unequal treatment is arbitrary and capricious conduct); Banknote, 56 Fed. Cl. at 383; TLT Constr., 50 Fed. Cl. at 215.

(iv) ***The GPO Performed an Incorrect Technical Evaluation of OTI's Product.***

OTI's incorrect-technical evaluation claim is not a mere "naked claim" of disagreement with GPO's technical evaluation of the proposals with which it has been presented. Banknote, 56 Fed. Cl. at 384 (determining that "naked claims" of disagreement with evaluations "no matter how vigorous, fall far short of meeting the heavy burden of demonstrating that the findings in question were the product of an irrational process and hence were arbitrary and capricious."). The GPO acted arbitrarily, capriciously, and illegally in its technical evaluations.

Courts generally defer to the government's discretionary procurement decisions, particularly those based on a product's excellence or quality. See Beta Analytics Int'l, Inc. v. United States, 67 Fed. Cl. 384, 395 (2005) ("The evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of procurement officials, and thus reviewing courts give the greatest deference possible to these determinations."). However, where the protester demonstrates that that the agency's (here, the GPO's) technical evaluation(s) of the product at issue lacked a reasonable basis or was/were inconsistent with the agency's evaluation criteria, as is the case here, a protest is sustained. Id. (sustaining protest where the technical evaluation was arbitrary and capricious.).

GPO's conclusion, based on its technical evaluation, that OTI failed [ ] lacked any reasonable basis. OTI's product has been tested and shown to conform to [ ]; Complaint ¶¶ 38, 54. In three different independent lab tests, OTI's product passed all [ ] standards. Id. [

] Id.

**B. The GPO's Improper Actions Require the Imposition of a Temporary Restraining Order and a Preliminary Injunction.**

A bid protest "is an injunctive action to prevent a competitor from securing the fruits of a government contract. The preliminary relief is the same as the ultimate relief." Hawaiian Dredging Constr. Co. v. United States, 59 Fed. Cl. 305, 317 (2004) (granting permanent injunction, in post-award protest, as plaintiff was prejudiced by the GAO having made an improper determination). A plaintiff is entitled to a temporary restraining order and preliminary injunctive relief if: (1) there is a likelihood of success on the merits; (2) the plaintiff would suffer irreparable injury if injunctive relief were not granted; (3) the harm to plaintiff if injunctive relief were not granted would outweigh the harm to the government and third parties if the injunction were issued; and (4) granting the injunction would serve the pubic interest. EDP Enters., Inc. v. United States, 56 Fed. Cl. 498, 499 (2003) (temporary restraining order); PGBA, LLC v. United States, 57 Fed. Cl. 655, 656 (2003) (preliminary injunction).

As the Court often merges the preliminary hearing with a hearing on the merits (given that the preliminary and ultimate relief are usually the same), case law in which the Court has granted permanent injunctions is persuasive. See United Payors & United Providers Health Servs., Inc. v. United States, 55 Fed. Cl. 323 (2002) (the parties agreed to merge the court's consideration of preliminary and permanent injunctions; once the court established that the agency's awarding of the contract was arbitrary and capricious, the Court granted permanent injunctive relief and awarded plaintiff bid preparation and proposal costs as well as other costs );

Hunt Bldg. Co. v. United States, 61 Fed. Cl. 243 (2004) (granting plaintiff's request for permanent injunction); see also DeMat Air, Inc. v. United States, 2 Cl. Ct. 197 (1983) (granting permanent injunction after Court granted temporary restraining order as defendant could not maintain the status quo pending a hearing).

***1. OTI is Likely to Succeed in its Claim Against the United States.***

OTI is not asking this Court to adjudicate the contract award itself. This is the second time that OTI has had to come before this Court to enforce the FAR against GPO. In the first protest, the Court found that the GPO's unequal treatment of OTI and use of undisclosed evaluation criteria violated the standard of the APA, 5 U.S.C. § 706. See OTI Am., Inc. v. United States, 68 Fed. Cl. 646 (2005). Here, once again, the GPO has treated OTI differently from other contractors and used undisclosed evaluation criteria. OTI once again asks the Court to enjoin the GPO from proceeding with further evaluations under contract number EP-2004, or any other contract relating thereto, and from awarding any "production contracts" to any entity, unless and until OTI has been fully and fairly considered and permitted to participate in the procurement. OTI is confident that a fair evaluation would result in the GPO awarding the production contract to OTI.

To succeed in this claim, OTI must demonstrate a reasonable likelihood of success "on at least one of its [three] grounds for protesting." Univ. Research Co. LLC v. United States, 65 Fed. Cl. 500, 504 (2005). In short, OTI must show, based on at least one of the procurement flaws that OTI has identified, that GPO's actions lacked a rational basis or was contrary to law (and thus that GPO's determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law). See 28 U.S.C. § 1491(b)(4) (incorporating the standard of review in 5 U.S.C. § 706).

Several factors, each on its own, and certainly in combination with one another, indicate that GPO's non-disclosure of evaluation criteria, incorrect technical evaluation, acceptance of materially non-compliant products, and unequal treatment rise to the level of irrationality, and thus that OTI is likely to succeed in its challenge to GPO's decision. See, e.g., Cardinal Maint. Serv., Inc. v. United States, 63 Fed. Cl. 98 (2004) (granting permanent injunction in post-award bid protest to incumbent); Hunt Bldg. Co., 61 Fed. Cl. 243 (granting injunctive relief enjoining agency from awarding the contract and requiring resubmittal of proposals for contract as agency did not treat offers fairly); Hawaiian Dredging, 59 Fed. Cl. 305 (granting permanent injunction to post-award bid protester as plaintiff was prejudiced as a result of the agency making an improper determination); Gentex, 58 Fed. Cl. 634 (determining, in post-award bid protest, that agency did not conduct procurement on a level playing field, thus prejudicing plaintiff); United Payors, 55 Fed. Cl. at 328 (granting injunctive relief to post-award protestor as agency evaluated proposal incorrectly).

As detailed above, the GPO used undisclosed tests to eliminate OTI from competition, incorrectly evaluated OTI's product, allowed other companies to continue on in the process even in light of their product's failure to pass express solicitation guidelines, and treated OTI unequally. This conduct is arbitrary and capricious. OTI has demonstrated that it is likely to succeed in its bid protest and has again "passed over a major hurdle on the way to equitable relief." OTI Am., 68 Fed. Cl. at 659.

**2. *OTI Will Suffer Irreparable Harm if Relief Is Not Granted.***

Without injunctive relief OTI will suffer irreparable and uncompensatable injury since the only available remedy would be the recoupment of proposal preparation costs; OTI could not recover lost profits. See United Payors, 55 Fed. Cl. at 333 ("This type of loss, deriving from a lost opportunity to compete on a level playing field for a contract, has been found sufficient to

prove irreparable harm.") (internal citations omitted); see also Hunt Bldg. Co., 61 Fed. Cl. at 280. Lost profits due to an uneven playing field constitutes irreparable harm. See Gentex, 58 Fed. Cl. at 654, citing United Payors, 55 Fed. Cl. at 333; see also OTI Am., 68 Fed. Cl. at 659.

OTI will suffer a loss in revenues, a lost opportunity to compete for full agency deployment, a loss of the expenses it incurred in developing the product as well as damage to its reputation as a prospective manufacturer of passports for other countries. At the hearing on the Motions for Judgment on the Administrative Record in the previous protest before this Court, OTI's President, Ohad Bashan, testified [

] This Court found Mr. Bashan's testimony as credible and recognized this type of harm as irreparable harm. See OTI Am., 68 Fed. Cl. at 659. The situation now is exactly the same as Mr. Bashan testified last year with the equivalent, if not greater level of irreparable harm, now that OTI has invested an additional year of time, effort and money into the ePassport program.

### *3. The Balance of Hardships Tips in OTI's Favor.*

The balance of hardships tips unquestionably in favor of granting preliminary relief. The GPO's actions threaten to take away from OTI any meaningful opportunity to compete for this contract. As OTI recognizes time is of the essence here, OTI asked the Government for an agreement regarding a notification process of the continuation of the project similar to the de facto stay in the first protest in lieu of formally requesting a TRO or preliminary injunction in order to expedite the process. However, the Government refused to agree to any negotiated

agreement. Thus, the Government cannot now rely upon alleged "delay" as a reason for denying the TRO. In fact, as delay in awarding a new contract exists in all bid protests where preliminary relief is sought, "only in an exceptional case would [delay] alone warrant a denial of injunctive relief, or the courts would never grant injunctive relief in bid protests." Univ. Research, 65 Fed. Cl. at 514 (internal quotations omitted). This is not such an exceptional case where delay alone should warrant a denial of injunctive relief. For, the Government should produce the best working product. The GPO's elimination of OTI is not in the best interest of the public and OTI has demonstrated its extreme likelihood of success on the merits.

### *4. A Temporary Restraining Order or Preliminary Injunction Will Serve the Public's Best Interest.*

The underlying policy of soliciting numerous offers for a contract is to promote competition and fairness. "Generally, the public interest is served by ensuring that the Government procurement process is fair." Hunt Bldg. Co., 61 Fed. Cl. at 280. In fact, public interest is not served when a government contract is arbitrarily awarded or "contracting officials rush to save a few weeks and end up delaying contracts by many months." Univ. Research, 65 Fed. Cl. 515. If an injunction is not granted, the GPO's violations threaten to undermine the integrity of the competitive procurement process.

Furthermore, OTI recognizes that the GPO and the Department of State face a deadline within which to rollout a new electronic passport and that this program is an important aim and security interest of the United States. However, the most important aspect of national security is rolling out a product that works and is capable of providing the necessary level of security. If the GPO bends the rules for various vendors or accepts non-compliant products from those vendors, the rollout will not benefit national security but rather cause more security issues and delays. OTI merely asks that the GPO be held to the standards explicitly set forth in the Solicitation.

Only through compliance with the material technical requirements of the Solicitation will the United States achieve its security goals.

By granting injunctive relief, public confidence in the competitive process will be preserved. See id. Granting injunctive relief further serves the public interest by "protecting the integrity of the procurement system from unreasonable or irrational conduct and in ensuring that contracting agencies provide sufficient documentation to permit proper review of their actions." See United Payors, 55 Fed. Cl. at 334 (internal quotation marks omitted).

## VI. CONCLUSION

For the aforementioned reasons, OTI respectfully requests that this Court allow OTI's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. More specifically, Plaintiff respectfully requests that the Court enter an order enjoining the GPO from:

(a) proceeding with evaluation leading to the award of production contract(s) under solicitation number EP-2004; and

(b) granting any production portion of the contract to any entity, unless and until OTI is permitted to participate in this procurement and is fully and fairly evaluated on a level playing field with other contractors.

Respectfully submitted,

OTI AMERICA, INC.
By its attorneys,

August 22, 2006

/s/ William Weisberg
William M. Weisberg
SULLIVAN & WORCESTER LLP
1666 K Street, NW
Washington, DC 20006
(202) 775-1200
(202) 293-2275 (fax)

*Counsel of Record for Plaintiff OTI America, Inc.*

**AGREED-UPON REDACTED COPY**
**—MAY BE MADE PUBLIC**

Beth L. Jacobson
Joyce L. Tong
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800
(617) 338-2880 (fax)

*Of Counsel for Plaintiff OTI America, Inc.*