**AGREED-UPON REDACTED COPY — MAY BE MADE PUBLIC**

**THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

OTI America, Inc.

Plaintiff,

v.

The United States,

Defendant.

Civil Action No. 06-00571
(Judge Lettow)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**

William M. Weisberg
SULLIVAN & WORCESTER LLP
1666 K Street, NW
Washington, DC 20006
(202) 775-1200
(202) 293-2275 (fax)

*Counsel of Record for Plaintiff OTI America, Inc.*

Beth L. Jacobson
Joyce L. Tong
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800
(617) 338-2880 (fax)

*Of Counsel for Plaintiff OTI America, Inc.*

August 22, 2006

**AGREED-UPON REDACTED COPY**
**— MAY BE MADE PUBLIC**

TABLE OF CONTENTS

Page

Table of Authorities ........ ii

I. ISSUE PRESENTED ........ 1

II. STATEMENT OF THE CASE ........ 1

A. Background ........ 1

III. STANDARD ........ 2

IV. ARGUMENT ........ 3

A. The Government is Collaterally Estopped from Disputing the Jurisdictional Grounds of this Protest ........ 3

1. Standard. ........ 3

2. This Court has previously determined that it has jurisdiction over this type of protest. ........ 4

B. In the Event that the Government Is Not Collaterally Estopped from Asserting the Same Jurisdiction Argument as Last Year, this Court has Jurisdiction to Hear this Bid Protest as It is Part of Procurement. ........ 6

1. The GPO eliminated OTI as part of an ongoing competitive selection process. ........ 7

2. Mere use of a contract does not divest this court of jurisdiction over the entire procurement process. ........ 8

3. Authority from other sources likewise indicates that bid protest jurisdiction encompasses all forms of procurement. ........ 10

C. The Cases Relied Upon by the Government Do Not Support Its Assertion of Lack of Jurisdiction. ........ 12

V. CONCLUSION ........ 14



{B0548202; 1}

**AGREED-UPON REDACTED COPY — MAY BE MADE PUBLIC**

## TABLE OF AUTHORITIES

### FEDERAL CASES

A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700 (Fed. Cir. 1983) .......... 3, 6

Advanced System Tech., Inc. v. United States, 69 Fed. Cl. 474 (2006) .......... 5

Blue Dot Energy Co., Inc. v. United States, 61 Fed. Cl. 548 (2004) .......... 2

CACI Field Servs. v. United States, 13 Cl. Ct. 718 (1987) .......... 7

CCL, Inc. v. United States, 39 Fed. Cl. 780 (1997) .......... 9

Chapman Law Firm v. United States, 63 Fed. Cl. 519 (2005) .......... 11

Conscoop-Consorzia Fra Cooperative Di Prod. E Lavoro v. United States, 62 Fed. Cl. 219 (2004) .......... 11

Cubic Defense System v. United States, 45 Fed. Cl. 239 (1999) .......... 9

Davis/HRGM Joint Venture v. United States, 50 Fed. Cl. 539 (2001) .......... 12

Gulf Group Inc. v. United States, 61 Fed. Cl. 338 (2004) .......... 11

Hawaiian Dredging Construction Co. v. United States, 59 Fed. Cl. 305 (2004) .......... 7

Ingersoll-Rand Co. v. United States, 780 F.2d 74 (1985) .......... 12, 13

Labat-Anderson Inc. v. United States, 50 Fed. Cl. 99 (2001) .......... 6, 8, 11

Land v. Dollar, 330 U.S. 731 (1947) .......... 2

Manson Construction Co. v. United States, 64 Fed. Cl. 746 (2005) .......... 11

OTI America, Inc. v. United States, 68 Fed. Cl. 108 (2005) .......... 3, 4, 5, 6, 8, 12

OTI America, Inc. v. United States, 68 Fed. Cl. 646 (2005) .......... 4

Parklane Hosiery Co. v. Shore, 439 U.S. 322 (1979) .......... 3

RAMCOR Services Group, Inc. v. United States, 185 F.3d 1286 (Fed. Cir. 1999) .......... 5

Rocovich v. United States, 933 F.2d 991 (Fed. Cir. 1991) .......... 2

Scheuer v. Rhodes, 416 U.S. 232 (1974) .......... 3

University Research Co., LLC v. United States, 65 Fed. Cl. 500 (2005) .......... 7

W.R. Cooper General Contractor, Inc. v. United States, 843 F.2d 1362 (Fed. Cir. 1988) .......... 3

## ADMINISTRATIVE DECISIONS

Electro-Voice, Inc., B-278319, B-278319.2,
1998 WL 14952 (Comp. Gen. Jan 15, 1998) .......... 4, 5, 10

Matter of OTI America, Inc., B-295454, B-295455.3,
2005 WL 1994254 (Comp. Gen. Aug. 10, 2005) .......... 7

Professional Performance Development Group, Inc., B-294054.3,
2004 WL 2199476 (Comp. Gen. Sept. 30, 2004) .......... 10

Protest of C.M.P. Corp., GSBCA No. 9308-P,
1988 WL 44181 (G.S.B.C.A. Feb. 9, 1988) .......... 11

Protest of Rocky Mountain Trading Co. – Systems Division, GSBCA No. 10894-P,
1990 WL 212068 (G.S.B.C.A. Dec. 14, 1990) .......... 11

Sysorex Information System, Inc. v. Department of Air Force, GSBCA Nos. 13597-P,
13606-P, 1996 WL 317026 (G.S.B.C.A. June 6, 1996) .......... 11

Teledyne-Commodore, LLC - Reconsideration, B-278408.4,
1998 WL 826335 (Comp. Gen. Nov. 23, 1998) .......... 10

## FEDERAL STATUTES

41 U.S.C. § 403 .......... 5, 6

28 U.S.C. § 1491(b) .......... 9

28 U.S.C. § 1491(b)(1) .......... 1, 7

**AGREED-UPON REDACTED COPY**
**— MAY BE MADE PUBLIC**

**THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| OTI America, Inc.<br><br>Plaintiff,<br><br>v.<br><br>The United States,<br><br>Defendant. | Civil Action No. 06-00571<br>(Judge Lettow) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS FOR LACK OF JURISDICTION**

Plaintiff OTI America, Inc. ("OTI"), by its undersigned counsel, hereby opposes the Motion to Dismiss for Lack of Jurisdiction ("Government's Motion") filed by Defendant, the United States, by and through the Government Printing Office ("GPO"), and respectfully submits this memorandum in support of its opposition to the motion to dismiss.[1]

## I. ISSUE PRESENTED

Whether this Court has jurisdiction over this action under 28 U.S.C. § 1491(b)(1).

## II. STATEMENT OF THE CASE

### A. Background

Solicitation Number EP-2004 (the "Solicitation") is part of the Department of State's Electronic Passport ("EP") program. The GPO is the procuring agency under an arrangement

[1] Pursuant to Rule of the Court of Federal Claim 5.2(4)(b)(3), OTI attaches a six page excerpt of its Complaint filed on August 4, 2006 as Appendix A, the TRO hearing transcript from August 9, 2006 as Appendix B, and the jurisdiction hearing transcript from September 2, 2005 as Appendix C.

with the Department of State ("DOS"), and the National Institute of Science and Technology ("NIST"), another governmental agency, conducted testing pursuant to the Solicitation. [

]

OTI, a company specializing in the design and production of electronic identity card and related products, was one of many initial offerors and awardees. OTI relies on the facts set forth in ¶¶ 30-56 of its Complaint, those pages which have been reproduced in Appendix A, attached hereto.[2]

## III. STANDARD

In ruling on a motion to dismiss under RCFC 12(b)(1), the Court "is required to assume nonjurisdictional factual allegations to be true." Blue Dot Energy Co., Inc. v. United States, 61 Fed. Cl. 548, 552-53 (2004). If the movant disputes the jurisdictional facts alleged in the complaint, the court may weigh any additional relevant evidence to resolve the factual dispute. Land v. Dollar, 330 U.S. 731, 735 (1947); Rocovich v. United States, 933 F.2d 991, 994 (Fed.

[2] The Government asserts in its Motion that this is the third time that OTI has come before this Court seeking to be reinserted into the competition. See Government's Motion at 8 and n.3. OTI respectfully states that this is merely the second time that OTI has sought the Court's intervention. In December of 2004, unlike the contention of the Government, OTI did not actually file a protest with this Court. OTI was prepared to challenge, at the Court, the

Cir. 1991). If the facts show any possibility that the non-moving party might prevail on the claim, the court must deny the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362, 1364 (Fed. Cir. 1988).

## IV. ARGUMENT

### A. The Government is Collaterally Estopped from Disputing the Jurisdictional Grounds of this Protest.

#### *1. Standard.*

It is well settled in the Federal Circuit that "collateral estoppel is appropriate only if: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action." A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 702 (Fed. Cir. 1983). The Court has discretion to allow OTI, as plaintiff, to use collateral estoppel offensively against the defendant, the Government, as the Government previously litigated this same jurisdictional issue against OTI last year (the "first action") and such use of collateral estoppel would in no way be unfair to the Government. Id.; see also OTI Am., Inc. v. United States, 68 Fed. Cl. 108 (2005). As in this case there is mutuality of parties, the rationale for precluding the use of offensive collateral estoppel does not apply. See and compare Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-31 (1979) (granting federal courts broad discretion to determine when offensive collateral estoppel should be applied).

Here, the contested issue at the heart of the Government's Motion, subject matter jurisdiction, is identical to the one litigated and decided in the first action. See OTI Am., Inc.,

GPO's override of the Competition in Contracting Act stop work order in our first GAO protest when the GPO took corrective action and reinserted OTI into the competition.

68 Fed. Cl. 108 (whether this Court has subject matter jurisdiction over this type of procurement). Second, the issue was actually litigated in the first action as this Court required both parties to brief the issue, held a hearing on September 2, 2005 and rendered a detailed opinion regarding subject matter jurisdiction. See id.

Third, the issue of jurisdiction was vital to this Court's decision on the merits as without jurisdiction the Court could not afford OTI any relief.[3] See OTI Am., Inc. v. United States, 68 Fed. Cl. 646 (2005). The Court held that the GPO was arbitrary in eliminating OTI from competition, OTI suffered prejudice and that OTI should be reinstated into the competition. Id. Finally, and most important, the United States had a full and fair opportunity to litigate this issue. Indeed, the Court required briefing and held a hearing where the Government argued the issue before the Court. The United States cannot now contest the issue. Nothing has changed since the Court's last decision on jurisdiction. The simple facts are that the agency is still conducting procurement, albeit characterizing the competition as order fulfillment, and that the agency is still unfairly eliminating competitors during the procurement. Under this scenario, this action remains a bid protest on governmental procurement.

2. ***This Court has previously determined that it has jurisdiction over this type of protest.***

This Court previously adopted the line of reasoning of Electro-Voice which found that in "downselections", where a contract had already been awarded, the disappointed bidder could protest that action pursuant to statutory law. Electro-Voice, Inc., B-278319, B-278319.2, 1998 WL 14952 (Comp. Gen. Jan. 15, 1998). Likewise, this Court found that the Federal Acquisition Streamlining Act of 1994 did not deprive the Court of jurisdiction in this exact



{B0548202; 1}

**AGREED-UPON REDACTED COPY**
**— MAY BE MADE PUBLIC**

"downselect" case. OTI Am., Inc., 68 Fed. Cl. at 117 ("In light of the broad language of Subsection 1491(b) and Congress's expressed intent that the Subsection encompass the entire procurement process, the court holds that it has subject matter jurisdiction to consider OTI's claim.") (internal citations omitted) (emphasis added); see also Electro-Voice, 1998 WL 14952. The Court held that the Tucker Act granted the Court jurisdiction to review both pre-award and post-award bid protests. Moreover, the Court interpreted the following section of the Tucker Act:

> (b)(1) *the Unite[d] States Court of Federal Claims . . . shall have jurisdiction* to render judgment *on an action* by an interested party *objecting to* a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or *any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.*

OTI Am., Inc., 68 Fed. Cl. at 116, citing 28 U.S.C. § 1491(b)(1) (emphasis in original). The Court held that the Court had jurisdiction over the entire procurement process, no matter what form the procurement took, due to Congress' intent as well as the broad language from the Tucker Act quoted above. See RAMCOR Servs. Group, Inc. v. United States, 185 F.3d 1286, 1289 (Fed. Cir. 1999) ("The operative phrase 'in connection with' [procurement] is very sweeping in scope."); see also Advanced Sys. Tech., Inc. v. United States, 69 Fed. Cl. 474, 481 (2006) (same). This Court has recognized that "[t]he concluding portion of Paragraph (1) of Subsection 1491(b) is sufficiently broad that the form in which the competition takes place does not matter." OTI Am., Inc., 68 Fed. Cl. at 117. "Furthermore, when Congress enacted the ADRA in 1996, adding subsection (b) to the Tucker Act, its goal was to grant this court jurisdiction 'over the full range of procurement protest cases.' " OTI Am., Inc., 68 Fed. Cl. at 114, quoting H.R. Conf.

[3] Ironically, the Government recognized the jurisdiction of the Court in the first action by allowing OTI back into the competition and choosing not to appeal the Court's jurisdiction ruling.



{B0548202; 1}

Rep. 104-841, at 10 (1996). Congress has defined "procurement" to include "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 403.

Thus, this Court has already determined that it has jurisdiction over this action as the GPO's elimination of OTI was "in connection with a procurement or a proposed procurement." Id. As a result, so long as the agency was acting in the course of "one of the 'stages' in the process of acquiring [the property or services at issue]," that agency was conducting "procurement" for Tucker Act purposes. See also Labat-Anderson Inc. v. United States, 50 Fed. Cl. 99, 104 (2001) (emphasis added) (quoting 41 U.S.C. § 403(2)). In short, despite how an agency may characterize a given procurement, this action is a bid protest and this Court has jurisdiction if the substance of the agency's actions amounted to an elimination of a contractor from an ongoing competition.

As this Court explicitly considered the identical arguments raised by the Government here, and decided that under the Tucker Act, the Court of Federal Claims could hear protests in this specific scenario, the Government is now collaterally estopped from raising the same argument. See A.B. Dick Co., 713 F.2d at 702; OTI Am., Inc., 68 Fed. Cl. at 117. The Government, while acknowledging that this Court "disagreed with our jurisdictional argument finding that it had jurisdiction to hear OTI's claim," nevertheless makes the same arguments now and even relies upon the same cases and analyses which the Court previously rejected. See Government's Motion at 14; OTI Am., Inc., 68 Fed. Cl. at 117.

### B. In the Event that the Government Is Not Collaterally Estopped from Asserting the Same Jurisdiction Argument as Last Year, this Court has Jurisdiction to Hear this Bid Protest as It is Part of Procurement.

This Court has jurisdiction to hear this protest because the GPO "downselected" OTI

from consideration during an ongoing procurement process for the ultimate "production" portion of the contract at issue.

*1. The GPO eliminated OTI as part of an ongoing competitive selection process.*

The GPO was, and is, unquestionably engaged in an ongoing evaluation and selection process. This time, OTI was downselected, the GPO allowed other competitors to proceed to the next stage and the GPO will eventually award primary production CLINs. Thus, the GPO used a contract as a mechanism to conduct a limited selection process among those who had survived the initial stage of procurement. See Matter of OTI America, Inc., B-295454, B-295455.3, 2005 WL 1994254, at *4 (Comp. Gen. Aug. 10, 2005). Specifically, the GAO found:[4]

> Here, the agency is using the options under these contracts to determine which firms will continue to be considered for GPO's procurement of electronic passport covers. Options corresponding to the pilot program would be exercised on a go/no-go basis based on passing the Stage 2 tests. RFP § C1.2.6. Ultimately, the agency would select one primary production contractor and secondary production contractors based on a best-value determination. Agency Report at 2, 8; RFP § C1.2.8. Thus, this is a limited competition between the firms awarded contracts under the RFP. . . . [T]he substance of what is occurring – regardless of its contractual form – is a multi-step competition for a contract to produce electronic passport covers. . . .

Id. The Government makes no new attempt to convince the Court otherwise. Since the selection process had not yet concluded, and since OTI was eliminated during the course of the GPO's gradual narrowing of the competitors eligible to receive the ultimate award, OTI's claims are

[4] While agency decisions in bid-protest actions are not controlling, they can provide persuasive authority. This Court traditionally gives a high degree of deference to GAO decisions, especially bid-protest decisions. Hawaiian Dredging Constr. Co. v. United States, 59 Fed. Cl. 305, 311 (2004). In fact, while not binding authority, GAO decisions in certain circumstance may be considered as " 'expert opinions', which the court should prudently consider." Id. Such opinions are, at a minimum, treated as persuasive authority by this Court. Univ. Research Co., LLC v. United States, 65 Fed. Cl. 500, 503 (2005), citing Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728 (2000); CACI Field Servs. v. United States, 13 Cl. Ct. 718 (1987), aff'd 854 F.2d 464 (Fed. Cir. 1988) ("Although GAO decisions are persuasive on this Court, they are not binding.").

properly within this Court's bid-protest jurisdiction as claims against an agency's action "in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

***2. Mere use of a contract does not divest this court of jurisdiction over the entire procurement process.***

Recognizing the fact that the selection process was ongoing – indeed, conceding it – the Government resorts to unsupported line-drawing in its attempt to strip this Court of jurisdiction. It argues that because this procurement process was governed by an initial contract between the GPO and OTI, the GPO's elimination of OTI is "merely a matter of dispute regarding contract administration". Government's Motion, at 14. If this were truly the case, then any use of a contract in procurement would divest this Court of jurisdiction over the procurement process. However, the Court and Congress did not intend to allow governmental agencies to sidestep competition in the procurement process merely by use of such a device, such as a contract. See OTI Am., Inc., 68 Fed. Cl. at 117 (holding that statutory law and Congressional intent was to encompass the entire procurement process, no matter what shape or form.). The precise mechanism used to conduct procurement should not convert procurement into something else, removing the matter from this Court's bid-protest jurisdiction. Rather, the reach of this Court's bid-protest jurisdiction is as broad as the Government's various methods of conducting a procurement process and eliminating contractors from that process. See Labat-Anderson, 50 Fed. Cl. 99.

In Labat, the successful-bidder/intervenor argued that "the alleged violation was not 'in connection with a procurement,' because a BPA [Blanket Purchase Agreement, for which the bidders competed,] is not a contract." Id. at 104. In other words, the intervenor challenged the Court's jurisdiction based on the particular mechanism the contracting agency employed to secure the services at issue. This Court adopted the definition that procurement "includes all



{B0548202; 1}

stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." Id.; see also OTI Am., Inc., 68 Fed. Cl. at 114. Again, the GPO eliminated OTI during one of the several "stages" of the procurement process. There is no dispute that this procurement involves various stages. See Government Motion at 18 ("at that particular stage of the contact"). The fact that the stages were set out in a contract (as opposed to a solicitation alone) does nothing to change the nature of the government end goal: procurement in the form of using a contract to conduct competition aimed at ultimately awarding one or more production orders for the electronic passport program.

Other cases from this Court likewise reinforce this principle. In CCL, Inc. v. United States, 39 Fed. Cl. 780 (1997), the Court denied a similar motion to dismiss for lack of jurisdiction. After awarding a contract, the agency attempted to amend that contract to expand its scope. A disappointed bidder brought a bid-protest action before this Court, arguing that the agency's expansion of the existing contract precluded the issuance of a solicitation and thus any competition for the added services. For its part, the Government argued, as it does in this case, that its action was just "contract administration." Id. at 788-89. The Court rejected this argument and denied the motion to dismiss. The Court held:

> The new bid-protest statute authorizes this court to entertain "an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement. . . ." 28 U.S.C.A. § 1491(b)(1) (West Supp. 1997). That is precisely what CCL is doing. There is no question that [the agency] is procuring services in Denver and that CCL contends that the procurement is in violation of law. The fact that the balance of the new bid-protest statute also permits actions challenging "solicitations for bids or proposals for a proposed contract or to the award or the proposed award of a contract" is irrelevant. The new language permits both a suit challenging government action which is self-consciously a competitive procurement as well as what CCL is claiming here: that [the agency] is *procuring* goods and services through [an

> illegal process]. The statute is therefore plainly involved. Accordingly, defendant's motion to dismiss for lack of jurisdiction must be denied.

Id. at 789 (omissions and emphasis in original). Thus, as it did in Labat, this Court rejected the government's appeal to form over substance, holding that whatever method the government used in making what the protester alleged to be an illegal procurement, the Court had bid-protest jurisdiction so long as the government acted "in connection with a procurement." 28 U.S.C. § 1491(b); see also Cubic Defense Sys. v. United States, 45 Fed. Cl. 239 (1999) (holding that the agency's granting of an additional line item absent any further competition was not simply contract administration, but rather protestable conduct). This Court has thus consistently exercised jurisdiction over bid-protest actions, such as this one, in which a prospective contractor was eliminated from a selection process or precluded from competing for what is effectively the production contract.

***3. Authority from other sources likewise indicates that bid protest jurisdiction encompasses all forms of procurement.***

While the number of judicial opinions to address this issue is limited, all reject the government's argument. Furthermore, there is a large body of pertinent caselaw from agencies that have, or that at one time had, jurisdiction to review bid protests. Those administrative decisions are also all consistent with the above cases from this Court. Perhaps the best-known of these administrative decisions is Electro-Voice, Inc., B-278319, 278319.2, 1998 WL 14952, at *4 (Comp. Gen. Jan. 15, 1998), where the GAO held that "[i]n cases where the terms of existing contracts are used to conduct a competition resulting in the elimination of contractors as sources for the agency's requirements for the duration of the contracts in question, as is the case here, we will consider protests concerning that competition and selection decision."

Similarly, in Teledyne-Commodore, LLC - Reconsideration, B-278408.4, 1998 WL 826335 (Comp. Gen. Nov. 23, 1998), the GAO found jurisdiction where the agency had awarded basic testing contracts to seven firms, and then withheld subsequent orders from some of those contractors at various phases. The procurement techniques in Teledyne are thus quite similar to those that the GPO used here: multiple CLINs, with evaluation and pilot awards leading up to the equivalent of the ultimate production contract. What the GPO here calls the exercise of the CO's discretion, the GAO in Teledyne described as using CLINs "essentially as preliminary screening phases to lead to the ultimate source selection." Id. at *3; see also Prof'l Performance Dev. Group, Inc., B-294054.3, 2004 WL 2199476 (Comp. Gen. Sept. 30, 2004) (finding no jurisdiction, but applying the Electro-Voice jurisdictional inquiry).

Other agencies have likewise rejected the government's attempts to avoid bid-protest jurisdiction by referring to eliminations of competitors as "contract administration" and other such labels. In fact, the General Services Board of Contract Appeals ("GSBCA"), when it had jurisdiction over certain bid-protest actions, rejected the government's use of the term "contract administration" as a device to re-characterize cases as something other than bid protests in an attempt to avoid jurisdiction. For example, the GSBCA held that simply "attaching the shibboleth 'contract administration' to administrative action does not mean that the action is not actionable in this protest forum," for "the term 'contract administration' will not prevent us from exercising the jurisdiction conferred by Congress." Protest of C.M.P. Corp., GSBCA No. 9308-P, 1988 WL 44181, at *1 (G.S.B.C.A. Feb. 9, 1988); see also Sysorex Info. Sys., Inc. v. Dep't of Air Force, GSBCA Nos. 13597-P, 13606-P, 1996 WL 317026 (G.S.B.C.A. June 6, 1996) (denying government's motion to dismiss for lack of jurisdiction); Protest of Rocky Mountain Trading Co. – Sys. Div., GSBCA No. 10894-P, 1990 WL 212068 (G.S.B.C.A. Dec. 14, 1990)

(same).

C. **The Cases Relied Upon by the Government Do Not Support Its Assertion of Lack of Jurisdiction.**

In the face of clear authority contrary to the government's position, the government has been unable to offer a single case in which a court (or any administrative agency) held that it lacked jurisdiction over a protester's claims stemming from that protester's elimination from an ongoing competitive procurement process.[5] In fact, the Government's Motion does not uncover any new law since this Court's decision on this issue last year (OTI Am., Inc., 68 Fed. Cl. 108) that now changes the landscape which would divest this Court of jurisdiction. The Government, as it did in the first action, again relies upon Davis/HRGM Joint Venture v. United States, 50 Fed. Cl. 539 (2001), and Ingersoll-Rand Co. v. United States, 780 F.2d 74 (1985). This Court has distinguished these exact cases in its prior decision because "GPO effectively ended OTI's contract by choosing not to order any product from OTI under optional CLINs, but the competition for orders under CLIN 0006, GPO's procurement of its full requirements for electronic passport covers, continues with the remaining contractors." OTI Am., Inc., 68 Fed. Cl. at 116 (internal citations omitted).

[5] The "competitive procurement process" need not result from direct competition; it includes competition at different stages. See, e.g., Manson Constr. Co. v. United States, 64 Fed. Cl. 746 (2005) (reviewing a post-award bid protest against the Army Corps of Engineers on the merits of whether revising an original fuel cost estimate was arbitrary and capricious); Chapman Law Firm v. United States, 63 Fed. Cl. 519 (2005) (reviewing a post award bid protest against the Department of Housing and Urban Development ("HUD") on the merits of whether a successful offeror complied with a clause requiring a specific use of sub-contractors); Conscoop-Consorzia Fra Coop. Di Prod. E Lavoro v. United States, 62 Fed. Cl. 219 (2004) (reviewing a post award bid protest on the merits of whether the inconsistency of a time deadline for submission of a bid between the actual solicitation and the agency's website was arbitrary or capricious); Gulf Group Inc. v. United States, 61 Fed. Cl. 338 (2004) (reviewing a post award bid protest on whether the contracting agency was arbitrary or capricious in concluding that there was doubt that the protesting bidder could successfully perform the work involved in a construction project, and assigning it a corresponding risk rating). The authority from all sources is consistent and clear: if the complained-of decision to eliminate a contractor occurs during "one of the 'stages' in the process of acquiring [the property or services at issue]," then the contractor's complaint "falls squarely within the jurisdictional ambit of § 1491(b)(1)." Labat, 50 Fed. Cl. at 104. The Government cannot seriously argue, nor does it, that the GPO was not engaged in an ongoing procurement

**AGREED-UPON REDACTED COPY**
**— MAY BE MADE PUBLIC**

In Davis, the selection process/competition, unlike in this case, had ceased upon the award of the initial contract to Davis. There is no indication in the opinion that there were subsequent stages of selection or competition in which the field of bidders would be narrowed further. In other words, the government had made its final choice, leaving nothing but administration of the contract that it had awarded to Davis. Thus, when the government terminated Davis's contract for convenience, it did not do so as part of an ongoing selection process. It is not disputed that such is not the case here as there are various stages of competition. Furthermore, the Government itself asserted at the hearing on August 9, 2006 that no irreparable harm would come to OTI at this point because the final CLIN had not been awarded as of yet. See TRO Hr'g Tr. 22:25 - 23:8, Aug. 9, 2006.

The second case on which the government relies is an opinion from the Court of Appeals for the DC Circuit, Ingersoll-Rand Co. v. United States, 780 F.2d 74 (1985). The jurisdictional ruling of Ingersoll is equally inapposite. In Ingersoll, the government had awarded a contract to the protester, Ingersoll-Rand. For reasons that are not explained in the opinion, the agency subsequently terminated the contract for convenience. Id. at 75. The agency then amended and re-issued the solicitation, awarding the contract to another bidder. Ingersoll-Rand brought an action in the DC District Court alleging that the termination and subsequent re-solicitation were arbitrary and capricious, and violated several regulations. Id. at 77. The district court dismissed for lack of jurisdiction, holding that this was a contract action and that the Claims Court had exclusive jurisdiction over such actions. Id. at 76. While the case was not formally a bid-protest case, Ingersoll-Rand argued to the appeals court that its action was no different from a bid-

---

process – that it was not in the midst of a procurement "stage" – when it eliminated GPO, particularly given its admission to the ongoing competitive process at page 15 of its Motion.

protest action. Id. at 78. The DC Circuit affirmed the district court. It held that Ingersoll-Rand, by complaining that its contract was improperly terminated, was arguing nothing more than a breach of the contract. Id. at 77-79. Furthermore, the court noted that Ingersoll-Rand was essentially asking for specific performance, a contractual remedy. Id. at 79-80.

For the same reason that the Davis jurisdictional holding does not actually support the government's motion to dismiss, Ingersoll-Rand's jurisdictional holding also fails to support the government's position. Once the agency awarded Ingersoll-Rand the contract, the competition ended. There were no subsequent selection stages in which the government sought to narrow the field even further. Ingersoll-Rand's subsequent termination was thus not an elimination during a selection process, as was the case with OTI, but merely a termination of a final contract. Therefore as the Government here concedes, OTI was engaged in an ongoing selection process when GPO eliminated OTI, making this case quite unlike Davis and Ingersoll-Rand.

Because neither Davis nor Ingersoll-Rand involved a post-contract selection process – or an ultimate award toward which the "contract" recipients were working and competing – the government's supposedly analogous cases are nothing of the sort. This Court has addressed the exact same arguments before. The Government has not presented any new evidence to indicate that the Court should reconsider or decide the issue of jurisdiction differently this time.[6]

## V. CONCLUSION

As the Government is attempting to relitigate an identical issue decided in the first action,

[6] The Government argues that as this protest involves so-called "contractual options not to purchase" that by hearing the protest, the Court "would effectively render the contractual provisions mentioned above null and void." Government's Motion at 18. However, as OTI has indicated above, OTI does not protest the administration of the contract as the Government characterizes the procurement. OTI protests the GPO's deviations from the express terms defined in the Solicitation during the procurement process. Problems involving these types of deviations fall squarely within the bid protest jurisdiction of this Court. Furthermore, the Government did argue this point in the prior hearing. See Jurisdiction Hr'g Tr. 47:1-22, Sept. 2, 2005.

where the issue was actually litigated, the resolution of the issue was essential to the final judgment in the first action, and the Government had a full and fair opportunity to litigate the issue, the Government should be collaterally estopped from relitigating the issue here. In the alternative, if the Court wishes to reconsider the issue of jurisdiction, the Court has jurisdiction

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**AGREED-UPON REDACTED COPY**
**— MAY BE MADE PUBLIC**

over this procurement process. For the reasons stated herein, OTI respectfully requests that the Court enter an order denying Defendant's motion to dismiss.

Respectfully submitted,

OTI AMERICA, INC.
By its attorneys,

August 22, 2006

/s/ William M. Weisberg
William M. Weisberg
SULLIVAN & WORCESTER LLP
1666 K Street, NW
Washington, DC 20006
(202) 775-1200
(202) 293-2275 (fax)

*Counsel of Record for Plaintiff OTI America, Inc.*

Beth L. Jacobson
Joyce L. Tong
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800
(617) 338-2880 (fax)

*Of Counsel for Plaintiff OTI America, Inc.*