**AGREED-UPON REDACTED COPY**
**- MAY BE MADE PUBLIC**

**THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| OTI AMERICA, INC., Plaintiff, v. UNITED STATES, Defendant. | Civil Action No. 06-571-C (Judge Lettow) |

# PLAINTIFF OTI AMERICA, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE OF COURT TO SUPPLEMENT ADMINISTRATIVE RECORD

Electronically filed on
October 6, 2006

William M. Weisberg
SULLIVAN & WORCESTER LLP
1666 K Street, NW
Washington, DC 20006
(202) 775-1200
(202) 293-2275 (fax)

*Counsel of Record for Plaintiff OTI America, Inc.*

Beth L. Jacobson
Joyce L. Tong
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2872
(617) 338-2880 (fax)

*Of Counsel for Plaintiff OTI America, Inc.*

**AGREED-UPON REDACTED COPY**
**- MAY BE MADE PUBLIC**

TABLE OF CONTENTS

Page

Table of Authorities ..... ii

I. THE GOVERNMENT DOES NOT DISPUTE THE STANDARD OF REVIEW ..... 1

II. ARGUMENT ..... 3

A. The AR Does Not Contain All Material Necessary For Complete Judicial Review. ..... 4

1. OTI Should Be Allowed to Depose the CO, Ms. Broadnax. ..... 6

2. As Testimony Regarding the Berlin Conference Will Show Disparate Treatment, OTI Should Be Allowed to Depose Individuals Who Attended that Conference. ..... 7

3. OTI Should Be Allowed to Depose Mr. Grasso. ..... 10

4. OTI Should Be Allowed to Examine the NIST Tester that Performed the Testing of OTI's Product. ..... 10

B. OTI's Request Is Narrowly Tailored. ..... 11

C. OTI Does Not Need To Show Bad Faith. ..... 12

D. OTI's Proffered Testing Results and Expert Consultant Would Merely Enhance the Court's Understanding of the Issues and Facilitate Meaningful Judicial Review. ..... 13

III. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Al Ghanim Combined Group Co. General Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502 (2003) ....4, 5

Arch Chemicals, Inc. v. United States, 64 Fed. Cl. 380 (2005) ....2, 9

CEMS, Inc. v. United States, 65 Fed. Cl. 473 (2005) ....7

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971) ....9, 12

Cochran v. United States, 3 Cl. Ct. 3 (1983) ....12

Comprehensive Health Services, v. United States, 70 Fed. Cl. 700 (2006) ....4

Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345 (1997) ....12

Cybertech Group, Inc. v. United States, 48 Fed. Cl. 638 (2001) ....12

Doraiswamy v. Secretary of Labor, 555 F.2d 832 (D.C. Cir. 1976) ....2

Emery Worldwide Airlines, Inc. v. United States, 49 Fed. Cl. 211 (2001) ....5, 12

Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989) ....4, 13

Gulf Group, Inc. v. United States, 61 Fed. Cl. 338 (2004) ....2

Impresa Construzioni Geom. Domenico Garufi v. United States, 52 Fed. Cl. 421 (2002) ....7

Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324 (2001) ....1, 2, 3, 4, 5, 12

International Resources Recovery, Inc. v. United States, 59 Fed. Cl. 537 (2004) ....4, 12

J.C.N. Construction Co. v. United States, 60 Fed. Cl. 400 (2004) ....4, 12

Mike Hooks, Inc. v. United States, 39 Fed. Cl. 147 (1997) ....13

Orion International Techs. v. United States, 60 Fed. Cl. 338 (2004) ....2, 5

Precision Standard, Inc. v. United States, 69 Fed. Cl. 738 (2006) ....13

SAI Industrial Corp. v. United States, 60 Fed. Cl. 731 (2004) ....5

Saratoga Development Corp. v. United States, 21 F.3d 445 (D.C. Cir. 1994) ..............................13

United International Investigative Services, Inc. v. United States, 41 Fed. Cl. 312 (1998)......2, 12

**AGREED-UPON REDACTED COPY
- MAY BE MADE PUBLIC**

**THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST**

| | |
|---|---|
| OTI AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Civil Action No. 06-571-C<br>(Judge Lettow) |

**PLAINTIFF OTI AMERICA, INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE OF COURT TO SUPPLEMENT ADMINISTRATIVE RECORD**

Plaintiff OTI America, Inc. ("OTI"), by its undersigned counsel, respectfully submits this reply memorandum in support of its Motion for Leave of the Court to Supplement Administrative Record (the "Motion"), and in response to the opposition to that Motion (the "Opposition" or "Opp.") filed by the Department of Justice (the "Government"), on behalf of the Government Printing Office (the "GPO").[1]

## I. THE GOVERNMENT DOES NOT DISPUTE THE STANDARD OF REVIEW

The parties agree that supplementation of the Administrative Record ("AR") is permissible if the "presumption [of regularity] has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious." Opp. at 3, quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (2001). However, the Government focuses exclusively on the presumption of regularity afforded to the government and ignores the evidence OTI presented that the decision was arbitrary and capricious. In fact, at

[1] Pursuant to Rule of the Court of Federal Claim 5.2(4)(b)(3), OTI attaches a five page excerpt of its Memorandum in Support of its Motion for Leave of Court to Supplement Administrative Record (the "Memorandum") filed on August 24, 2006 as Appendix A.

**AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC**

this stage, OTI need only show some evidence "suggesting that the agency decision is arbitrary and capricious." Impresa, 238 F.3d at 1338. Since the Government's discussion[2] of the standard of review fails to address the instances where supplementation is necessary and permitted, as set forth in OTI's Motion, the Government does not appear to dispute those grounds. In fact, the Government agrees with OTI that the Court does allow discovery to "clarify" the administrative record. Opp. at 12, citing United Int'l Investig. Servs., Inc. v. United States, 41 Fed. Ct. 312 (1998) (allowing depositions).

Accordingly, there is no dispute that the Court has discretion to permit supplementation of the AR: (1) to help explain the agency's decision and facilitate meaningful judicial review; (2) to add relevant information that by its very nature would not be found in the agency record, information relied upon but omitted from the record, or content of conversations; and (3) to explain post-hoc rationalizations of the basis for agency action. See Orion Int'l Techs. v. United States, 60 Fed. Cl. 338, 343-45 (2004) (granting limited discovery); Gulf Group, Inc. v. United States, 61 Fed. Cl. 338, 347 (2004) (holding that limited discovery was warranted); Arch Chems., Inc. v. United States, 64 Fed. Cl. 380, 385 (2005) (permitting supplementation because the agency relied upon post-hoc rationalizations).

OTI does not dispute that the Court's analysis must begin with the presumption of regularity. See Impresa, 238 F.3d at 1324. Unequivocally, the record evidence—or lack thereof—rebuts the presumption of regularity to establish that the GPO's decision to eliminate OTI from further contract awards under the Solicitation was arbitrary and capricious. For

[2] The Government also relies upon an inapposite case. See Doraiswamy v. Secretary of Labor, 555 F.2d 832, 842 (D.C. Cir. 1976) (acknowledging that there are times when an agency should be called upon to explain itself, such as when "the bare record [does] not disclose the factors that were considered or the Secretary's construction of the evidence, [and] it [is] necessary for the District Court to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard.").

instance, in the Government's own motion, the Government admits that the Contracting Officer (the "CO"), Albertha Broadnax ("Ms. Broadnax") violated her standard procedures by failing to date the Determination and Findings ("D&F"). As discussed below, this alleged "oversight" becomes highly significant when coupled with the fact that OTI never received the D&F, nor did the July 26, 2006 letter to OTI indicate any attachments.

The Government's suggestion that OTI is seeking the CO's mental processes is nothing more than an underhanded attempt to broaden OTI's narrowly tailored requests particularly given OTI's representation in its Motion that, at this time, it does not seek depositions into mental processes. OTI seeks, and the law allows, an investigation when the "record evidence raises serious questions as to the rationality of the contracting officer's . . . determination." Impresa, 238 F.3d at 1341. Like the plaintiff in Impresa, OTI has overcome the presumption of regularity to establish that the GPO's decision to eliminate OTI from the bid was arbitrary and capricious.

In sum, supplementation of the AR is appropriate in this case for a variety of reasons, including to facilitate meaningful judicial review, to further explain a contracting officer's decision and to explain gaps in the AR.

## II. ARGUMENT

The Government alleges that OTI must make a "strong preliminary showing" that the decision the GPO made was arbitrary or capricious. Opp. at 3. However, OTI need not prove its ultimate case at this stage, but must simply point to evidence "suggesting that the agency decision is arbitrary and capricious." Impresa, 238 F.3d at 1338. OTI has done this.

AGREED-UPON REDACTED COPY
- MAY BE MADE PUBLIC

## A. The AR Does Not Contain All Material Necessary For Complete Judicial Review.

The Government's argument has one significant fallacy: it focuses exclusively on the validity of the CO's decision. The Government fails to address OTI's other arguments. The Government asserts the AR contains everything necessary for the Court to ascertain the basis for the CO's decision. Opp. at 4. However, "[s]upplementation is appropriate when the record still has lacunae that should be filled based on the protestor's challenges." Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 508 (2003) (internal quotes omitted). OTI's challenges are that: (1) the GPO's decision lacked a rational basis; (2) the GPO relied on an undisclosed selection criterion; (3) the GPO did not abide by its disclosed selection criterion; (4) the GPO treated offerors differently, to the detriment of OTI, by allowing offerors with more serious problems to remain in the competition or to have additional bites of the apple; and (5) the GPO relied upon an incorrect technical evaluation of OTI's product. By focusing exclusively on the CO's decision (challenge 1 above), the Government fails to address the other challenges of OTI (challenges 2, 3, 4, and 5) which require supplementation of the record for the Court to assess the validity of OTI's claims. In order for the Court to address the validity of these issues, it must have a full and complete record before it and thus, should allow OTI to supplement the record.

"Supplementing the administrative record is appropriate where the record does not contain sufficient information for the court to render a decision." Comprehensive Health Servs., v. United States, 70 Fed. Cl. 700, 720 (2006), citing Impresa, 238 F.3d at 1338-39. Here, the record does not contain sufficient information for the court to render a decision on OTI's claim.[3]

[3] OTI does not claim that depositions and testimony are regularly allowed in all bid protest cases as the Government represents. Opp. at 4. However, in situations where there is a dearth of information in the AR, the Court does allow supplementation in order to complete the AR and fill the gaps. See J.C.N. Constr. Co. v. United

**AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC**

While the Government asserts that OTI "utterly fails" to identify gaps and silences in the record, OTI has done so (see Plaintiff OTI America, Inc.'s Memorandum in Support of its Motion for Leave of Court to Supplement Administrative Record (the "Memorandum") at 4-9).

In fact, the Government utterly fails to address the gaps that OTI has identified, namely the international standards set forth by the International Standards Organization ("ISO") and the International Civil Aviation Organization ("ICAO"). The AR, as presently produced, would not allow the Court to determine: (1) the standards as set forth in the Solicitation; (2) the standards that the GPO gave the National Institute of Standards and Technology ("NIST") to test for compliance with the Solicitation; and (3) how NIST tested for compliance with those standards. OTI does not ask the Court to make a substantive determination as to the technical superiority of OTI's product, but rather that the Court compare the Solicitation standards (the ISO/ICAO standards) and the NIST standards to determine whether NIST and the GPO conformed with the stated criteria in the Solicitation. Without the defining international standards, the Court cannot make this comparison or determine the existence of reliance on undisclosed evaluation criteria, as the Court would only have one piece of the puzzle, the NIST report. AR at 188 (Tab 9).

The Government baldly asserts that "[i]t is not necessary for the Court to understand the specific ISO/ICAO standards". (Opp. at 14). However, how can the Court determine: 1) if the

---

States, 60 Fed. Cl. 400, 404 n.8 (2004) ("The Court may properly rely on this supplemental evidence because the [apparent disparate treatment wa]s not adequately explained in the record before the court." (internal quotation marks omitted); Al Ghanim, 56 Fed. Cl. at 508 ("Supplementation is appropriate when the record still has lacunae that should be filled based on the protestor's challenges") (internal quotation marks omitted); see also Esch v. Yeutter, 876 F.2d 976 (D.C. Cir. 1989). The Government's position simply ignores settled law in this Court and in the Federal Circuit. See Impresa, 238 F.3d at 1338-39; see also Int'l Res. Recovery, Inc. v. United States, 59 Fed. Cl. 537, 542 (2004) ("Depositions have been ordered in bid protests where necessary to provide a full record for the Court's review."); SAI Indus. Corp. v. United States, 60 Fed. Cl. 731, 734 n.3 (2004) (permitting supplemental discovery because "plaintiff . . . established that the administrative record was not complete with respect to several fact issues that it contended were highly relevant to the ultimate issues in this case."); Orion Int'l Techs. v. United States, 60 Fed. Cl. 338, 343 (2004); Emery Worldwide Airlines, Inc. v. United States, 49 Fed. Cl. 216, 219 & n.10 (holding that plaintiff was "entitled to depose" three witnesses after defendant had offered their testimony, as that testimony "constitute[d] post-decision explanation").

GPO abided by its own Solicitation which specified that all submissions would be held to the ISO/ICAO standard; 2) if NIST performed testing as required by the ISO/ICAO standard,[4] and 3) if NIST did not perform testing as required by the ISO/ICAO standards, that the GPO's actions were arbitrary and capricious, if the Court does not know what ISO/ICAO standards are?

In addition to this one specific example, the Government fails to fully address the absence of the e-mail correspondence, the post-hoc rationalization, any information regarding the Berlin Conference or Infineon's test results. Thus, OTI has record evidence that gaps and silences in the AR exist that must be filled in order for the Court to make a proper determination of OTI's claims.

***1. OTI Should Be Allowed to Depose the CO, Ms. Broadnax.***

The Government asserts that OTI's only evidence of a post-hoc rationalization is that Ms. Broadnax's Determination and Findings ("D&F") regarding OTI is undated. Opp. at 5. However, not only is the D&F undated, but it was not included in the letter to OTI. OTI never received this D&F (and still has not received the D&F). The Government represents that the failure to date the D&F was a "mere oversight" by the CO, unlike how she dated the D&Fs for [ ]. See Opp. at 5 n.3. It might be another "mere oversight" by the CO to fail to include the D&F in the letter to OTI. If creating the D&F and sending it with the letter is standard practice (as the Government represents, see Opp. at 5 n.3), then Ms. Broadnax deviated from the alleged standard practice by not dating and sending the D&F and thus acted improperly. This indication of improper behavior is grounds to rebut the presumption of regularity and allow the deposition of Ms. Broadnax to determine when the D&F was created and why it was not submitted to OTI.

---

[4] ISO/ICAO standards set forth the international testing standards and common international methodology for testing of those standards.

Furthermore, the Government argues that all the information that the CO relied upon in making her decision is present in the AR. Opp. at 5. However, the Government asserts that in fact the CO received verbal debriefings regarding the testing from Richard Grasso ("Mr. Grasso") and that these conversations assisted the CO in making her determinations. Opp. at 6. In particular the email from Ms. Broadnax to Mr. Grasso regarding the testing results indicates that she consulted Catherine Yates regarding the testing as well as asked Mr. Grasso to address certain issues. AR at 8 (Tab 5). Thus, inherently lacking in the record is that information relayed to the CO orally. If the CO took notes during those meetings, those notes are also not present in the record. OTI is entitled to question Ms. Broadnax in a limited deposition about these significant gaps in the AR as well as her apparent deviation from protocols and/or standard practices.

Specifically, OTI is entitled to know "(1) whether the contracting officer possessed sufficient information . . . to make a . . . determination and (2) the basis for the contracting officer's determination", and whether she conducted an independent and informed determination rather than just relying on others. Impresa Construzioni Geom. Domenico Garufi v. United States, 52 Fed. Cl. 421, 425, 427 (2002) (holding that because the basis of contracting officer's decision was not reasonable and violated standards of sec. 706, title 5, the protest was sustained); see also CEMS, Inc. v. United States, 65 Fed. Cl. 473, 480 (2005) (contracting officer must conduct independent review and not solely rely on others' evaluations). Here, Ms. Broadnax's decision affected the even more important question of elimination from competition.

***2. As Testimony Regarding the Berlin Conference Will Show Disparate Treatment, OTI Should Be Allowed to Depose Individuals Who Attended that Conference.***

**AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC**

Information regarding the Berlin Conference is necessary for the Court to properly assess the merits of OTI's claim of unequal treatment regardless of whether the CO considered the "results" of the conference [ ]. The Government misconstrues OTI's argument. First, whether the CO considered results from the Berlin Conference is irrelevant to a disparate treatment argument. OTI seeks to demonstrate that what happened at the Berlin Conference evidences the disparate treatment of OTI vis-à-vis other competitors.

The Berlin Conference is a global interoperability conference where all passport producers (sovereign states as well as vendors) test their products with passport readers. Compliance with ISO/ICAO standards will allow all passport readers to read all passports no matter who produced those passports. For an electronic passport program to be reliable and efficient, all passports must be able to be read. Given [ ] results from the Berlin Conference,[5] OTI's contention here is that events at the Berlin Conference indicate one of two issues: 1) the GPO accepted materially non-compliant product from [ ]; or 2) [] was given multiple opportunities to provide different chip sets in order to fix problems with [ ] chips. OTI believes that depositions regarding the Berlin Conference will show that 1) [ ] had several different types of chips – each with a different problem – that participated in the Conference (indicating that the GPO accepted materially non-compliant product); 2) the "official" United States ePassport with the [ ] chip could not be read by over 30% of the readers (showing that the chip was not ISO/ICAO compatible and the GPO

[5] The Government represents that the Court indicated that [ ] is at an entirely different position. Opp. at 7. However, OTI's argument is when viewing the entire procurement process as a whole, while [ ] currently may be at a different stage of competition, if its product is non-compliant with the Solicitation requirements today, it was probably non-compliant with the Solicitation when it "passed" through the NIST testing. As the [ ] based on non-compliance with the Solicitation requirements, but allowed [ ],

accepted materially non-compliant product); and 3) given the different types of [ ] chips at the conference, [ ] provided so-called compliant chips three times (indicating that [ ] was given a number of chances to fix substantive chip engineering problems).[6]

The Government repeatedly argues that NIST performed "Solicitation-specified testing" and that [ ] passed this test over a year ago. When [ ] passed the test is irrelevant to the current issue. If the testing criteria initially given to NIST does not comport with Solicitation standards (ISO/ICAO standards), regardless of when it occurred, a pass of the NIST testing does not indicate that the product is in compliance with the Solicitation standards. A pass of NIST testing merely indicates that the product met some undisclosed criteria that was not necessarily ISO/ICAO compliant.

The AR is "supposed to reflect the information available to the decision maker at the time the challenged decisions were made." Arch Chems., Inc. v. United States, 64 Fed. Cl. 380, 385 (2005), citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971). The Court cannot tell from the AR what "Solicitation-specified testing" actually is and whether NIST truly performed "Solicitation-specified testing." The Court is missing one crucial step – of what "Solicitation-specified testing" consists. Without the contract or specifications given from GPO to NIST detailing the required testing, the Court cannot make the determination of whether the testing conducted was truly the Solicitation-specified testing (which supposedly required compliance with ISO/ICAO standards). Likewise, without the international standards

---

which may have the same or greater problems with compliance, to proceed, the scenario described would indicate unequal treatment. See Hr'g Tr. 28:15-20, Aug. 9, 2006.

[6] These so-called compliant chips are substantively different from each other. This is not a case where the same chip was manufactured to be thinner or stronger, but rather a case where the manufacturer had to fix software problems, which should never have existed, with the chip.

themselves, the Court cannot compare the NIST testing report to determine whether NIST testing verified compliance with all the international standards.

**AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC**

### *3. OTI Should Be Allowed to Depose Mr. Grasso.*

The Government alleges that OTI is on a fishing expedition, this is not the case. According to the Government, Mr. Grasso's alleged "explanation" of the NIST report is merely a summary of the NIST report. If Mr. Grasso made any technical analysis, that is not revealed in the report or the AR. As Ms. Broadnax appears to have relied upon Mr. Grasso, this information is essential to OTI's claims.

Furthermore, OTI also seeks to reveal the response of Mr. Grasso to Ms. Broadnax's email correspondence. The Government asserts that this correspondence is not relevant and that no email correspondence exists from Mr. Grasso to Ms. Broadnax as all information was conveyed verbally. Opp. at 6. This is ironic as the Government initially found the email correspondence relevant as it included that correspondence in the original AR. When challenged on the responses, however, these messages suddenly become irrelevant. Thus, by including Ms. Broadnax's email in the original AR, the Government made Mr. Grasso's response relevant as Ms. Broadnax relied upon his oral answers in making her decision. Therefore OTI should be allowed to depose Mr. Grasso regarding his discussions with Ms. Broadnax. Absent this opportunity, OTI would be prejudiced as the Government acknowledged there were additional verbal discussions regarding the evaluation of OTI.

### *4. OTI Should Be Allowed to Examine the NIST Tester that Performed the Testing of OTI's Product.*

As above, in order for the Court to assess whether the testing conducted on OTI's product was truly compliant with the Solicitation and international standards, OTI should be permitted to depose the NIST tester that performed the requisite tests as to how those tests were performed and how NIST tested for the international standards. The NIST report does not go into detail regarding the testing (for example, [ ]). The Government has ignored

the details of what the AR actually contains in terms of test results. When examined closely, significant gaps and unexplained test results are apparent. [

][7]

Without testimony from the NIST tester,[8] the international standards or the criteria given to NIST, the Court cannot tell whether the tests conducted were truly the tests the Solicitation required or rather undisclosed additional criteria unspecified by the Solicitation.

**B. <u>OTI's Request Is Narrowly Tailored.</u>**

The Government resorts to alleging that OTI's requested discovery is too broad. OTI does not request full discovery of all relevant documents and depositions of everyone involved in this Solicitation. OTI merely seeks to depose the six individuals, integral to the merits of OTI's claims, whose testimony is essential to a fair judicial determination of this case and will fill significant gaps in the AR. These depositions would not necessarily be a half-day each; 4-hours

---

[7] OTI's understanding of the international standards is that additional standards must be met in order to be fully compliant with the international standards (such as anti-collision which facilitates interoperability), but from the NIST report, NIST apparently did not test for those requirements.

[8] In response to the Government's argument that the NIST Electromagnetic Division is in Boulder, Colorado and therefore burdensome for multiple individuals to travel to Washington, D.C., OTI is more than willing to fly to Colorado for the depositions or if travel is impossible given time constraints, to conduct telephone depositions. In either case, assuming witness availability, the current briefing schedule would not be affected.

**AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC**

is the outer limit OTI proposed. Furthermore, no delay to the current, agreed-to briefing schedule given to the court would occur.

Depositions and testimony are regularly allowed to enhance the information before the Court. See Cybertech Group, Inc. v. United States, 48 Fed. Cl. 638, 651 (2001) (granting five depositions and limited discovery); United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312 (1998) (allowing depositions); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345 (1997) (allowing depositions); Impresa, 238 F.3d 1324 (allowing deposition); J.C.N., 60 Fed. Cl. 400 (allowing deposition); Emery Worldwide, 49 Fed. Cl. 211 (allowing depositions); Int'l Res. Recovery, Inc., 59 Fed. Cl. 537 (allowing depositions).

OTI requests this information for additional evidence of the GPO's actions, facts, and the GPO's lack of analysis or judgment (not mental process), of which the AR is currently devoid. The depositions are an essential element for the Court's analysis and the Court should allow the supplementation of the AR in light of fairness and competition, and for meaningful judicial review.

### C. OTI Does Not Need To Show Bad Faith.

The Government raises a straw man: "bad faith." OTI does not seek to inquire into the "mental processes" of the individuals. Despite this, the Government purports to discuss a "required" showing for inquiries into "mental processes" as an attempt to limit any depositions.[9] Opp. at 11. The Government neglects to mention that the standard for inquiring into mental processes is actually either improper conduct or bad faith. See Overton Park, 401 U.S. at 420 (holding that the "court may require the administrative officials who participated in the decision

[9] The Defendant cites Cochran for a general principle of law, but the facts of Cochran are wholly inapplicable here. Cochran v. United States, 3 Cl. Ct. 3 (1983). First, Cochran is not a bid protest. Second, Cochran's facts are not analogous here. Cochran involved remand of a case to the Army Judge Advocate General. Cochran, 3 Cl. Ct. at 4.

to give testimony explaining their action. Of course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided", but such inquiry may be made upon a showing of improper behavior or bad faith) (referenced by the Government); Saratoga Dev. Corp. v. United States, 21 F.3d 445, 458 (D.C. Cir. 1994) (requiring a "showing of bad faith or improper behavior"). This straw man attempts to confuse the issue and limit the depositions. As OTI does not seek, at this time, the mental impressions of the deponents but rather what they considered, what they observed or how they tested, OTI does not need to show bad faith.[10]

**D. OTI's Proffered Testing Results and Expert Consultant Would Merely Enhance the Court's Understanding of the Issues and Facilitate Meaningful Judicial Review.**

The Court permits supplementation of the AR when the testimony or evidence helps "explain the highly technical nature of the issues and discuss factors which the [GPO] perhaps should have considered but did not." Mike Hooks, Inc. v. United States, 39 Fed. Cl. 147, 158 (1997) (permitting Plaintiff to supplement the AR with affidavits that help explain the highly technical nature of the issues), citing Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989) (supplementation of record permitted when "a case is so complex that a court needs more evidence to enable it to understand the issues clearly"); see also Precision Standard, Inc. v. United States, 69 Fed. Cl. 738, 746-47 (2006) (permitting Government to supplement the AR with a declaration as it "informs the court about a technical aspect of the procurement process . . . and specifically aids the court in its understanding of an error defendant claims is contained in the solicitation"). This protest involves technical issues and specifications. OTI does not ask the

[10] Here, OTI alleges improper behavior on the part of the government in using undisclosed criteria in disqualifying OTI, deviating from the Solicitation requirements, improper technical evaluations and unequal treatment of OTI vis-à-vis the other bidders. Thus, even were OTI to seek depositions into the mental processes of the GPO officials, which it does not at this time, OTI would not be required to prove bad faith as it has already alleged improper behavior.

Court to make a technical evaluation but rather to compare technical specifications in order to determine whether the GPO followed its own criteria set forth in the Solicitation.

While the Government does not believe that the Court must understand the ISO/ICAO requirements (see Opp. at 14) for the Court to analyze the merits of OTI's claims, for meaningful judicial review, the Court must be able to compare (if not completely understand) the international standards with the testing results. OTI's independent laboratory results from [ ] are an example of specific international testing for ISO/ICAO standards. Prior to any litigation, various international standards organizations required that OTI submit its product to be tested by an independent laboratory, specifically, [ ]. International organizations required testing from these specific laboratories because the laboratories are independent and could be relied upon to show compliance with international standards. These test results are what OTI seeks to submit to the Court. These test results will indicate an incorrect technical evaluation, as well as show the proper testing method for ISO/ICAO standards and that the GPO deviated from the Solicitation or used undisclosed evaluation criteria.

Furthermore, OTI's expert would be able to explain any technical questions regarding testing the Court might have as well as testify as to how the international community typically tests for compliance with ISO/ICAO standards and whether NIST tested for all the ISO/ICAO standards. This testimony and test results will indicate that NIST might have performed incorrect testing and highlight any testing criteria that is not required by ISO/ICAO standards.

## III. CONCLUSION

In order for the Court to truly assess the validity of OTI's claims, it should allow OTI to supplement the record with: 1) specified documents currently in the Government's possession; (2) limited depositions; (3) submission of OTI's test results from independent laboratories

offered for limited evidentiary purposes; and (4) expert testimony/reports on behalf of OTI for limited evidentiary purposes.

OTI respectfully requests that the Court grant OTI's Motion for Leave of the Court To Supplement Administrative Record.

Electronically filed on
October 6, 2006

/s/ William M. Weisberg
William M. Weisberg
SULLIVAN & WORCESTER LLP
1666 K Street, NW
Washington, DC 20006
(202) 775-1200
(202) 293-2275 (fax)

*Counsel of Record for Plaintiff OTI America, Inc.*

Beth L. Jacobson
Joyce L. Tong
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2872
(617) 338-2880 (fax)

*Of Counsel for Plaintiff OTI America, Inc.*