# EXHIBIT A

# MATERIALS MANAGEMENT ACQUISITION REGULATION

GPO PUBLICATION 805.33

ISSUED MAY 15, 2003 BY THE
U.S. GOVERNMENT PRINTING OFFICE
WASHINGTON, D.C.

**MATERIALS MANAGEMENT ACQUISITION REGULATIONS SYSTEM**

**Chapter 1**

# MATERIALS MANAGEMENT ACQUISITION REGULATION

# FOREWORD

Acquisition by the U.S. Government Printing Office (GPO) is a complex operation requiring a high degree of specialization and knowledge. Those involved in acquisitions must be cognizant of a large number of highly technical rules and requirements. This Materials Management Acquisition Regulation (MMAR) provides the policies and procedures necessary to efficiently and effectively conduct GPO procurements. Acquisition in the Federal government is a dynamic process that must keep pace with frequently changing technologies, statutory requirements and national goals. This regulation is designed to assist and guide acquisition personnel.

# MATERIALS MANAGEMENT AQUISITION REGULATION

## General Structure and Subparts

### SUBCHAPTER A—GENERAL


### PART 1—MATERIALS MANAGEMENT ACQUISITION REGULATIONS SYSTEM

1.1 Purpose, Authority, Issuance
1.2 [Reserved]
1.3 [Reserved]
1.4 Deviations from the MMAR
1.5 [Reserved]
1.6 Career Development, Contracting Authority, and Responsibilities
1.7 Determinations and Findings

### PART 2—DEFINITIONS OF WORDS AND TERMS

2.1 Definitions
2.2 Definitions Clause

### PART 3—IMPROPER BUSINESS PRACTICES AND PERSONAL CONFLICTS OF INTEREST

3.1 Safeguards
3.2 Contractor Gratuities to Government Personnel
3.3 Reports of Suspected Antitrust Violations
3.4 Contingent Fees
3.5 Other Improper Business Practices
3.6 Contracts with Government Employees or Organizations Owned or Controlled by Them
3.7 Voiding and Rescinding Contracts
3.8 [Reserved]
3.9 [Reserved]

### PART 4—ADMINISTRATIVE MATTERS

4.1 Contract Execution
4.2 Contract Distribution
4.3 Paper Documents
4.4 Safeguarding Classified Information Within Industry
4.5 Electronic Commerce in Contracting
4.6 Contract Reporting
4.7 Contractor Records Retention
4.8 Government Contract Files
4.9 Taxpayer Identification Number Information
4.10 Contract Line Items
4.11 Contract Review Board

## SUBCHAPTER B—COMPETITION AND ACQUISITION PLANNING


### PART 5—PUBLICIZING CONTRACT ACTIONS

5.1 Dissemination of Information
5.2 Synopses of Proposed Contract Actions
5.3 Synopses of Contract Awards
5.4 Release of Information
5.5 Paid Advertisements

### PART 6—COMPETITION REQUIREMENTS

6.1 Full and Open Competition
6.2 Full and Open Competition After Exclusion of Sources
6.3 Other Than Full and Open Competition
6.4 Sealed Bidding and Competitive Proposals
6.5 [Reserved]

### PART 7—ACQUISITION PLANNING

7.1 Acquisition Plans
7.2 Planning for the Purchase of Supplies in Economic Quantities
7.3 [Reserved]
7.4 Equipment Lease or Purchase
7.5 Inherently Governmental Functions

### PART 8—REQUIRED SOURCES OF SUPPLIES AND SERVICES

8.1 Excess Personal Property
8.2 [Reserved]
8.3 [Reserved]
8.4 Federal Supply Schedules
8.5 Acquisition of Helium
8.6 Acquisition from Federal Prison Industries, Inc.
8.7 Acquisition from Nonprofit Agencies Employing People Who Are Blind or Severely Disabled
8.8 Acquisition of Printing and Related Supplies
8.9 [Reserved]
8.10 [Reserved]
8.11 Leasing of Motor Vehicles

### PART 9—CONTRACTOR QUALIFICATIONS

9.1 Responsible Prospective Contractors
9.2 Qualifications Requirements
9.3 First Article Testing and Approval
9.4 Debarment, Suspension, and Ineligibility
9.5 Organizational and Consultant Conflicts of Interest
9.6 Contractor Team Arrangements
9.7 [Reserved]

## PART 10—MARKET RESEARCH

## PART 11—DESCRIBING AGENCY NEEDS

11.1 Selecting and Developing Requirements Documents
11.2 Using and Maintaining Requirements Documents
11.3 Acceptable Material
11.4 Delivery or Performance Schedules
11.5 Liquidated Damages
11.6 Priorities and Allocations
11.7 Variation in Quantity
11.8 Testing

## PART 12—ACQUISITION OF COMMERCIAL ITEMS

12.1 Acquisition of Commercial Items—General
12.2 Special Requirements for the Acquisition of Commercial Items
12.3 Solicitation Provisions and Contract Clauses for the Acquisition of Commercial Items
12.4 Unique Requirements Regarding Terms and Conditions for Commercial Items
12.5 [Reserved]
12.6 Streamlined Procedures for Evaluation and Solicitation for Commercial Items

# SUBCHAPTER C—CONTRACTING METHODS AND CONTRACT TYPES

## PART 13—SIMPLIFIED ACQUISITION PROCEDURES

13.1 Procedures
13.2 Actions At or Below the Micro-Purchase Threshold
13.3 Simplified Acquisition Methods
13.4 Fast Payment Procedure
13.5 [Reserved]

## PART 14—SEALED BIDDING

14.1 Use of Sealed Bidding
14.2 Solicitation of Bids
14.3 Submission of Bids
14.4 Opening of Bids and Award of Contract
14.5 Two-Step Sealed Bidding

## PART 15—CONTRACTING BY NEGOTIATION

15.1 Source Selection Processes and Techniques
15.2 Solicitation and Receipt of Proposals and Information
15.3 Source Selection
15.4 Contract Pricing
15.5 Preaward, Award, and Postaward Notifications, Protests, and Mistakes
15.6 Unsolicited Proposals

## PART 16—TYPES OF CONTRACTS

16.1 Selecting Contract Types
16.2 Fixed-Price Contracts
16.3 Cost-Reimbursement Contracts
16.4 Incentive Contracts
16.5 Indefinite-Delivery Contracts
16.6 Time-and-Materials, Labor-Hour, and Letter Contracts
16.7 Agreements

## PART 17—SPECIAL CONTRACTING METHODS

17.1 Multi-year Contracting
17.2 Options
17.3 [Reserved]
17.4 [Reserved]
17.5 Interagency Acquisitions Under the Economy Act
17.6 [Reserved]

## PART 18—RESERVED

## SUBCHAPTER D—SOCIOECONOMIC PROGRAMS

## PART 19—SMALL BUSINESS PROGRAMS

19.1 Size Standards
19.2 Policies
19.3 Reserved
19.4 [Reserved]
19.5 [Reserved]
19.6 [Reserved]
19.7 [Reserved]
19.8 [Reserved]
19.9 [Reserved]
19.10 [Reserved]
19.11 [Reserved]
19.12 [Reserved]
19.13 [Reserved]

## PART 20—RESERVED

## PART 21—RESERVED

## PART 22—APPLICATION OF LABOR LAWS TO GOVERNMENT ACQUISITIONS

22.1 Basic Labor Policies
22.2 Convict Labor
22.3 Contract Work Hours and Safety Standards Act
22.4 Labor Standards for Contracts Involving Construction
22.5 [Reserved]
22.6 Walsh-Healey Public Contracts Act
22.7 [Reserved]
22.8 Equal Employment Opportunity
22.9 Nondiscrimination Because of Age
22.10 Service Contract Act of 1965, as Amended
22.11 Professional Employee Compensation
22.12 [Reserved]
22.13 Special Disabled Veterans, Veterans of the Vietnam Era, and Other Eligible Veterans
22.14 Employment of Workers with Disabilities
22.15 Prohibition of Acquisition of Products Produced by Forced or Indentured Child Labor

## PART 23—ENVIRONMENT, ENERGY AND WATER EFFICIENCY, RENEWABLE ENERGY TECHNOLOGIES, OCCUPATIONAL SAFETY, AND DRUG-FREE WORKPLACE

23.1 [Reserved]
23.2 Energy and Water Efficiency and Renewable Energy
23.3 Hazardous Material Identification and Material Safety Data
23.4 Use of Recovered Materials
23.5 [Reserved]
23.6 Notice of Radioactive Material
23.7 Contracting for Environmentally Preferable Products and Services
23.8 Ozone-Depleting Substances
23.9 Toxic Chemical Release Reporting
23.10 [Reserved]

## PART 24—PROTECTION OF PRIVACY AND FREEDOM OF INFORMATION

24.1 [Reserved]
24.2 Freedom of Information Act

## PART 25—FOREIGN ACQUISITION

25.1 Buy American Act—Supplies
25.2 Buy American Act—Construction Materials
25.3 [Reserved]
25.4 [Reserved]
25.5 Evaluating Foreign Offers—Supply Contracts
25.6 [Reserved]
25.7 Prohibited Sources
25.8 Other International Agreements and Coordination
25.9 Customs and Duties
25.10 Additional Foreign Acquisition Regulations
25.11 Solicitation Provisions and Contract Clauses

## PART 26—OTHER SOCIOECONOMIC PROGRAMS

26.1 Indian Incentive Program
26.2 Disaster or Emergency Assistance Activities
26.3 [Reserved]

# SUBCHAPTER E—GENERAL CONTRACTING REQUIREMENTS

## PART 27—PATENTS, DATA, AND COPYRIGHTS

27.1 General
27.2 Patents
27.3 Patent Rights under Government Contracts
27.4 Rights in Data and Copyrights
27.5 [Reserved]
27.6 Foreign License and Technical Assistance Agreements

## PART 28—BONDS AND INSURANCE

28.1 Bonds and Other Financial Protections
28.2 Sureties and Other Security for Bonds
28.3 Insurance

## PART 29—TAXES

29.1 General
29.2 Federal Excise Taxes
29.3 State and Local Taxes
29.4 Contract Clauses

## PART 30—COST ACCOUNTING STANDARDS ADMINISTRATION

30.1 General
30.2 CAS Program Requirements
30.3 CAS Rules and Regulations [Reserved]
30.4 Cost Accounting Standards [Reserved]
30.5 Cost Accounting Standards for Educational Institutions [Reserved]
30.6 CAS Administration

## PART 31—CONTRACT COST PRINCIPLES AND PROCEDURES

31.1 Applicability
31.2 Contracts with Commercial Organizations
31.3 Contracts with Educational Institutions
31.4 [Reserved]
31.5 [Reserved]
31.6 Contracts with State, Local, and Federally Recognized Indian Tribal Governments
31.7 Contracts with Nonprofit Organizations

## PART 32—CONTRACT FINANCING

32.1 [Reserved]
32.2 [Reserved]
32.3 [Reserved]
32.4 Advance Payments for Non-Commercial Items
32.5 Progress Payments Based on Costs [Reserved]
32.6 Contract Debts
32.7 Contract Funding
32.8 Assignment of Claims
32.9 Prompt Payment
32.10 Performance-Based Payments
32.11 Electronic Funds Transfer

## PART 33—PROTESTS, DISPUTES, AND APPEALS

33.1 Protests
33.2 Disputes and Appeals

# SUBCHAPTER F—SPECIAL CATEGORIES OF CONTRACTING

## PART 34—MAJOR SYSTEM ACQUISITION

34.0 General
34.1 Testing, Qualification and Use of Industrial Resources Developed Under Title III, Defense Production Act

## PART 35—RESEARCH AND DEVELOPMENT CONTRACTING

## PART 36—CONSTRUCTION AND ARCHITECT-ENGINEER CONTRACTS

36.1 General
36.2 Special Aspects of Contracting for Construction
36.3 Two-Phase Design-Build Selection Procedures
36.4 [Reserved]
36.5 Contract Clauses
36.6 Architect-Engineer Services
36.7 Standard and Optional Forms for Contracting for Construction, Architect-Engineer Services, and Dismantling, Demolition, or Removal of Improvements

## PART 37—SERVICE CONTRACTING

37.1 Service Contracts—General
37.2 Advisory and Assistance Services
37.3 Dismantling, Demolition, or Removal of Improvements
37.4 Nonpersonal Health Care Services
37.5 Management Oversight of Service Contracts
37.6 Performance-Based Contracting

## PART 38—FEDERAL SUPPLY SCHEDULE CONTRACTING

38.1 Federal Supply Schedule Program
38.2 Establishing and Administering Federal Supply Schedules

## PART 39—ACQUISITION OF INFORMATION TECHNOLOGY

39.1 General
39.2 Electronic and Information Technology

## PART 40—RESERVED

## PART 41—ACQUISITION OF UTILITY SERVICES

41.1 General
41.2 Acquiring Utility Services
41.3 Requests for Assistance
41.4 Administration
41.5 Solicitation Provision and Contract Clauses
41.6 Forms
41.7 Formats

# SUBCHAPTER G—CONTRACT MANAGEMENT


## PART 42—CONTRACT ADMINISTRATION AND AUDIT SERVICES

42.1 Contract Audit Services
42.2 Contract Administration Services
42.3 Contract Administration Office Functions
42.4 Correspondence and Visits
42.5 Postaward Orientation
42.6 Corporate Administrative Contracting Officer
42.7 Indirect Cost Rates
42.8 Disallowance of Costs
42.9 Bankruptcy
42.10 [Reserved]
42.11 Production Surveillance and Reporting
42.12 Novation and Change-of-Name Agreements
42.13 Suspension of Work, Stop-Work Orders, and Government Delay of Work
42.14 Traffic and Transportation Management
42.15 Contractor Performance Information
42.16 Small Business Contract Administration
42.17 Forward Pricing Rate Agreements

## PART 43—CONTRACT MODIFICATIONS

43.1 General
43.2 Change Orders
43.3 Forms

## PART 44—SUBCONTRACTING POLICIES AND PROCEDURES

44.1 General
44.2 Consent to Subcontracts
44.3 Contractors' Purchasing Systems Reviews
44.4 Subcontracts for Commercial Items and Commercial Components

## PART 45—GOVERNMENT PROPERTY

45.1 General
45.2 Competitive Advantage
45.3 Providing Government Property to Contractors
45.4 Contractor Use and Rental of Government Property
45.5 Management of Government Property in the Possession of Contractors
45.6 Reporting, Redistribution, and Disposal of Contractor Inventory

## PART 46—QUALITY ASSURANCE

46.1 General
46.2 Contract Quality Requirements
46.3 Contract Clauses
46.4 Government Contract Quality Assurance
46.5 Acceptance
46.6 Material Inspection and Receiving Reports
46.7 Warranties
46.8 Contractor Liability for Loss of or Damage to Property of the Government

## PART 47—TRANSPORTATION

47.1 General
47.2 Contracts for Transportation or for Transportation-Related Services
47.3 Transportation in Supply Contracts
47.4 Air Transportation by U.S.-Flag Carriers
47.5 Ocean Transportation by U.S.-Flag Vessels

## PART 48—VALUE ENGINEERING

48.1 Policies and Procedures
48.2 Contract Clauses

## PART 49—TERMINATION OF CONTRACTS

49.1 General Principles
49.2 Additional Principles for Fixed-Price Contracts Terminated for Convenience
49.3 Additional Principles for Cost-Reimbursement Contracts Terminated for Convenience
49.4 Termination for Default
49.5 Contract Termination Clauses
49.6 Contract Termination Forms and Formats

## PART 50—EXTRAORDINARY CONTRACTUAL ACTIONS

50.1 General
50.2 Delegation of and Limitations on Exercise of Authority
50.3 Contract Adjustments
50.4 Residual Powers

## PART 51—USE OF GOVERNMENT SOURCES BY CONTRACTORS

51.1 Contractor Use of Government Supply Sources
51.2 Contractor Use of Interagency Fleet Management System (IFMS) Vehicles

# SUBCHAPTER H—CLAUSES AND FORMS

## PART 52—SOLICITATION PROVISIONS AND CONTRACT CLAUSES

52.1 Instructions for Using Provisions and Clauses
52.2 Text of Provisions and Clauses
52.3 Provision and Clause Matrix

## INDEX

# PART 15—CONTRACTING BY NEGOTIATION

*Sec.*
15.000 Scope of part.
15.001 Definitions.
15.002 Types of negotiated acquisition.
15.003 Negotiation authority.
15.004 Mandatory justification requirement.

**Subpart 15.1—Source Selection Processes and Techniques**

15.100 Scope of subpart.
15.101 Best value continuum.
15.101-1 Tradeoff process.
15.101-2 Lowest price technically acceptable source selection process.
15.102 Oral presentations.

**Subpart 15.2—Solicitation and Receipt of Proposals and Information**

15.200 Scope of subpart.
15.201 Exchanges with industry before receipt of proposals.
15.202 Advisory multi-step process.
15.203 Requests for proposals.
15.204 Contract format.
15.204-1 Uniform contract format.
15.204-2 Part I—The Schedule.
15.204-3 Part II—Contract Clauses.
15.204-4 Part III—List of Documents, Exhibits, and Other Attachments.
15.204-5 Part IV—Representations and Instructions.
15.205 Issuing solicitations.
15.206 Amending the solicitation.
15.207 Handling proposals and information.
15.208 Submission, modification, revision, and withdrawal of proposals.
15.209 Solicitation provisions and contract clauses.
15.210 Forms.

**Subpart 15.3—Source Selection**

15.300 Scope of subpart.
15.301 [Reserved]
15.302 Source selection objective.
15.303 Responsibilities.
15.304 Evaluation factors and significant subfactors.
15.305 Proposal evaluation.
15.306 Exchanges with offerors after receipt of proposals.
15.307 Proposal revisions.
15.308 Source selection decision.

**Subpart 15.4—Contract Pricing**

15.400 Scope of subpart.
15.401 Definitions.
15.402 Pricing policy.
15.403 Obtaining cost or pricing data.
15.403-1 Prohibition on obtaining cost or pricing data (10 U.S.C. 2306a and 41 U.S.C. 254b).
15.403-2 Other circumstances where cost or pricing data are not required.
15.403-3 Requiring information other than cost or pricing data.
15.403-4 Requiring cost or pricing data (10 U.S.C. 2306a and 41 U.S.C. 254b).
15.403-5 Instructions for submission of cost or pricing data or information other than cost or pricing data.
15.404 Proposal analysis.
15.404-1 Proposal analysis techniques.
15.404-2 Information to support proposal analysis.
15.404-3 Subcontract pricing considerations.
15.404-4 Profit.
15.405 Price negotiation.
15.406 Documentation.
15.406-1 Prenegotiation objectives.
15.406-2 Certificate of Current Cost or Pricing Data.
15.406-3 Documenting the negotiation.
15.407 Special cost or pricing areas.
15.407-1 Defective cost or pricing data.
15.407-2 Make-or-buy programs.
15.407-3 Forward pricing rate agreements.
15.407-4 Should-cost review.
15.407-5 Estimating systems.
15.408 Solicitation provisions and contract clauses.

**Subpart 15.5—Preaward, Award, and Postaward Notifications, Protests, and Mistakes**

15.501 Definition.
15.502 Applicability.
15.503 Notifications to unsuccessful offerors.
15.504 Award to successful offeror.
15.505 Preaward debriefing of offerors.
15.506 Postaward debriefing of offerors.
15.507 Protests against award.
15.508 Discovery of mistakes.
15.509 Forms.

**Subpart 15.6—Unsolicited Proposals**

15.600 Scope of subpart.
15.601 Definitions.
15.602 Policy.
15.603 General.
15.604 Agency points of contact.
15.605 Content of unsolicited proposals.
15.606 Procedures.
15.606-1 Receipt and initial review.
15.606-2 Evaluation.
15.607 Criteria for acceptance and negotiation of an unsolicited proposal.
15.608 Prohibitions.

15.609 Limited use of data.

**15.000 Scope of part.**

This part prescribes policies and procedures governing competitive and noncompetitive negotiated acquisitions. A contract awarded using other than sealed bidding procedures is a negotiated contract (see 14.101).

**15.001 Definitions.**

As used in this part—

"Deficiency" is a material failure of a proposal to meet a Government requirement or a combination of significant weaknesses in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level.

"Proposal modification" is a change made to a proposal before the solicitation closing date and time, or made in response to an amendment, or made to correct a mistake at any time before award.

"Proposal revision" is a change to a proposal made after the solicitation closing date, at the request of or as allowed by a contracting officer, as the result of negotiations.

"Weakness" means a flaw in the proposal that increases the risk of unsuccessful contract performance. A "significant weakness" in the proposal is a flaw that appreciably increases the risk of unsuccessful contract performance.

**15.002 Types of negotiated acquisition.**

(a) *Sole source acquisitions.* When contracting in a sole source environment, the request for proposals (RFP) should be tailored to remove unnecessary information and requirements; *e.g.*, evaluation criteria and voluminous proposal preparation instructions.

(b) *Competitive acquisitions.* When contracting in a competitive environment, the procedures of this part are intended to minimize the complexity of the solicitation, the evaluation, and the source selection decision, while maintaining a process designed to foster an impartial and comprehensive evaluation of offerors' proposals, leading to selection of the proposal representing the best value to the Government (see 2.101).

**15.003 Negotiation authority.**

Pursuant to the authority of 44 U.S.C. 311, the Public Printer may negotiate purchases and contracts for supplies or services for which the Public Printer determines that it is impracticable to secure competition by advertising.

**15.004 Mandatory justification requirement.**

The Public printer may not award a contract under this section unless the justification (D&F) for this use of negotiation is in writing and a certification is made as to the accuracy and completeness of this justification. The justification shall set out the facts and circumstances that clearly and convincingly establish that advertising would not be practicable for such contract. This justification is final and a copy thereof shall be maintained in GPO for at least 6 years after the date of the determination. The Public Printer has designated the Director, MMS to sign the D&F and certify as to the accuracy and completeness of the justification.

## Subpart 15.1—Source Selection Processes and Techniques

**15.100 Scope of subpart.**

This subpart describes some of the acquisition processes and techniques that may be used to design competitive acquisition strategies suitable for the specific circumstances of the acquisition.

**15.101 Best value continuum.**

The GPO can obtain best value in negotiated acquisitions by using any one or a combination of source selection approaches. In different types of acquisitions, the relative importance of cost or price may vary. For example, in acquisitions where the requirement is clearly definable and the risk of unsuccessful contract performance is minimal, cost or price may play a dominant role in source selection. The less definitive the requirement, the more development work required, or the greater the performance risk, the more technical or past performance considerations may play a dominant role in source selection.

**15.101-1 Tradeoff process.**

(a) A tradeoff process is appropriate when it may be in the best interest of the Government to consider award to other than the lowest priced offeror or other than the highest technically rated offeror.

(b) When using a tradeoff process, the following apply:

(1) All evaluation factors and significant subfactors that will affect contract award and their relative importance shall be clearly stated in the solicitation; and

(2) The solicitation shall state whether all evaluation factors other than cost or price, when combined, are significantly more important than, approximately equal to, or significantly less important than cost or price.

(c) This process permits tradeoffs among cost or price and non-cost factors and allows the Government to accept other than the lowest priced proposal. The perceived benefits of the higher priced proposal shall merit the additional cost, and the rationale for tradeoffs must be documented in the file in accordance with 15.406.

**15.101-2 Lowest price technically acceptable source selection process.**

(a) The lowest price technically acceptable source selection process is appropriate when best value is expected to result from selection of the technically acceptable proposal with the lowest evaluated price.

(b) When using the lowest price technically acceptable process, the following apply:

(1) The evaluation factors and significant subfactors that establish the requirements of acceptability shall be set forth in the solicitation. Solicitations shall specify that award will be made on the basis of the lowest evaluated price of proposals meeting or exceeding the acceptability standards for non-cost factors. If the contracting officer documents the file pursuant to 15.304(c)(3)(iv), past performance need not be an evaluation factor in lowest price technically acceptable source selections. If the contracting officer elects to consider past performance as an evaluation factor, it shall be evaluated in accordance with 15.305. However, the comparative assessment in 15.305(a)(2)(i) does not apply.

(2) Tradeoffs are not permitted.

(3) Proposals are evaluated for acceptability but not ranked using the non-cost/price factors.

(4) Exchanges may occur (see 15.306).

**15.102 Oral presentations.**

(a) Oral presentations by offerors as requested by the Government may substitute for, or augment, written information. Use of oral presentations as a substitute for portions of a proposal can be effective in streamlining the source selection process. Oral presentations may occur at any time in the acquisition process, and are subject to the same restrictions as written information, regarding timing (see 15.208) and content (see 15.306). Oral presentations provide an opportunity for dialogue among the parties. Pre-recorded videotaped presentations that lack real-time interactive dialogue are not considered oral presentations for the purposes of this section, although they may be included in offeror submissions, when appropriate.

(b) The solicitation may require each offeror to submit part of its proposal through oral presentations. However, certifications, representations, and a signed offer sheet (including any exceptions to the Government's terms and conditions) shall be submitted in writing.

(c) Information pertaining to areas such as an offeror's capability, past performance, work plans or approaches, staffing resources, transition plans, or sample tasks (or other types of tests) may be suitable for oral presentations. In deciding what information to obtain through an oral presentation, consider the following:

(1) The Government's ability to adequately evaluate the information;

(2) The need to incorporate any information into the resultant contract;

(3) The impact on the efficiency of the acquisition; and

(4) The impact (including cost) on small businesses. In considering the costs of oral presentations, contracting officers should also consider alternatives to on-site oral presentations (*e.g.*, teleconferencing, video teleconferencing).

(d) When oral presentations are required, the solicitation shall provide offerors with sufficient information to prepare them. Accordingly, the solicitation may describe—

(1) The types of information to be presented orally and the associated evaluation factors that will be used;

(2) The qualifications for personnel that will be required to provide the oral presentation(s);

(3) The requirements for, and any limitations and/or prohibitions on, the use of written material or other media to supplement the oral presentations;

(4) The location, date, and time for the oral presentations;

(5) The restrictions governing the time permitted for each oral presentation; and

(6) The scope and content of exchanges that may occur between the Government's participants and the offeror's representatives as part of the oral presentations, including whether or not discussions (see 15.306(d)) will be permitted during oral presentations.

(e) The contracting officer shall maintain a record of oral presentations to document what the Government relied upon in making the source selection decision. The method and level of detail of the record (*e.g.*, videotaping, audio tape recording, written record, Government notes, copies of offeror briefing slides or presentation notes) shall be at the discretion of the source selection authority. A copy of the record placed in the file may be provided to the offeror.

(f) When an oral presentation includes information that the parties intend to include in the contract as material terms or conditions, the information shall be put in writing. Incorporation by reference of oral statements is not permitted.

(g) If, during an oral presentation, the Government conducts discussions (see 15.306(d)), the Government must comply with 15.306 and 15.307.

## Subpart 15.2—Solicitation and Receipt of Proposals and Information

**15.200 Scope of subpart.**

This subpart prescribes policies and procedures for—

(a) Exchanging information with industry prior to receipt of proposals;

(b) Preparing and issuing requests for proposals (RFPs) and requests for information (RFIs); and

(c) Receiving proposals and information.

**15.201 Exchanges with industry before receipt of proposals.**

(a) Exchanges of information among all interested parties, from the earliest identification of a requirement through receipt of proposals, are encouraged. Any exchange of information must be consistent with procurement integrity requirements (see 3.104). Interested parties include potential offerors, end users, Government acquisition and supporting personnel, and others involved in the conduct or outcome of the acquisition.

(b) The purpose of exchanging information is to improve the understanding of Government requirements and industry capabilities, thereby allowing potential offerors to judge whether or how they can satisfy the Government's requirements, and enhancing the Government's ability to obtain quality supplies and services, including construction, at reasonable prices, and increase efficiency in proposal preparation, proposal evaluation, negotiation, and contract award.

(c) MMS should promote early exchanges of information about future acquisitions. An early exchange of information among industry and the program manager, contracting officer, and other participants in the acquisition process can identify and resolve concerns regarding the acquisition strategy, including proposed contract type, terms and conditions, and acquisition planning schedules; the feasibility of the requirement, including performance requirements, statements of work, and data requirements; the suitability of the proposal instructions and evaluation criteria, including the approach for assessing past performance information; the availability of reference documents; and any other industry concerns or questions. Some techniques to promote early exchanges of information are—

(1) Industry or small business conferences;

(2) Public hearings;

(3) Market research, as described in Part 10;

(4) One-on-one meetings with potential offerors (any that are substantially involved with potential contract terms and conditions should include the contracting officer; also see paragraph (f) of this section regarding restrictions on disclosure of information);

(5) Presolicitation notices;

(6) Draft RFPs;

(7) RFIs;

(8) Presolicitation or preproposal conferences; and

(9) Site visits.

(d) The special notices of procurement matters at 5.205(c), or electronic notices, may be used to publicize the Government's requirement or solicit information from industry.

(e) RFIs may be used when the Government does not presently intend to award a contract, but wants to obtain price, delivery, other market information, or capabilities for planning purposes. Responses to these notices are not offers and cannot be accepted by the Government to form a binding contract. There is no required format for RFIs.

(f) General information about agency mission needs and future requirements may be disclosed at any time. After release of the solicitation, the contracting officer must be the focal point of any exchange with potential offerors. When specific information about a proposed acquisition that would be necessary for the preparation of proposals is disclosed to one or more potential offerors, that information must be made available to the public as soon as practicable, but no later than the next general release of information, in order to avoid creating an unfair competitive advantage. Information provided to a potential offeror in response to its request must not be disclosed if doing so would reveal the potential offeror's confidential business strategy, and is protected under 3.104 or Subpart 24.2. When conducting a presolicitation or preproposal conference, materials distributed at the conference should be made available to all potential offerors, upon request.

**15.202 Advisory multi-step process.**

(a) MMS may publish a presolicitation notice (see 5.204) that provides a general description of the scope or purpose of the acquisition and invites potential offerors to submit information that allows the Government to advise the offerors about their potential to be viable competitors. The presolicitation notice should identify the information that must be submitted and the criteria that will be used in making the initial evaluation. Information sought may be limited to a statement of qualifications and other appropriate information (*e.g.*, proposed technical concept, past performance, and limited pricing information). At a minimum, the notice shall contain sufficient information to permit a potential offeror to make an informed decision about whether to participate in the acquisition. This process should not be used for multi-step acquisitions where it would result in offerors being required to submit identical information in response to the notice and in response to the initial step of the acquisition.

(b) MMS shall evaluate all responses in accordance with the criteria stated in the notice, and shall advise each respondent in writing either that it will be invited to participate in the resultant acquisition or, based on the information submitted, that it is unlikely to be a viable competitor. MMS shall advise

respondents considered not to be viable competitors of the general basis for that opinion. MMS shall inform all respondents that, notwithstanding the advice provided by the Government in response to their submissions, they may participate in the resultant acquisition.

**15.203 Requests for proposals.**

(a) Requests for proposals (RFPs) are used in negotiated acquisitions to communicate Government requirements to prospective contractors and to solicit proposals. RFPs for competitive acquisitions shall, at a minimum, describe the—

(1) Government's requirement;

(2) Anticipated terms and conditions that will apply to the contract:

(i) The solicitation may authorize offerors to propose alternative terms and conditions, including the contract line item number (CLIN) structure; and

(ii) When alternative CLIN structures are permitted, the evaluation approach should consider the potential impact on other terms and conditions or the requirement (*e.g.*, place of performance or payment and funding requirements) (see 15.206);

(3) Information required to be in the offeror's proposal; and

(4) Factors and significant subfactors that will be used to evaluate the proposal and their relative importance.

(b) Electronic commerce may be used to issue RFPs and to receive proposals, modifications, and revisions. In this case, the RFP shall specify the electronic commerce method(s) that offerors may use (see Subpart 4.5).

(c) Contracting officers may issue RFPs and/or authorize receipt of proposals, modifications, or revisions by facsimile.

(1) In deciding whether or not to use facsimiles, the contracting officer should consider factors such as—

(i) Anticipated proposal size and volume;

(ii) Urgency of the requirement;

(iii) Availability and suitability of electronic commerce methods; and

(iv) Adequacy of administrative procedures and controls for receiving, identifying, recording, and safeguarding facsimile proposals, and ensuring their timely delivery to the designated proposal delivery location.

(2) If facsimile proposals are authorized, contracting officers may request offeror(s) to provide the complete, original signed proposal at a later date.

(d) Letter RFPs may be used in sole source acquisitions and other appropriate circumstances. Use of a letter RFP does not relieve the contracting officer from complying with other MMAR requirements. Letter RFPs should be as complete as possible and, at a minimum, should contain the following:

(1) RFP number and date;

(2) Name, address (including electronic address and facsimile address, if appropriate), and telephone number of the contracting officer;

(3) Type of contract contemplated;

(4) Quantity, description, and required delivery dates for the item;

(5) Applicable certifications and representations;

(6) Anticipated contract terms and conditions;

(7) Instructions to offerors and evaluation criteria for other than sole source actions;

(8) Proposal due date and time; and

(9) Other relevant information; *e.g.*, incentives, variations in delivery schedule, cost proposal support, and data requirements.

(e) Oral RFPs are authorized when processing a written solicitation would delay the acquisition of supplies or services to the detriment of the Government and a notice is not required under 5.202 (*e.g.*, perishable items and support of contingency operations or other emergency situations). Use of an oral RFP does not relieve the contracting officer from complying with other MMAR requirements.

(1) The contract files supporting oral solicitations should include—

(i) A description of the requirement;

(ii) Rationale for use of an oral solicitation;

(iii) Sources solicited, including the date, time, name of individuals contacted, and prices offered; and

(iv) The solicitation number provided to the prospective offerors.

(2) The information furnished to potential offerors under oral solicitations should include appropriate items from paragraph (e) of this section.

**15.204 Contract format.**

The use of a uniform contract format facilitates preparation of the solicitation and contract as well as reference to, and use of, those documents by offerors, contractors, and contract administrators. The uniform contract format need not be used for the following:

(a) Construction and architect-engineer contracts (see Part 36).

(b) Subsistence contracts.

(c) Supplies or services contracts requiring special contract formats prescribed elsewhere in this regulation that are inconsistent with the uniform format.

(d) Letter requests for proposals (see 15.203(e)).

(e) Contracts exempted by the agency head or designee.

**15.204-1 Uniform contract format.**

(a) Contracting officers shall prepare solicitations and resulting contracts using the uniform contract format outlined in Table 15-1 of this subsection.

(b) Solicitations using the uniform contract format shall include Parts I, II, III, and IV (see 15.204-2 through 15.204-5). Upon award, contracting officers shall not physically include Part IV in the resulting contract, but shall retain it in the contract file. Section K shall be incorporated by reference in the contract.

**TABLE 15-1—UNIFORM CONTRACT FORMAT**

| SECTION | TITLE |
|---|---|
| | Part I—The Schedule |
| A | Solicitation/contract form |
| B | Supplies or services and prices/costs |
| C | Description/specifications/statement of work |
| D | Packaging and marking |
| E | Inspection and acceptance |
| F | Deliveries or performance |
| G | Contract administration data |
| H | Special contract requirements |
| | Part II—Contract Clauses |
| I | Contract clauses |
| | Part III—List of Documents, Exhibits, and Other Attachments |
| J | List of attachments |
| | Part IV—Representations and Instructions |
| K | Representations, certifications, and other statements of offerors or respondents |
| L | Instructions, conditions, and notices to offerors or respondents |
| M | Evaluation factors for award |

**15.204-2 Part I—The Schedule.**

The contracting officer shall prepare the contract Schedule as follows:

(a) *Section A, Solicitation/contract form.* (1) Optional Form (OF) 308, Solicitation and Offer—Negotiated Acquisition, or Standard Form (SF) 33, Solicitation, Offer and Award, may be used to prepare RFPs.

(2) When other than OF 308 or SF 33 is used, include the following information on the first page of the solicitation:

(i) Name, address, and location of issuing activity, including room and building where proposals or information must be submitted.

(ii) Solicitation number.

(iii) Date of issuance.

(iv) Closing date and time.

(v) Number of pages.

(vi) Requisition or other purchase authority.

(vii) Brief description of item or service.

(viii) Requirement for the offeror to provide its name and complete address, including street, city, county, state, and zip code, and electronic address (including facsimile address), if appropriate.

(ix) Offer expiration date.

(b) *Section B, Supplies or services and prices/costs.* Include a brief description of the supplies or services; *e.g.*, item number, national stock number/part number if applicable, nouns, nomenclature, and quantities. (This includes incidental deliverables such as manuals and reports.)

(c) *Section C, Description/specifications/statement of work.* Include any description or specifications needed in addition to Section B (see Part 11, Describing Agency Needs).

(d) *Section D, Packaging and marking.* Provide packaging, packing, preservation, and marking requirements, if any.

(e) *Section E, Inspection and acceptance.* Include inspection, acceptance, quality assurance, and reliability requirements (see Part 46, Quality Assurance).

(f) *Section F, Deliveries or performance.* Specify the requirements for time, place, and method of delivery or performance (see Subpart 11.4, Delivery or Performance Schedules, and 47.301-1).

(g) *Section G, Contract administration data.* Include any required accounting and appropriation data and any required contract administration information or instructions other than those on the solicitation form. Include a statement that the offeror should include the payment address in the proposal, if it is different from that shown for the offeror.

(h) *Section H, Special contract requirements.* Include a clear statement of any special contract requirements that are not included in Section I, Contract clauses, or in other sections of the uniform contract format.

**15.204-3 Part II—Contract Clauses.**

*Section I, Contract clauses.* The contracting officer shall include in this section the clauses required by law or by this regulation and any additional clauses expected to be included in any resulting contract, if these clauses are not required in any other section of the uniform contract format. An index may be inserted if this section's format is particularly complex.

**15.204-4 Part III—List of Documents, Exhibits, and Other Attachments.**

*Section J, List of attachments.* The contracting officer shall list the title, date, and number of pages for each attached document, exhibit, and other attachment. Cross-references to material in other sections may be inserted, as appropriate.

**15.204-5 Part IV—Representations and Instructions.**

The contracting officer shall prepare the representations and instructions as follows:

(a) *Section K, Representations, certifications, and other statements of offerors.* Include in this section those solicitation provisions that require representations, certifications, or the submission of other information by offerors.

(b) *Section L, Instructions, conditions, and notices to offerors or respondents.* Insert in this section solicitation provisions and other information and instructions not required elsewhere to guide offerors or respondents in preparing proposals or responses to requests for information. Prospective offerors or respondents may be instructed to submit proposals or information in a specific format or severable parts to facilitate evaluation. The instructions may specify further organization of proposal or response parts, such as—

(1) Administrative;

(2) Management;

(3) Technical;

(4) Past performance; and

(5) Cost or pricing data (see Table 15-2 of 15.408) or information other than cost or pricing data.

(c) *Section M, Evaluation factors for award.* Identify all significant factors and any significant subfactors that will be considered in awarding the contract and their relative importance (see 15.304(d)). The contracting officer shall insert one of the phrases in 15.304(e).

**15.205 Issuing solicitations.**

(a) The contracting officer shall issue solicitations to potential sources in accordance with the policies and procedures in 5.102, 19.202-4, and Part 6.

(b) A master solicitation, as described in 14.203-3, may also be used for negotiated acquisitions.

**15.206 Amending the solicitation.**

(a) When, either before or after receipt of proposals, the Government changes its requirements or terms and conditions, the contracting officer shall amend the solicitation.

(b) Amendments issued before the established time and date for receipt of proposals shall be issued to all parties receiving the solicitation.

(c) Amendments issued after the established time and date for receipt of proposals shall be issued to all offerors that have not been eliminated from the competition.

(d) If a proposal of interest to the Government involves a departure from the stated requirements, the contracting officer shall amend the solicitation, provided this can be done without revealing to the other offerors the alternate solution proposed or any other information that is entitled to protection (see 15.207(b) and 15.306(e)).

(e) If, in the judgment of the contracting officer, based on market research or otherwise, an amendment proposed for issuance after offers have been received is so substantial as to exceed what prospective offerors reasonably could have anticipated, so that additional sources likely would have submitted offers had the substance of the amendment been known to them, the contracting officer shall cancel the original solicitation and issue a new one, regardless of the stage of the acquisition.

(f) Oral notices may be used when time is of the essence. The contracting officer shall document the contract file and formalize the notice with an amendment (see Subpart 4.5, Electronic Commerce in Contracting).

(g) At a minimum, the following information should be included in each amendment:

(1) Name and address of issuing activity.

(2) Solicitation number and date.

(3) Amendment number and date.

(4) Number of pages.

(5) Description of the change being made.

(6) Government point of contact and phone number (and electronic or facsimile address, if appropriate).

(7) Revision to solicitation closing date, if applicable.

**15.207 Handling proposals and information.**

(a) Upon receipt at the location specified in the solicitation, proposals and information received in response to a request for information (RFI) shall be marked with the date and time of receipt and shall be transmitted to the designated officials.

(b) Proposals shall be safeguarded from unauthorized disclosure throughout the source selection process. (See 3.104 regarding the disclosure of source selection information (41 U.S.C. 423)). Information received in response to an RFI shall be safeguarded adequately from unauthorized disclosure.

(c) If any portion of a proposal received by the contracting officer electronically or by facsimile is unreadable, the contracting officer immediately shall notify the offeror and permit the offeror to resubmit the unreadable portion of the proposal. The method and time for resubmission shall be prescribed by the contracting officer after consultation with the offeror, and documented in the file. The resubmission shall be considered as if it were received at the date and time of the original unreadable submission for the purpose of determining timeliness under 15.208(a), provided the offeror complies with the time and format requirements for resubmission prescribed by the contracting officer.

**15.208 Submission, modification, revision, and withdrawal of proposals.**

(a) Offerors are responsible for submitting proposals, and any revisions, and modifications, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. Offerors may use any transmission method authorized by the solicitation (*i.e.*, regular mail, electronic commerce, or facsimile). If no time is specified in the solici-

tation, the time for receipt is 4:30 p.m., local time, for the designated Government office on the date that proposals are due.

(b)(1) Any proposal, modification, or revision, that is received at the designated Government office after the exact time specified for receipt of proposals is "late" and will not be considered unless it is received before award is made, the contracting officer determines that accepting the late proposal would not unduly delay the acquisition; and—

(i) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of proposals; or

(ii) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of proposals and was under the Government's control prior to the time set for receipt of proposals; or

(iii) It was the only proposal received.

(2) However, a late modification of an otherwise successful proposal, that makes its terms more favorable to the Government, will be considered at any time it is received and may be accepted.

(c) Acceptable evidence to establish the time of receipt at the Government installation includes the time/date stamp of that installation on the proposal wrapper, other documentary evidence of receipt maintained by the installation, or oral testimony or statements of Government personnel.

(d) If an emergency or unanticipated event interrupts normal Government processes so that proposals cannot be received at the Government office designated for receipt of proposals by the exact time specified in the solicitation, and urgent Government requirements preclude amendment of the solicitation closing date, the time specified for receipt of proposals will be deemed to be extended to the same time of day specified in the solicitation on the first work day on which normal Government processes resume.

(e) Proposals may be withdrawn by written notice at any time before award. Oral proposals in response to oral solicitations may be withdrawn orally. The contracting officer must document the contract file when oral withdrawals are made. One copy of withdrawn proposals should be retained in the contract file (see 4.803(a)(10)). Extra copies of the withdrawn proposals may be destroyed or returned to the offeror at the offeror's request. Where practicable, electronically transmitted proposals that are withdrawn must be purged from primary and backup data storage systems after a copy is made for the file. Extremely bulky proposals must only be returned at the offeror's request and expense.

(f) The contracting officer must promptly notify any offeror if its proposal, modification, or revision was received late, and must inform the offeror whether its proposal will be considered, unless contract award is imminent and the notice prescribed in 15.503(b) would suffice.

(g) Late proposals and modifications that are not considered must be held unopened, unless opened for identification, until after award and then retained with other unsuccessful proposals.

(h) If available, the following must be included in the contracting office files for each late proposal, modification, revision, or withdrawal:

(1) The date and hour of receipt.

(2) A statement regarding whether the proposal was considered for award, with supporting rationale.

(3) The envelope, wrapper, or other evidence of date of receipt.

**15.209 Solicitation provisions and contract clauses.**

When contracting by negotiation—

(a) The contracting officer shall insert the provision at 52.215-1, Instructions to Offerors—Competitive Acquisition, in all competitive solicitations where the Government intends to award a contract without discussions.

(1) If the Government intends to make award after discussions with offerors within the competitive range, the contracting officer shall use the basic provision with its Alternate I.

(2) If the Government would be willing to accept alternate proposals, the contracting officer shall alter the basic clause to add a new paragraph (c)(9) substantially the same as Alternate II.

(b)(1) The contracting officer shall insert the clause at 52.215-2, Audit and Records-Negotiation (10 U.S.C. 2313, 41 U.S.C. 254d, and OMB Circular No. A-133), in solicitations and contracts except those for—

(i) Acquisitions not exceeding the simplified acquisition threshold;

(ii) The acquisition of utility services at rates not exceeding those established to apply uniformly to the general public, plus any applicable reasonable connection charge; or

(iii) The acquisition of commercial items exempted under 15.403-1.

(2) For facilities acquisitions, the contracting officer shall use the clause with its Alternate I.

(3) For cost-reimbursement contracts with State and local Governments, educational institutions, and other nonprofit organizations, the contracting officer shall use the clause with its Alternate II.

(4) When the head of the agency has waived the examination of records by the Comptroller General in accordance with 25.1001, use the clause with its Alternate III.

(c) When issuing a solicitation for information or planning purposes, the contracting officer shall insert the provision at 52.215-3, Request for Information or Solicitation for Planning Purposes, and clearly mark on the face of the solicitation that it is for information or planning purposes.

(d) [Reserved]

(e) The contracting officer shall insert the provision at 52.215-5, Facsimile Proposals, in solicitations if facsimile proposals are authorized (see 15.203(d)).

(f) The contracting officer shall insert the provision at 52.215-6, Place of Performance, in solicitations unless the place of performance is specified by the Government.

(g) The contracting officer shall insert the provision at 52.215-7, Annual Representations and Certifications—Negotiation, in solicitations if annual representations and certifications are used (see 14.213).

(h) The contracting officer shall insert the clause at 52.215-8, Order of Precedence—Uniform Contract Format, in solicitations and contracts using the format at 15.204.

**15.210 Forms.**

Prescribed forms are not required to prepare solicitations described in this part. The following forms may be used at the discretion of the contracting officer:

(a) Standard Form 33, Solicitation, Offer and Award, and Optional Form 308, Solicitation and Offer—Negotiated Acquisition, may be used to issue RFPs and RFIs.

(b) Standard Form 30, Amendment of Solicitation/ Modification of Contract, and Optional Form 309, Amendment of Solicitation, may be used to amend solicitations of negotiated contracts.

(c) Optional Form 17, Offer Label, may be furnished with each request for proposal.

## Subpart 15.3—Source Selection

**15.300 Scope of subpart.**

This subpart prescribes policies and procedures for selection of a source or sources in competitive negotiated acquisitions.

**15.301 [Reserved]**

**15.302 Source selection objective.**

The objective of source selection is to select the proposal that represents the best value.

**15.303 Responsibilities.**

(a) The Public Printer is responsible for source selection. The contracting officer is designated as the source selection authority, unless the Public Printer appoints another individual for a particular acquisition or group of acquisitions.

(b) The source selection authority shall—

(1) Establish an evaluation team, tailored for the particular acquisition, that includes appropriate contracting, legal, logistics, technical, and other expertise to ensure a comprehensive evaluation of offers;

(2) Approve the source selection strategy or acquisition plan, if applicable, before solicitation release;

(3) Ensure consistency among the solicitation requirements, notices to offerors, proposal preparation instructions, evaluation factors and subfactors, solicitation provisions or contract clauses, and data requirements;

(4) Ensure that proposals are evaluated based solely on the factors and subfactors contained in the solicitation;

(5) Consider the recommendations of advisory boards or panels (if any); and

(6) Select the source or sources whose proposal is the best value to the Government.

(c) The contracting officer shall—

(1) After release of a solicitation, serve as the focal point for inquiries from actual or prospective offerors;

(2) After receipt of proposals, control exchanges with offerors in accordance with 15.306; and

(3) Award the contract(s).

**15.304 Evaluation factors and significant subfactors.**

(a) The award decision is based on evaluation factors and significant subfactors that are tailored to the acquisition.

(b) Evaluation factors and significant subfactors must—

(1) Represent the key areas of importance and emphasis to be considered in the source selection decision; and

(2) Support meaningful comparison and discrimination between and among competing proposals.

(c) The evaluation factors and significant subfactors that apply to an acquisition and their relative importance, are within the broad discretion of agency acquisition officials, subject to the following requirements:

(1) Price or cost to the Government shall be evaluated in every source selection (also see Part 36 for architect-engineer contracts);

(2) The quality of the product or service shall be addressed in every source selection through consideration of one or more non-cost evaluation factors such as past performance, compliance with solicitation requirements, technical excellence, management capability, personnel qualifications, and prior experience; and

(3)(i) Except as set forth in paragraph (c)(3)(iv) of this section, past performance shall be evaluated in all source selections for negotiated competitive acquisitions expected to exceed $1,000,000.

(ii) Except as set forth in paragraph (c)(3)(iv) of this section, past performance shall be evaluated in all source selections for negotiated competitive acquisitions expected to exceed $100,000.

(iii) Past performance need not be evaluated if the contracting officer documents the reason past performance is not an appropriate evaluation factor for the acquisition.

(d) All factors and significant subfactors that will affect contract award and their relative importance shall be stated clearly in the solicitation (see 15.204-5(c)). The rating method need not be disclosed in the solicitation. The general approach for evaluating past performance information shall be described.

(e) The solicitation shall also state, at a minimum, whether all evaluation factors other than cost or price, when combined, are—

(1) Significantly more important than cost or price;

(2) Approximately equal to cost or price; or

(3) Significantly less important than cost or price.

**15.305 Proposal evaluation.**

(a) Proposal evaluation is an assessment of the proposal and the offeror's ability to perform the prospective contract successfully. An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation. Evaluations may be conducted using any rating method or combination of methods, including color or adjectival ratings, numerical weights, and ordinal rankings. The relative strengths, deficiencies, significant weaknesses, and risks supporting proposal evaluation shall be documented in the contract file.

(1) *Cost or price evaluation.* Normally, competition establishes price reasonableness. Therefore, when contracting on a firm-fixed-price or fixed-price with economic price adjustment basis, comparison of the proposed prices will usually satisfy the requirement to perform a price analysis, and a cost analysis need not be performed. In limited situations, a cost analysis (see 15.403-1(c)(1)(i)(B)) may be appropriate to

establish reasonableness of the otherwise successful offeror's price. When contracting on a cost-reimbursement basis, evaluations shall include a cost realism analysis to determine what the Government should realistically expect to pay for the proposed effort, the offeror's understanding of the work, and the offeror's ability to perform the contract. (See 37.115 for uncompensated overtime evaluation.) The contracting officer shall document the cost or price evaluation.

(2) *Past performance evaluation.* (i) Past performance information is one indicator of an offeror's ability to perform the contract successfully. The currency and relevance of the information, source of the information, context of the data, and general trends in contractor's performance shall be considered. This comparative assessment of past performance information is separate from the responsibility determination required under Subpart 9.1.

(ii) The solicitation shall describe the approach for evaluating past performance, including evaluating offerors with no relevant performance history, and shall provide offerors an opportunity to identify past or current contracts (including Federal, State, and local government and private) for efforts similar to the Government requirement. The solicitation shall also authorize offerors to provide information on problems encountered on the identified contracts and the offeror's corrective actions. The Government shall consider this information, as well as information obtained from any other sources, when evaluating the offeror's past performance. The source selection authority shall determine the relevance of similar past performance information.

(iii) The evaluation should take into account past performance information regarding predecessor companies, key personnel who have relevant experience, or subcontractors that will perform major or critical aspects of the requirement when such information is relevant to the instant acquisition.

(iv) In the case of an offeror without a record of relevant past performance or for whom information on past performance is not available, the offeror may not be evaluated favorably or unfavorably on past performance

(3) *Technical evaluation.* When tradeoffs are performed (see 15.101-1), the source selection records shall include—

(i) An assessment of each offeror's ability to accomplish the technical requirements; and

(ii) A summary, matrix, or quantitative ranking, along with appropriate supporting narrative, of each technical proposal using the evaluation factors.

(4) *Cost information* Cost information may be provided to members of the technical evaluation team in accordance with agency procedures.

(b) The source selection authority may reject all proposals received in response to a solicitation, if doing so is in the best interest of the Government.

(c) For restrictions on the use of support contractor personnel in proposal evaluation, see 37.203(d).

**15.306 Exchanges with offerors after receipt of proposals.**

(a) *Clarifications and award without discussions.* (1) Clarifications are limited exchanges, between the Government and offerors, that may occur when award without discussions is contemplated.

(2) If award will be made without conducting discussions, offerors may be given the opportunity to clarify certain aspects of proposals (*e.g.*, the relevance of an offeror's past performance information and adverse past performance information to which the offeror has not previously had an opportunity to respond) or to resolve minor or clerical errors.

(3) Award may be made without discussions if the solicitation states that the Government intends to evaluate proposals and make award without discussions. If the solicitation contains such a notice and the Government determines it is necessary to conduct discussions, the rationale for doing so shall be documented in the contract file (see the provision at 52.215-1) .

(b) *Communications with offerors before establishment of the competitive range.* Communications are exchanges, between the Government and offerors, after receipt of proposals, leading to establishment of the competitive range. If a competitive range is to be established, these communications—

(1) Shall be limited to the offerors described in paragraphs (b)(1)(i) and (b)(1)(ii) of this section and—

(i) Shall be held with offerors whose past performance information is the determining factor preventing them from being placed within the competitive range. Such communications shall address adverse past performance information to which an offeror has not had a prior opportunity to respond; and

(ii) May only be held with those offerors (other than offerors under paragraph (b)(1)(i) of this section) whose exclusion from, or inclusion in, the competitive range is uncertain;

(2) May be conducted to enhance Government understanding of proposals; allow reasonable interpretation of the proposal; or facilitate the Government's evaluation process. Such communications shall not be used to cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal, and/or otherwise revise the proposal. Such communications may be considered in rating proposals for the purpose of establishing the competitive range;

(3) Are for the purpose of addressing issues that must be explored to determine whether a proposal should be placed in the competitive range. Such communications shall not provide an opportunity for the offeror to revise its proposal, but may address—

(i) Ambiguities in the proposal or other concerns (*e.g.*, perceived deficiencies, weaknesses, errors, omissions, or mistakes (see 14.407)); and

(ii) Information relating to relevant past performance; and

(4) Shall address adverse past performance information to which the offeror has not previously had an opportunity to comment.

(c) *Competitive range.* (1) Agencies shall evaluate all proposals in accordance with 15.305(a), and, if discussions are to be conducted, establish the competitive range. Based on the ratings of each proposal against all evaluation criteria, the contracting officer shall establish a competitive range comprised of all of the most highly rated proposals, unless the range is further reduced for purposes of efficiency pursuant to paragraph (c)(2) of this section.

(2) After evaluating all proposals in accordance with 15.305(a) and paragraph (c)(1) of this section, the contracting officer may determine that the number of most highly rated proposals that might otherwise be included in the competitive range exceeds the number at which an efficient competition can be conducted. Provided the solicitation notifies offerors that the competitive range can be limited for purposes of efficiency (see 52.215-1(f)(4)), the contracting officer may limit the number of proposals in the competitive range to the greatest number that will permit an efficient competition among the most highly rated proposals.

(3) If the contracting officer, after complying with paragraph (d)(3) of this section, decides that an offeror's proposal should no longer be included in the competitive range, the proposal shall be eliminated from consideration for award. Written notice of this decision shall be provided to unsuccessful offerors in accordance with 15.503.

(4) Offerors excluded or otherwise eliminated from the competitive range may request a debriefing (see 15.505 and 15.506).

(d) *Exchanges with offerors after establishment of the competitive range.* Negotiations are exchanges, in either a competitive or sole source environment, between the Government and offerors, that are undertaken with the intent of allowing the offeror to revise its proposal. These negotiations may include bargaining. Bargaining includes persuasion, alteration of assumptions and positions, give-and-take, and may apply to price, schedule, technical requirements, type of contract, or other terms of a proposed contract. When negotiations are conducted in a competitive acquisition, they take place after establishment of the competitive range and are called discussions.

(1) Discussions are tailored to each offeror's proposal, and must be conducted by the contracting officer with each offeror within the competitive range.

(2) The primary objective of discussions is to maximize the Government's ability to obtain best value, based on the requirement and the evaluation factors set forth in the solicitation.

(3) At a minimum, the contracting officer must, subject to paragraphs (d)(5) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond. The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award. However, the contracting officer is not required to discuss every area where the proposal could be improved. The scope and extent of discussions are a matter of contracting officer judgment.

(4) In discussing other aspects of the proposal, the Government may, in situations where the solicitation stated that evaluation credit would be given for technical solutions exceeding any mandatory minimums, negotiate with offerors for increased performance beyond any mandatory minimums, and the Government may suggest to offerors that have exceeded any mandatory minimums (in ways that are not integral to the design), that their proposals would be more competitive if the excesses were removed and the offered price decreased.

(5) If, after discussions have begun, an offeror originally in the competitive range is no longer considered to be among the most highly rated offerors being considered for award, that offeror may be eliminated from the competitive range whether or not all material aspects of the proposal have been discussed, or whether or not the offeror has been afforded an opportunity to submit a proposal revision (see 15.307(a) and 15.503(a)(1)).

(e) *Limits on exchanges.* Government personnel involved in the acquisition shall not engage in conduct that—

(1) Favors one offeror over another;

(2) Reveals an offeror's technical solution, including unique technology, innovative and unique uses of commercial items, or any information that would compromise an offeror's intellectual property to another offeror;

(3) Reveals an offeror's price without that offeror's permission. However, the contracting officer may inform an offeror that its price is considered by the Government to be too high, or too low, and reveal the results of the analysis supporting that conclusion. It is also permissible, at the Government's discretion, to indicate to all offerors the cost or price that the Government's price analysis, market research, and other reviews have identified as reasonable;

(4) Reveals the names of individuals providing reference information about an offeror's past performance; or

(5) Knowingly furnishes source selection information in violation of 3.104.

**15.307 Proposal revisions.**

(a) If an offeror's proposal is eliminated or otherwise removed from the competitive range, no further revisions to that offeror's proposal shall be accepted or considered.

(b) The contracting officer may request or allow proposal revisions to clarify and document understandings reached during negotiations. At the conclusion of discussions, each offeror still in the competitive range shall be given an opportunity to submit a final proposal revision. The contracting officer is required to establish a common cut-off date only for receipt of final proposal revisions. Requests for final proposal revisions shall advise offerors that the final proposal revisions shall be in writing and that the Government intends to make award without obtaining further revisions.

**15.308 Source selection decision.**

The source selection authority's (SSA) decision shall be based on a comparative assessment of proposals against all source selection criteria in the solicitation. While the SSA may use reports and analyses prepared by others, the source selection decision shall represent the SSA's independent judgment. The source selection decision shall be documented, and the documentation shall include the rationale for any business judgments and tradeoffs made or relied on by the SSA, including benefits associated with additional costs. Although the rationale for the selection decision must be documented, that documentation need not quantify the tradeoffs that led to the decision.

## Subpart 15.4—Contract Pricing

**15.400 Scope of subpart.**

This subpart prescribes the cost and price negotiation policies and procedures for pricing negotiated prime contracts (including subcontracts) and contract modifications, including modifications to contracts awarded by sealed bidding.

**15.401 Definitions.**

As used in this subpart—

"Price" means cost plus any fee or profit applicable to the contract type.

"Subcontract" (except as used in 15.407-2) also includes a transfer of commercial items between divisions, subsidiaries, or affiliates of a contractor or a subcontractor.

**15.402 Pricing policy.**

Contracting officers must—

(a) Purchase supplies and services from responsible sources at fair and reasonable prices. In establishing the reasonableness of the offered prices, the contracting officer must not obtain more information than is necessary. To the extent that cost or pricing data are not required by 15.403-4, the contracting officer must generally use the following order of preference in determining the type of information required:

(1) No additional information from the offeror, if the price is based on adequate price competition, except as provided by 15.403-3(b).

(2) Information other than cost or pricing data:

(i) Information related to prices (*e.g.*, established catalog or market prices or previous contract prices), relying first on information available within the Government; second, on information obtained from sources other than the offeror; and, if necessary, on information obtained from the offeror. When obtaining information from the offeror is necessary, unless an exception under 15.403-1(b)(1) or (2) applies, such information submitted by the offeror shall include, at a minimum, appropriate information on the prices at which the same or similar items have been sold previously, adequate for evaluating the reasonableness of the price.

(ii) Cost information, that does not meet the definition of cost or pricing data at 2.101.

(3) *Cost or pricing data*. The contracting officer should use every means available to ascertain whether a fair and reasonable price can be determined before requesting cost or pricing data. Contracting officers must not require unnecessarily the submission of cost or pricing data, because it leads to increased proposal preparation costs, generally extends acquisition lead time, and consumes additional contractor and Government resources.

(b) Price each contract separately and independently and not—

(1) Use proposed price reductions under other contracts as an evaluation factor; or

(2) Consider losses or profits realized or anticipated under other contracts.

(c) Not include in a contract price any amount for a specified contingency to the extent that the contract provides for a price adjustment based upon the occurrence of that contingency.

**15.403 Obtaining cost or pricing data.**

**15.403-1 Prohibition on obtaining cost or pricing data.**

(a) Cost or pricing data need not be obtained for acquisitions at or below the simplified acquisition threshold.

(b) *Exceptions to cost or pricing data requirements*. The contracting officer shall not require submission of cost or pricing data to support any action (contracts, subcontracts, or modifications) (but may require information other than cost or pricing data to support a determination of price reasonableness or cost realism)—

(1) When the contracting officer determines that prices agreed upon are based on adequate price competition (see standards in paragraph (c)(1) of this subsection);

(2) When the contracting officer determines that prices agreed upon are based on prices set by law or regulation (see standards in paragraph (c)(2) of this subsection);

(3) When a commercial item is being acquired (see standards in paragraph (c)(3) of this subsection);

(4) When a waiver has been granted (see standards in paragraph (c)(4) of this subsection); or

(5) When modifying a contract or subcontract for commercial items (see standards in paragraph (c)(3) of this subsection).

(c) Standards for exceptions from cost or pricing data requirements— (1) *Adequate price competition*. A price is based on adequate price competition if—(i) Two or more responsible offerors, competing independently, submit priced offers that satisfy the Government's expressed requirement and if—

(A) Award will be made to the offeror whose proposal represents the best value (see 2.101) where price is a substantial factor in source selection; and

(B) There is no finding that the price of the otherwise successful offeror is unreasonable. Any finding that the price is unreasonable must be supported by a statement of the facts and approved at a level above the contracting officer;

(ii) There was a reasonable expectation, based on market research or other assessment, that two or more responsible offerors, competing independently, would submit priced offers in response to the solicitation's expressed requirement, even though only one offer is received from a responsible offeror and if—

(A) Based on the offer received, the contracting officer can reasonably conclude that the offer was submitted with the expectation of competition, *e.g.*, circumstances indicate that—

*(1)* The offeror believed that at least one other offeror was capable of submitting a meaningful offer; and

*(2)* The offeror had no reason to believe that other potential offerors did not intend to submit an offer; and

(B) The determination that the proposed price is based on adequate price competition, is reasonable, and is approved at a level above the contracting officer; or

(iii) Price analysis clearly demonstrates that the proposed price is reasonable in comparison with current or recent prices for the same or similar items, adjusted to reflect changes in market conditions, economic conditions, quantities, or terms and conditions under contracts that resulted from adequate price competition.

(2) *Prices set by law or regulation*. Pronouncements in the form of periodic rulings, reviews, or similar actions of a governmental body, or embodied in the laws, are sufficient to set a price.

(3) *Commercial items*. Any acquisition for an item that meets the commercial item definition in 2.101, or any modification, as defined in paragraph (3)(i) or (ii) of that definition, that does not change the item from a commercial item to a noncommercial item, is exempt from the requirement for cost or pricing data. If the contracting officer determines that an item claimed to be commercial is, in fact, not commercial and that no other exception or waiver applies, the contracting officer must require submission of cost or pricing data.

(4) *Waivers*. The head of the contracting activity (HCA) may, without power of delegation, waive the requirement for submission of cost or pricing data in exceptional cases. The authorization for the waiver and the supporting rationale shall be in writing. The HCA may consider waiving the requirement if the price can be determined to be fair and reasonable without submission of cost or pricing data. For example, if cost or pricing data were furnished on previous production buys and the contracting officer determines such data are sufficient, when combined with updated information, a waiver may be granted. If the HCA has waived the requirement for submission of cost or pricing data, the contractor or higher-tier subcontractor to whom the waiver relates shall be considered as having been required to provide cost or pricing data. Consequently, award of any lower-tier subcontract expected to exceed the cost or pricing data threshold requires the submission of cost or pricing data unless—

(i) An exception otherwise applies to the subcontract; or

(ii) The waiver specifically includes the subcontract and the rationale supporting the waiver for that subcontract.

**15.403-2 Other circumstances where cost or pricing data are not required.**

(a) The exercise of an option at the price established at contract award or initial negotiation does not require submission of cost or pricing data.

(b) Cost or pricing data are not required for proposals used solely for overrun funding or interim billing price adjustments.

**15.403-3 Requiring information other than cost or pricing data.**

(a) *General*. (1) The contracting officer is responsible for obtaining information that is adequate for evaluating the reasonableness of the price or determining cost realism, but the contracting officer should not obtain more information than is necessary (see 15.402(a)). If the contracting officer cannot obtain adequate information from sources other than the offeror, the contracting officer must require submission of information other than cost or pricing data from the offeror that is adequate to determine a fair and reasonable price. Unless an exception under 15.403-1(b)(1) or (2) applies, the contracting officer must require that the information submitted by the offeror include, at a minimum, appropriate information on the prices at which the same item or similar items have previously been sold, adequate for determining the reasonableness of the price. To determine the information an offeror should be required to submit, the contracting officer should consider the guidance in Section 3.3, Chapter 3, Volume I, of the Contract Pricing Reference Guide cited at 15.404-1(a)(7).

(2) The contractor's format for submitting the information should be used (see 15.403-5(b)(2)).

(3) The contracting officer must ensure that information used to support price negotiations is sufficiently current to permit negotiation of a fair and reasonable price. Requests for updated offeror information should be limited to information that affects the adequacy of the proposal for negotiations, such as changes in price lists.

(4) An offeror who does not comply with a requirement to submit information for a contract or subcontract in accordance with paragraph (a)(1) of this subsection is ineligible for award unless the HCA determines that it is in the best interest of the Government to make the award to that offeror, based on consideration of the following:

(i) The effort made to obtain the data.

(ii) The need for the item or service.

(iii) Increased cost or significant harm to the Government if award is not made.

(b) *Adequate price competition*. When adequate price competition exists (see 15.403-1(c)(1)), generally no additional information is necessary to determine the reasonableness of price. However, if there are unusual circumstances where it is concluded that additional information is necessary to determine the reasonableness of price, the contracting

officer shall, to the maximum extent practicable, obtain the additional information from sources other than the offeror. In addition, the contracting officer may request information to determine the cost realism of competing offers or to evaluate competing approaches.

(c) *Commercial items.* (1) At a minimum, the contracting officer must use price analysis to determine whether the price is fair and reasonable whenever the contracting officer acquires a commercial item (see 15.404-1(b)). The fact that a price is included in a catalog does not, in and of itself, make it fair and reasonable. If the contracting officer cannot determine whether an offered price is fair and reasonable, even after obtaining additional information from sources other than the offeror, then the contracting officer must require the offeror to submit information other than cost or pricing data to support further analysis (see 15.404-1).

*(2) Limitations relating to commercial items.* (i) The contracting officer must limit requests for sales data relating to commercial items to data for the same or similar items during a relevant time period.

(ii) The contracting officer must, to the maximum extent practicable, limit the scope of the request for information relating to commercial items to include only information that is in the form regularly maintained by the offeror as part of its commercial operations.

(iii) The Government must not disclose outside the Government information obtained relating to commercial items that is exempt from disclosure under 24.202(a).

### 15.403-4 Requiring cost or pricing data.

(a)(1) The contracting officer must obtain cost or pricing data only if the contracting officer concludes that none of the exceptions in 15.403-1(b) applies. However, if the contracting officer has sufficient information available to determine price reasonableness, then the contracting officer should consider requesting a waiver under the exception at 15.403-1(b)(4). The threshold for obtaining cost or pricing data is $550,000. Unless an exception applies, cost or pricing data are required before accomplishing any of the following actions expected to exceed the current threshold or, for existing contracts, the threshold specified in the contract:

(i) The award of any negotiated contract (except for undefinitized actions such as letter contracts).

(ii) The award of a subcontract at any tier, if the contractor and each higher-tier subcontractor were required to submit cost or pricing data (but see waivers at 15.403-1(c)(4)).

(iii) The modification of any sealed bid or negotiated contract (whether or not cost or pricing data were initially required) or any subcontract covered by paragraph (a)(1)(ii) of this subsection. Price adjustment amounts must consider both increases and decreases (*e.g.*, a $200,000 modification resulting from a reduction of $400,000 and an increase of $200,000 is a pricing adjustment exceeding $550,000). This requirement does not apply when unrelated and separately priced changes for which cost or pricing data would not otherwise be required are included for administrative convenience in the same modification. Negotiated final pricing actions (such as termination settlements and total final price agreements for fixed-price incentive and redeterminable contracts) are contract modifications requiring cost or pricing data if—

(A) The total final price agreement for such settlements or agreements exceeds the pertinent threshold set forth at paragraph (a)(1) of this subsection; or

(B) The partial termination settlement plus the estimate to complete the continued portion of the contract exceeds the pertinent threshold set forth at paragraph (a)(1) of this subsection (see 49.105(c)(15)).

(2) Unless prohibited because an exception at 15.403-1(b) applies, the head of the contracting activity, without power of delegation, may authorize the contracting officer to obtain cost or pricing data for pricing actions below the pertinent threshold in paragraph (a)(1) of this subsection, provided the action exceeds the simplified acquisition threshold. The head of the contracting activity shall justify the requirement for cost or pricing data. The documentation shall include a written finding that cost or pricing data are necessary to determine whether the price is fair and reasonable and the facts supporting that finding.

(b) When cost or pricing data are required, the contracting officer shall require the contractor or prospective contractor to submit to the contracting officer (and to have any subcontractor or prospective subcontractor submit to the prime contractor or appropriate subcontractor tier) the following in support of any proposal:

(1) The cost or pricing data.

(2) A certificate of current cost or pricing data, in the format specified in 15.406-2, certifying that to the best of its knowledge and belief, the cost or pricing data were accurate, complete, and current as of the date of agreement on price or, if applicable, an earlier date agreed upon between the parties that is as close as practicable to the date of agreement on price.

(c) If cost or pricing data are requested and submitted by an offeror, but an exception is later found to apply, the data must not be considered cost or pricing data as defined in 2.101 and must not be certified in accordance with 15.406-2.

(d) The requirements of this subsection also apply to contracts entered into by an agency on behalf of a foreign government.

### 15.403-5 Instructions for submission of cost or pricing data or information other than cost or pricing data.

(a) Taking into consideration the policy at 15.402, the contracting officer shall specify in the solicitation (see 15.408(l) and (m))—

(1) Whether cost or pricing data are required;

(2) That, in lieu of submitting cost or pricing data, the offeror may submit a request for exception from the requirement to submit cost or pricing data;

(3) Any information other than cost or pricing data that is required; and

(4) Necessary preaward or postaward access to offeror's records.

(b)(1) Unless required to be submitted on one of the termination forms specified in Subpart 49.6, the contracting officer may require submission of cost or pricing data in the format indicated in Table 15-2 of 15.408, specify an alternative format, or permit submission in the contractor's format.

(2) Information other than cost or pricing data may be submitted in the offeror's own format unless the contracting officer decides that use of a specific format is essential and the format has been described in the solicitation.

(3) Data supporting forward pricing rate agreements or final indirect cost proposals shall be submitted in a form acceptable to the contracting officer.

## 15.404 Proposal analysis.

### 15.404-1 Proposal analysis techniques.

(a) *General.* The objective of proposal analysis is to ensure that the final agreed-to price is fair and reasonable.

(1) The contracting officer is responsible for evaluating the reasonableness of the offered prices. The analytical techniques and procedures described in this subsection may be used, singly or in combination with others, to ensure that the final price is fair and reasonable. The complexity and circumstances of each acquisition should determine the level of detail of the analysis required.

(2) Price analysis shall be used when cost or pricing data are not required (see paragraph (b) of this subsection and 15.404-3).

(3) Cost analysis shall be used to evaluate the reasonableness of individual cost elements when cost or pricing data are required. Price analysis should be used to verify that the overall price offered is fair and reasonable.

(4) Cost analysis may also be used to evaluate information other than cost or pricing data to determine cost reasonableness or cost realism.

(5) The contracting officer may request the advice and assistance of other experts to ensure that an appropriate analysis is performed.

(6) Recommendations or conclusions regarding the Government's review or analysis of an offeror's or contractor's proposal shall not be disclosed to the offeror or contractor without the concurrence of the contracting officer. Any discrepancy or mistake of fact (such as duplications, omissions, and errors in computation) contained in the cost or pricing data or information other than cost or pricing data submitted in support of a proposal shall be brought to the contracting officer's attention for appropriate action.

(7) The Air Force Institute of Technology (AFIT) and the Federal Acquisition Institute (FAI) jointly prepared a five-volume set of Contract Pricing Reference Guides to guide pricing and negotiation personnel. The five guides are: I Price Analysis, II Quantitative Techniques for Contract Pricing, III Cost Analysis, IV Advanced Issues in Contract Pricing, and V Federal Contract Negotiation Techniques. These references provide detailed discussion and examples applying pricing policies to pricing problems. They are to be used for instruction and professional guidance. However, they are not directive and should be considered informational only. They are available via the internet at http://www.acq.osd.mil/dp/cpf.

(b) *Price analysis.* (1) Price analysis is the process of examining and evaluating a proposed price without evaluating its separate cost elements and proposed profit.

(2) The Government may use various price analysis techniques and procedures to ensure a fair and reasonable price. Examples of such techniques include, but are not limited to, the following:

(i) Comparison of proposed prices received in response to the solicitation. Normally, adequate price competition establishes price reasonableness (see 15.403-1(c)(1)).

(ii) Comparison of previously proposed prices and previous Government and commercial contract prices with current proposed prices for the same or similar items, if both the validity of the comparison and the reasonableness of the previous price(s) can be established.

(iii) Use of parametric estimating methods/application of rough yardsticks (such as dollars per pound or per horsepower, or other units) to highlight significant inconsistencies that warrant additional pricing inquiry.

(iv) Comparison with competitive published price lists, published market prices of commodities, similar indexes, and discount or rebate arrangements.

(v) Comparison of proposed prices with independent Government cost estimates.

(vi) Comparison of proposed prices with prices obtained through market research for the same or similar items.

(vii) Analysis of pricing information provided by the offeror.

(3) The first two techniques at 15.404-1(b)(2) are the preferred techniques. However, if the contracting officer determines that information on competitive proposed prices or previous contract prices is not available or is insufficient to determine that the price is fair and reasonable, the contracting officer may use any of the remaining techniques as appropriate to the circumstances applicable to the acquisition.

(4) Value analysis can give insight into the relative worth of a product and the Government may use it in conjunction with the price analysis techniques listed in paragraph (b)(2) of this section.

(c) *Cost analysis.* (1) Cost analysis is the review and evaluation of the separate cost elements and profit in an offeror's or contractor's proposal (including cost or pricing data or information other than cost or pricing data), and the application of judgment to determine how well the proposed costs represent what the cost of the contract should be, assuming reasonable economy and efficiency.

(2) The Government may use various cost analysis techniques and procedures to ensure a fair and reasonable price, given the circumstances of the acquisition. Such techniques and procedures include the following:

(i) Verification of cost or pricing data and evaluation of cost elements, including—

(A) The necessity for, and reasonableness of, proposed costs, including allowances for contingencies;

(B) Projection of the offeror's cost trends, on the basis of current and historical cost or pricing data;

(C) Reasonableness of estimates generated by appropriately calibrated and validated parametric models or cost-estimating relationships; and

(D) The application of audited or negotiated indirect cost rates, labor rates, and cost of money or other factors.

(ii) Evaluating the effect of the offeror's current practices on future costs. In conducting this evaluation, the contracting officer shall ensure that the effects of inefficient or uneconomical past practices are not projected into the future. In pricing production of recently developed complex equipment, the contracting officer should perform a trend analysis of basic labor and materials, even in periods of relative price stability.

(iii) Comparison of costs proposed by the offeror for individual cost elements with—

(A) Actual costs previously incurred by the same offeror;

(B) Previous cost estimates from the offeror or from other offerors for the same or similar items;

(C) Other cost estimates received in response to the Government's request;

(D) Independent Government cost estimates by technical personnel; and

(E) Forecasts of planned expenditures.

(iv) Verification that the offeror's cost submissions are in accordance with the contract cost principles and procedures in Part 31.

(v) Review to determine whether any cost or pricing data necessary to make the contractor's proposal accurate, complete, and current have not been either submitted or identified in writing by the contractor. If there are such data, the contracting officer shall attempt to obtain them and negotiate, using them or making satisfactory allowance for the incomplete data.

(vi) Analysis of the results of any make-or-buy program reviews, in evaluating subcontract costs (see 15.407-2).

(d) *Cost realism analysis.* (1) Cost realism analysis is the process of independently reviewing and evaluating specific elements of each offeror's proposed cost estimate to determine whether the estimated proposed cost elements are realistic for the work to be performed; reflect a clear understanding of the requirements; and are consistent with the unique methods of performance and materials described in the offeror's technical proposal.

(2) Cost realism analyses shall be performed on cost-reimbursement contracts to determine the probable cost of performance for each offeror.

(i) The probable cost may differ from the proposed cost and should reflect the Government's best estimate of the cost of any contract that is most likely to result from the offeror's proposal. The probable cost shall be used for purposes of evaluation to determine the best value.

(ii) The probable cost is determined by adjusting each offeror's proposed cost, and fee when appropriate, to reflect any additions or reductions in cost elements to realistic levels based on the results of the cost realism analysis.

(3) Cost realism analyses may also be used on competitive fixed-price incentive contracts or, in exceptional cases, on other competitive fixed-price-type contracts when new requirements may not be fully understood by competing offerors, there are quality concerns, or past experience indicates that contractors' proposed costs have resulted in quality or service shortfalls. Results of the analysis may be used in performance risk assessments and responsibility determinations. However, proposals shall be evaluated using the criteria in the solicitation, and the offered prices shall not be adjusted as a result of the analysis.

(e) *Technical analysis.* (1) The contracting officer may request that personnel having specialized knowledge, skills, experience, or capability in engineering, science, or management perform a technical analysis of the proposed types and quantities of materials, labor, processes, special tooling, facilities, the reasonableness of scrap and spoilage, and other associated factors set forth in the proposal(s) in order to determine the need for and reasonableness of the proposed resources, assuming reasonable economy and efficiency.

(2) At a minimum, the technical analysis should examine the types and quantities of material proposed and the need for the types and quantities of labor hours and the labor mix. Any other data that may be pertinent to an assessment of the offeror's ability to accomplish the technical requirements or to the cost or price analysis of the service or product being proposed should also be included in the analysis.

(f) *Unit prices*. (1) Except when pricing an item on the basis of adequate price competition or catalog or market price, unit prices shall reflect the intrinsic value of an item or service and shall be in proportion to an item's base cost (*e.g.*, manufacturing or acquisition costs). Any method of distributing costs to line items that distorts the unit prices shall not be used. For example, distributing costs equally among line items is not acceptable except when there is little or no variation in base cost.

(2) Except for the acquisition of commercial items, contracting officers shall require that offerors identify in their proposals those items of supply that they will not manufacture or to which they will not contribute significant value, unless adequate price competition is expected. Such information shall be used to determine whether the intrinsic value of an item has been distorted through application of overhead and whether such items should be considered for breakout. The contracting officer may require such information in all other negotiated contracts when appropriate.

(g) *Unbalanced pricing*. (1) Unbalanced pricing may increase performance risk and could result in payment of unreasonably high prices. Unbalanced pricing exists when, despite an acceptable total evaluated price, the price of one or more contract line items is significantly over or understated as indicated by the application of cost or price analysis techniques. The greatest risks associated with unbalanced pricing occur when—

(i) Startup work, mobilization, first articles, or first article testing are separate line items;

(ii) Base quantities and option quantities are separate line items; or

(iii) The evaluated price is the aggregate of estimated quantities to be ordered under separate line items of an indefinite-delivery contract.

(2) All offers with separately priced line items or subline items shall be analyzed to determine if the prices are unbalanced. If cost or price analysis techniques indicate that an offer is unbalanced, the contracting officer shall—

(i) Consider the risks to the Government associated with the unbalanced pricing in determining the competitive range and in making the source selection decision; and

(ii) Consider whether award of the contract will result in paying unreasonably high prices for contract performance.

(3) An offer may be rejected if the contracting officer determines that the lack of balance poses an unacceptable risk to the Government.

**15.404-2 Information to support proposal analysis.**

(a) *Field pricing assistance*. (1) The contracting officer should request field pricing assistance when the information available at the buying activity is inadequate to determine a fair and reasonable price. The contracting officer must tailor requests to reflect the minimum essential supplementary information needed to conduct a technical or cost or pricing analysis.

(2) The contracting officer must tailor the type of information and level of detail requested in accordance with the specialized resources available at the buying activity and the magnitude and complexity of the required analysis. Field pricing assistance is generally available to provide—

(i) Technical, audit, and special reports associated with the cost elements of a proposal, including subcontracts;

(ii) Information on related pricing practices and history;

(iii) Information to help contracting officers determine commerciality and price reasonableness, including—

(A) Verifying sales history to source documents;

(B) Identifying special terms and conditions;

(C) Identifying customarily granted or offered discounts for the item;

(D) Verifying the item to an existing catalog or price list;

(E) Verifying historical data for an item previously not determined commercial that the offeror is now trying to qualify as a commercial item; and

(F) Identifying general market conditions affecting determinations of commerciality and price reasonableness.

(iv) Information relative to the business, technical, production, or other capabilities and practices of an offeror.

(3) When field pricing assistance is requested, contracting officers are encouraged to team with appropriate field experts throughout the acquisition process, including negotiations. Early communication with these experts will assist in determining the extent of assistance required, the specific areas for which assistance is needed, a realistic review schedule, and the information necessary to perform the review.

(4) When requesting field pricing assistance on a contractor's request for equitable adjustment, the contracting officer shall provide the information listed in 43.204(b)(5).

(5) Field pricing information and other reports may include proprietary or source selection information (see 2.101). This information must be appropriately identified and protected accordingly.

(b) *Reporting field pricing information*. (1) Depending upon the extent and complexity of the field pricing review, results, including supporting rationale, may be reported directly to the contracting officer orally, in writing, or by any other method acceptable to the contracting officer.

(i) Whenever circumstances permit, the contracting officer and field pricing experts are encouraged to use telephonic and/or electronic means to request and transmit pricing information.

(ii) When it is necessary to have written technical and audit reports, the contracting officer shall request that the audit agency concurrently forward the audit report to the requesting contracting officer and the administrative contracting officer (ACO). The completed field pricing assistance results may reference audit information, but need not reconcile the audit recommendations and technical recommendations. A copy of the information submitted to the contracting officer by field pricing personnel shall be provided to the audit agency.

(2) Audit and field pricing information, whether written or reported telephonically or electronically, shall be made a part of the official contract file (see 4.807(f)).

(c) *Audit assistance for prime contracts or subcontracts.* (1) The contracting officer may contact the cognizant audit office directly, particularly when an audit is the only field pricing support required. The audit office shall send the audit report, or otherwise transmit the audit recommendations, directly to the contracting officer.

(i) The auditor shall not reveal the audit conclusions or recommendations to the offeror/contractor without obtaining the concurrence of the contracting officer. However, the auditor may discuss statements of facts with the contractor.

(ii) The contracting officer should be notified immediately of any information disclosed to the auditor after submission of a report that may significantly affect the audit findings and, if necessary, a supplemental audit report shall be issued.

(2) The contracting officer shall not request a separate preaward audit of indirect costs unless the information already available from an existing audit, completed within the preceding 12 months, is considered inadequate for determining the reasonableness of the proposed indirect costs.

(3) The auditor is responsible for the scope and depth of the audit. Copies of updated information that will significantly affect the audit should be provided to the auditor by the contracting officer.

(4) General access to the offeror's books and financial records is limited to the auditor. This limitation does not preclude the contracting officer or the ACO, or their representatives, from requesting that the offeror provide or make available any data or records necessary to analyze the offeror's proposal.

(d) *Deficient proposals.* The ACO or the auditor, as appropriate, shall notify the contracting officer immediately if the data provided for review is so deficient as to preclude review or audit, or if the contractor or offeror has denied access to any records considered essential to conduct a satisfactory review or audit. Oral notifications shall be confirmed promptly in writing, including a description of deficient or denied data or records. The contracting officer immediately shall take appropriate action to obtain the required data. Should the offeror/contractor again refuse to provide adequate data, or provide access to necessary data, the contracting officer shall withhold the award or price adjustment and refer the contract action to a higher authority, providing details of the attempts made to resolve the matter and a statement of the practicability of obtaining the supplies or services from another source.

**15.404-3 Subcontract pricing considerations.**

(a) The contracting officer is responsible for the determination of price reasonableness for the prime contract, including subcontracting costs. The contracting officer should consider whether a contractor or subcontractor has an approved purchasing system, has performed cost or price analysis of proposed subcontractor prices, or has negotiated the subcontract prices before negotiation of the prime contract, in determining the reasonableness of the prime contract price. This does not relieve the contracting officer from the responsibility to analyze the contractor's submission, including subcontractor's cost or pricing data.

(b) The prime contractor or subcontractor shall—

(1) Conduct appropriate cost or price analyses to establish the reasonableness of proposed subcontract prices;

(2) Include the results of these analyses in the price proposal; and

(3) When required by paragraph (c) of this subsection, submit subcontractor cost or pricing data to the Government as part of its own cost or pricing data.

(c) Any contractor or subcontractor that is required to submit cost or pricing data also shall obtain and analyze cost or pricing data before awarding any subcontract, purchase order, or modification expected to exceed the cost or pricing data threshold, unless an exception in 15.403-1(b) applies to that action.

(1) The contractor shall submit, or cause to be submitted by the subcontractor(s), cost or pricing data to the Government for subcontracts that are the lower of either—

(i) $10,000,000 or more; or

(ii) Both more than the pertinent cost or pricing data threshold and more than 10 percent of the prime contractor's proposed price, unless the contracting officer believes such submission is unnecessary.

(2) The contracting officer may require the contractor or subcontractor to submit to the Government (or cause submission of) subcontractor cost or pricing data below the thresholds in paragraph (c)(1) of this subsection that the contracting officer considers necessary for adequately pricing the prime contract.

(3) Subcontractor cost or pricing data shall be submitted in the format provided in Table 15-2 of 15.408 or the alternate format specified in the solicitation.

(4) Subcontractor cost or pricing data shall be current, accurate, and complete as of the date of price agreement, or, if applicable, an earlier date agreed upon by the parties and specified on the contractor's Certificate of Current Cost or Pricing Data. The contractor shall update subcontractor's data, as appropriate, during source selection and negotiations.

(5) If there is more than one prospective subcontractor for any given work, the contractor need only submit to the Government cost or pricing data for the prospective subcontractor most likely to receive the award.

**15.404-4 Profit.**

(a) *General.* This subsection prescribes policies for establishing the profit or fee portion of the Government prenegotiation objective in price negotiations based on cost analysis.

(1) Profit or fee prenegotiation objectives do not necessarily represent net income to contractors. Rather, they represent that element of the potential total remuneration that contractors may receive for contract performance over and above allowable costs. This potential remuneration element and the Government's estimate of allowable costs to be incurred in contract performance together equal the Government's total prenegotiation objective. Just as actual costs may vary from estimated costs, the contractor's actual realized profit or fee may vary from negotiated profit or fee, because of such factors as efficiency of performance, incurrence of costs the Government does not recognize as allowable, and the contract type.

(2) It is in the Government's interest to offer contractors opportunities for financial rewards sufficient to stimulate efficient contract performance, attract the best capabilities of qualified large and small business concerns to Government contracts, and maintain a viable industrial base.

(3) Both the Government and contractors should be concerned with profit as a motivator of efficient and effective contract performance. Negotiations aimed merely at reducing prices by reducing profit, without proper recognition of the function of profit, are not in the Government's interest. Negotiation of extremely low profits, use of historical averages, or automatic application of predetermined percentages to total estimated costs do not provide proper motivation for optimum contract performance.

(b) *Policy.* (1) Structured approaches (see paragraph (d) of this subsection) for determining profit or fee prenegotiation objectives provide a discipline for ensuring that all relevant factors are considered. Subject to the authorities in 1.301(c), agencies making noncompetitive contract awards over $100,000 totaling $50 million or more a year—

(i) Shall use a structured approach for determining the profit or fee objective in those acquisitions that require cost analysis; and

(ii) May prescribe specific exemptions for situations in which mandatory use of a structured approach would be clearly inappropriate.

(2) Agencies may use another agency's structured approach.

(c) *Contracting officer responsibilities.* (1) When the price negotiation is not based on cost analysis, contracting officers are not required to analyze profit.

(2) When the price negotiation is based on cost analysis, contracting officers in agencies that have a structured approach shall use it to analyze profit. When not using a structured approach, contracting officers shall comply with paragraph (d)(1) of this subsection in developing profit or fee prenegotiation objectives.

(3) Contracting officers shall use the Government prenegotiation cost objective amounts as the basis for calculating the profit or fee prenegotiation objective. Before applying profit or fee factors, the contracting officer shall exclude any facilities capital cost of money included in the cost objective amounts. If the prospective contractor fails to identify or propose facilities capital cost of money in a proposal for a contract that will be subject to the cost principles for contracts with commercial organizations (see Subpart 31.2), facilities capital cost of money will not be an allowable cost in any resulting contract (see 15.408(i)).

(4)(i) The contracting officer shall not negotiate a price or fee that exceeds the following limitations:

(A) For experimental, developmental, or research work performed under a cost-plus-fixed-fee contract, the fee shall not exceed 15 percent of the contract's estimated cost, excluding fee.

(B) For architect-engineer services for public works or utilities, the contract price or the estimated cost and fee for production and delivery of designs, plans, drawings, and specifications shall not exceed 6 percent of the estimated cost of construction of the public work or utility, excluding fees.

(C) For other cost-plus-fixed-fee contracts, the fee shall not exceed 10 percent of the contract's estimated cost, excluding fee.

(ii) The contracting officer's signature on the price negotiation memorandum or other documentation supporting determination of fair and reasonable price documents the contracting officer's determination that the statutory price or fee limitations have not been exceeded.

(5) The contracting officer shall not require any prospective contractor to submit breakouts or supporting rationale for its profit or fee objective but may consider it, if it is submitted voluntarily.

(6) If a change or modification calls for essentially the same type and mix of work as the basic contract and is of relatively small dollar value compared to the total contract value, the contracting officer may use the basic contract's profit or fee rate as the prenegotiation objective for that change or modification.

(d) *Profit-analysis factors*—(1) *Common factors.* Unless it is clearly inappropriate or not applicable, each factor outlined in paragraphs (d)(1)(i) through (vi) of this subsection shall be considered by agencies in developing their structured approaches and by contracting officers in analyzing profit, whether or not using a structured approach.

(i) *Contractor effort.* This factor measures the complexity of the work and the resources required of the prospective contractor for contract performance. Greater profit opportunity should be provided under contracts requiring a high degree of professional and managerial skill and to prospective contractors whose skills, facilities, and technical assets can be expected to lead to efficient and economical contract performance. The subfactors in paragraphs (d)(1)(i)(A) through (D) of this subsection shall be considered in determining contractor effort, but they may be modified in specific situations to accommodate differences in the categories used by prospective contractors for listing costs—

(A) *Material acquisition.* This subfactor measures the managerial and technical effort needed to obtain the required purchased parts and material, subcontracted items, and special tooling. Considerations include the complexity of the items required, the number of purchase orders and subcontracts to be awarded and administered, whether established sources are available or new or second sources must be developed, and whether material will be obtained through routine purchase orders or through complex subcontracts requiring detailed specifications. Profit consideration should correspond to the managerial and technical effort involved.

(B) *Conversion direct labor.* This subfactor measures the contribution of direct engineering, manufacturing, and other labor to converting the raw materials, data, and subcontracted items into the contract items. Considerations include the diversity of engineering, scientific, and manufacturing labor skills required and the amount and quality of supervision and coordination needed to perform the contract task.

(C) *Conversion-related indirect costs.* This subfactor measures how much the indirect costs contribute to contract performance. The labor elements in the allocable indirect costs should be given the profit consideration they would receive if treated as direct labor. The other elements of indirect costs should be evaluated to determine whether they merit only limited profit consideration because of their routine nature, or are elements that contribute significantly to the proposed contract.

(D) *General management.* This subfactor measures the prospective contractor's other indirect costs and general and administrative (G&A) expense, their composition, and how much they contribute to contract performance. Considerations include how labor in the overhead pools would be treated if it were direct labor, whether elements within the pools are routine expenses or instead are elements that contribute significantly to the proposed contract, and whether the elements require routine as opposed to unusual managerial effort and attention.

(ii) *Contract cost risk.* (A) This factor measures the degree of cost responsibility and associated risk that the prospective contractor will assume as a result of the contract type contemplated and considering the reliability of the cost estimate in relation to the complexity and duration of the contract task. Determination of contract type should be closely related to the risks involved in timely, cost-effective, and efficient performance. This factor should compensate contractors proportionately for assuming greater cost risks.

(B) The contractor assumes the greatest cost risk in a closely priced firm-fixed-price contract under which it agrees to perform a complex undertaking on time and at a predetermined price. Some firm-fixed-price contracts may entail substantially less cost risk than others because, for example, the contract task is less complex or many of the contractor's costs are known at the time of price agreement, in which case the risk factor should be reduced accordingly. The contractor assumes the least cost risk in a cost-plus-fixed-fee level-of-effort contract, under which it is reimbursed those costs determined to be allocable and allowable, plus the fixed fee.

(C) In evaluating assumption of cost risk, contracting officers shall, except in unusual circumstances, treat time-and-materials, labor-hour, and firm-fixed-price, level-of-effort term contracts as cost-plus-fixed-fee contracts.

(iii) *Federal socioeconomic programs.* This factor measures the degree of support given by the prospective contractor to Federal socioeconomic programs, such as those involving small business concerns, small business concerns owned and controlled by socially and economically disadvantaged individuals, women-owned small business concerns, handicapped sheltered workshops, and energy conservation. Greater profit opportunity should be provided contractors that have displayed unusual initiative in these programs.

(iv) *Capital investments.* This factor takes into account the contribution of contractor investments to efficient and economical contract performance.

(v) *Cost-control and other past accomplishments.* This factor allows additional profit opportunities to a prospective contractor that has previously demonstrated its ability to perform similar tasks effectively and economically. In addition, consideration should be given to measures taken by the prospective contractor that result in productivity improve-

ments, and other cost-reduction accomplishments that will benefit the Government in follow-on contracts.

(vi) *Independent development*. Under this factor, the contractor may be provided additional profit opportunities in recognition of independent development efforts relevant to the contract end item without Government assistance. The contracting officer should consider whether the development cost was recovered directly or indirectly from Government sources.

(2) *Additional factors*. In order to foster achievement of program objectives, each agency may include additional factors in its structured approach or take them into account in the profit analysis of individual contract actions.

**15.405 Price negotiation.**

(a) The purpose of performing cost or price analysis is to develop a negotiation position that permits the contracting officer and the offeror an opportunity to reach agreement on a fair and reasonable price. A fair and reasonable price does not require that agreement be reached on every element of cost, nor is it mandatory that the agreed price be within the contracting officer's initial negotiation position. Taking into consideration the advisory recommendations, reports of contributing specialists, and the current status of the contractor's purchasing system, the contracting officer is responsible for exercising the requisite judgment needed to reach a negotiated settlement with the offeror and is solely responsible for the final price agreement. However, when significant audit or other specialist recommendations are not adopted, the contracting officer should provide rationale that supports the negotiation result in the price negotiation documentation.

(b) The contracting officer's primary concern is the overall price the Government will actually pay. The contracting officer's objective is to negotiate a contract of a type and with a price providing the contractor the greatest incentive for efficient and economical performance. The negotiation of a contract type and a price are related and should be considered together with the issues of risk and uncertainty to the contractor and the Government. Therefore, the contracting officer should not become preoccupied with any single element and should balance the contract type, cost, and profit or fee negotiated to achieve a total result—a price that is fair and reasonable to both the Government and the contractor.

(c) The Government's cost objective and proposed pricing arrangement directly affect the profit or fee objective. Because profit or fee is only one of several interrelated variables, the contracting officer shall not agree on profit or fee without concurrent agreement on cost and type of contract.

(d) If, however, the contractor insists on a price or demands a profit or fee that the contracting officer considers unreasonable, and the contracting officer has taken all authorized actions (including determining the feasibility of developing an alternative source) without success, the contracting officer shall refer the contract action to a level above the contracting officer. Disposition of the action should be documented.

**15.406 Documentation.**

**15.406-1 Prenegotiation objectives.**

(a) The prenegotiation objectives establish the Government's initial negotiation position. They assist in the contracting officer's determination of fair and reasonable price. They should be based on the results of the contracting officer's analysis of the offeror's proposal, taking into consideration all pertinent information including field pricing assistance, audit reports and technical analysis, fact-finding results, independent Government cost estimates and price histories.

(b) The contracting officer shall establish prenegotiation objectives before the negotiation of any pricing action. The scope and depth of the analysis supporting the objectives should be directly related to the dollar value, importance, and complexity of the pricing action. When cost analysis is required, the contracting officer shall document the pertinent issues to be negotiated, the cost objectives, and a profit or fee objective.

**15.406-2 Certificate of Current Cost or Pricing Data.**

(a) When cost or pricing data are required, the contracting officer must require the contractor to execute a Certificate of Current Cost or Pricing Data, using the format in this paragraph, and must include the executed certificate in the contract file.

CERTIFICATE OF CURRENT COST OR PRICING DATA

This is to certify that, to the best of my knowledge and belief, the cost or pricing data (as defined in section 2.101 of the Materials Management Acquisition Regulation (MMAR) and required under MMAR subsection 15.403-4) submitted, either actually or by specific identification in writing, to the Contracting Officer or to the Contracting Officer's representative in support of ________* are accurate, complete, and current as of ________**. This certification includes the cost or pricing data supporting any advance agreements and forward pricing rate agreements between the offeror and the Government that are part of the proposal.

Firm ________________________________

Signature ____________________________

Name ________________________________

Title ________________________________

Date of execution*** ____________________

* Identify the proposal, request for price adjustment, or other submission involved, giving the appropriate identifying number (e.g., RFP No.).

**Insert the day, month, and year when price negotiations were concluded and price agreement was reached or, if applicable, an earlier date agreed upon between the parties that is as close as practicable to the date of agreement on price.

*** Insert the day, month, and year of signing, which should be as close as practicable to the date when the price negotiations were concluded and the contract price was agreed to.

(END OF CERTIFICATE)

(b) The certificate does not constitute a representation as to the accuracy of the contractor's judgment on the estimate of future costs or projections. It applies to the data upon which the judgment or estimate was based. This distinction between fact and judgment should be clearly understood. If the contractor had information reasonably available at the time of agreement showing that the negotiated price was not based on accurate, complete, and current data, the contractor's responsibility is not limited by any lack of personal knowledge of the information on the part of its negotiators.

(c) The contracting officer and contractor are encouraged to reach a prior agreement on criteria for establishing closing or cutoff dates when appropriate in order to minimize delays associated with proposal updates. Closing or cutoff dates should be included as part of the data submitted with the proposal and, before agreement on price, data should be updated by the contractor to the latest closing or cutoff dates for which the data are available. Use of cutoff dates coinciding with reports is acceptable, as certain data may not be reasonably available before normal periodic closing dates (*e.g.*, actual indirect costs). Data within the contractor's or a subcontractor's organization on matters significant to contractor management and to the Government will be treated as reasonably available. What is significant depends upon the circumstances of each acquisition.

(d) Possession of a Certificate of Current Cost or Pricing Data is not a substitute for examining and analyzing the contractor's proposal.

(e) If cost or pricing data are requested by the Government and submitted by an offeror, but an exception is later found to apply, the data shall not be considered cost or pricing data and shall not be certified in accordance with this subsection.

### 15.406-3 Documenting the negotiation.

(a) The contracting officer shall document in the contract file the principal elements of the negotiated agreement. The documentation (*e.g.*, price negotiation memorandum (PNM)) shall include the following:

(1) The purpose of the negotiation.

(2) A description of the acquisition, including appropriate identifying numbers (*e.g.*, RFP No.).

(3) The name, position, and organization of each person representing the contractor and the Government in the negotiation.

(4) The current status of any contractor systems (*e.g.*, purchasing, estimating, accounting, and compensation) to the extent they affected and were considered in the negotiation.

(5) If cost or pricing data were not required in the case of any price negotiation exceeding the cost or pricing data threshold, the exception used and the basis for it.

(6) If cost or pricing data were required, the extent to which the contracting officer—

(i) Relied on the cost or pricing data submitted and used them in negotiating the price;

(ii) Recognized as inaccurate, incomplete, or noncurrent any cost or pricing data submitted; the action taken by the contracting officer and the contractor as a result; and the effect of the defective data on the price negotiated; or

(iii) Determined that an exception applied after the data were submitted and, therefore, considered not to be cost or pricing data.

(7) A summary of the contractor's proposal, any field pricing assistance recommendations, including the reasons for any pertinent variances from them, the Government's negotiation objective, and the negotiated position. Where the determination of price reasonableness is based on cost analysis, the summary shall address each major cost element. When determination of price reasonableness is based on price analysis, the summary shall include the source and type of data used to support the determination.

(8) The most significant facts or considerations controlling the establishment of the prenegotiation objectives and the negotiated agreement including an explanation of any significant differences between the two positions.

(9) To the extent such direction has a significant effect on the action, a discussion and quantification of the impact of direction given by Congress, other agencies, and higher-level officials (*i.e.*, officials who would not normally exercise authority during the award and review process for the instant contract action).

(10) The basis for the profit or fee prenegotiation objective and the profit or fee negotiated.

(11) Documentation of fair and reasonable pricing.

(b) Whenever field pricing assistance has been obtained, the contracting officer shall forward a copy of the negotiation documentation to the office(s) providing assistance. When appropriate, information on how advisory field support can be made more effective should be provided separately.

### 15.407 Special cost or pricing areas.

### 15.407-1 Defective cost or pricing data.

(a) If, before agreement on price, the contracting officer learns that any cost or pricing data submitted are inaccurate,

incomplete, or noncurrent, the contracting officer shall immediately bring the matter to the attention of the prospective contractor, whether the defective data increase or decrease the contract price. The contracting officer shall consider any new data submitted to correct the deficiency, or consider the inaccuracy, incompleteness, or noncurrency of the data when negotiating the contract price. The price negotiation memorandum shall reflect the adjustments made to the data or the corrected data used to negotiate the contract price.

(b)(1) If, after award, cost or pricing data are found to be inaccurate, incomplete, or noncurrent as of the date of final agreement on price or an earlier date agreed upon by the parties given on the contractor's or subcontractor's Certificate of Current Cost or Pricing Data, the Government is entitled to a price adjustment, including profit or fee, of any significant amount by which the price was increased because of the defective data. This entitlement is ensured by including in the contract one of the clauses prescribed in 15.408(b) and (c) and is set forth in the clauses at 52.215-10, Price Reduction for Defective Cost or Pricing Data, and 52.215-11, Price Reduction for Defective Cost or Pricing Data—Modifications. The clauses give the Government the right to a price adjustment for defects in cost or pricing data submitted by the contractor, a prospective subcontractor, or an actual subcontractor.

(2) In arriving at a price adjustment, the contracting officer shall consider the time by which the cost or pricing data became reasonably available to the contractor, and the extent to which the Government relied upon the defective data.

(3) The clauses referred to in paragraph (b)(1) of this subsection recognize that the Government's right to a price adjustment is not affected by any of the following circumstances:

(i) The contractor or subcontractor was a sole source supplier or otherwise was in a superior bargaining position;

(ii) The contracting officer should have known that the cost or pricing data in issue were defective even though the contractor or subcontractor took no affirmative action to bring the character of the data to the attention of the contracting officer;

(iii) The contract was based on an agreement about the total cost of the contract and there was no agreement about the cost of each item procured under such contract; or

(iv) Cost or pricing data were required; however, the contractor or subcontractor did not submit a Certificate of Current Cost or Pricing Data relating to the contract.

(4) Subject to paragraphs (b)(5) and (6) of this subsection, the contracting officer shall allow an offset for any understated cost or pricing data submitted in support of price negotiations, up to the amount of the Government's claim for overstated pricing data arising out of the same pricing action (*e.g.*, the initial pricing of the same contract or the pricing of the same change order).

(5) An offset shall be allowed only in an amount supported by the facts and if the contractor—

(i) Certifies to the contracting officer that, to the best of the contractor's knowledge and belief, the contractor is entitled to the offset in the amount requested; and

(ii) Proves that the cost or pricing data were available before the "as of" date specified on the Certificate of Current Cost or Pricing Data but were not submitted. Such offsets need not be in the same cost groupings (*e.g.*, material, direct labor, or indirect costs).

(6) An offset shall not be allowed if—

(i) The understated data were known by the contractor to be understated before the "as of" date specified on the Certificate of Current Cost or Pricing Data; or

(ii) The Government proves that the facts demonstrate that the price would not have increased in the amount to be offset even if the available data had been submitted before the "as of" date specified on the Certificate of Current Cost or Pricing Data.

(7)(i) In addition to the price adjustment, the Government is entitled to recovery of any overpayment plus interest on the overpayments. The Government is also entitled to penalty amounts on certain of these overpayments. Overpayment occurs only when payment is made for supplies or services accepted by the Government. Overpayments do not result from amounts paid for contract financing, as defined in 32.001.

(ii) In calculating the interest amount due, the contracting officer shall—

(A) Determine the defective pricing amounts that have been overpaid to the contractor;

(B) Consider the date of each overpayment (the date of overpayment for this interest calculation shall be the date payment was made for the related completed and accepted contract items; or for subcontract defective pricing, the date payment was made to the prime contractor, based on prime contract progress billings or deliveries, which included payments for a completed and accepted subcontract item); and

(C) Apply the underpayment interest rate(s) in effect for each quarter from the time of overpayment to the time of repayment, utilizing rate(s) prescribed by the Secretary of the Treasury under 26 U.S.C. 6621(a)(2).

(iii) In arriving at the amount due for penalties on contracts where the submission of defective cost or pricing data was a knowing submission, the contracting officer shall obtain an amount equal to the amount of overpayment made. Before taking any contractual actions concerning penalties, the contracting officer shall obtain the advice of counsel.

(iv) In the demand letter, the contracting officer shall separately include—

(A) The repayment amount;

(B) The penalty amount (if any);

(C) The interest amount through a specified date; and

(D) A statement that interest will continue to accrue until repayment is made.

(c) If, after award, the contracting officer learns or suspects that the data furnished were not accurate, complete, and current, or were not adequately verified by the contractor as of the time of negotiation, the contracting officer shall request an audit to evaluate the accuracy, completeness, and currency of the data. The Government may evaluate the profit-cost relationships only if the audit reveals that the data certified by the contractor were defective. The contracting officer shall not reprice the contract solely because the profit was greater than forecast or because a contingency specified in the submission failed to materialize.

(d) For each advisory audit received based on a postaward review that indicates defective pricing, the contracting officer shall make a determination as to whether or not the data submitted were defective and relied upon. Before making such a determination, the contracting officer should give the contractor an opportunity to support the accuracy, completeness, and currency of the data in question. The contracting officer shall prepare a memorandum documenting both the determination and any corrective action taken as a result. The contracting officer shall send one copy of this memorandum to the auditor and, if the contract has been assigned for administration, one copy to the administrative contracting officer (ACO). A copy of the memorandum or other notice of the contracting officer's determination shall be provided to the contractor.

(e) If both the contractor and subcontractor submitted, and the contractor certified, or should have certified, cost or pricing data, the Government has the right, under the clauses at 52.215-10, Price Reduction for Defective Cost or Pricing Data, and 52.215-11, Price Reduction for Defective Cost or Pricing Data—Modifications, to reduce the prime contract price if it was significantly increased because a subcontractor submitted defective data. This right applies whether these data supported subcontract cost estimates or supported firm agreements between subcontractor and contractor.

(f) If Government audit discloses defective subcontractor cost or pricing data, the information necessary to support a reduction in prime contract and subcontract prices may be available only from the Government. To the extent necessary to secure a prime contract price reduction, the contracting officer should make this information available to the prime contractor or appropriate subcontractors, upon request. If release of the information would compromise Government security or disclose trade secrets or confidential business information, the contracting officer shall release it only under conditions that will protect it from improper disclosure. Information made available under this paragraph shall be limited to that used as the basis for the prime contract price reduction. In order to afford an opportunity for corrective action, the contracting officer should give the prime contractor reasonable advance notice before determining to reduce the prime contract price.

(1) When a prime contractor includes defective subcontract data in arriving at the price but later awards the subcontract to a lower priced subcontractor (or does not subcontract for the work), any adjustment in the prime contract price due to defective subcontract data is limited to the difference (plus applicable indirect cost and profit markups) between the subcontract price used for pricing the prime contract, and either the actual subcontract price or the actual cost to the contractor, if not subcontracted, provided the data on which the actual subcontract price is based are not themselves defective.

(2) Under cost-reimbursement contracts and under all fixed-price contracts except firm-fixed-price contracts and fixed-price contracts with economic price adjustment, payments to subcontractors that are higher than they would be had there been no defective subcontractor cost or pricing data shall be the basis for disallowance or nonrecognition of costs under the clauses prescribed in 15.408(b) and (c). The Government has a continuing and direct financial interest in such payments that is unaffected by the initial agreement on prime contract price.

### 15.407-2 Make-or-buy programs.

(a) *General.* The prime contractor is responsible for managing contract performance, including planning, placing, and administering subcontracts as necessary to ensure the lowest overall cost and technical risk to the Government. When make-or-buy programs are required, the Government may reserve the right to review and agree on the contractor's make-or-buy program when necessary to ensure negotiation of reasonable contract prices, satisfactory performance, or implementation of socioeconomic policies. Consent to subcontracts and review of contractors' purchasing systems are separate actions covered in Part 44.

(b) *Definition.* "Make item," as used in this subsection, means an item or work effort to be produced or performed by the prime contractor or its affiliates, subsidiaries, or divisions.

(c) *Acquisitions requiring make-or-buy programs.*

(1) Contracting officers may require prospective contractors to submit make-or-buy program plans for negotiated acquisitions requiring cost or pricing data whose estimated value is $10 million or more, except when the proposed contract is for research or development and, if prototypes or hardware are involved, no significant follow-on production is anticipated.

(2) Contracting officers may require prospective contractors to submit make-or-buy programs for negotiated acquisitions whose estimated value is under $10 million only if the contracting officer—

(i) Determines that the information is necessary; and

(ii) Documents the reasons in the contract file.

(d) *Solicitation requirements.* When prospective contractors are required to submit proposed make-or-buy programs, the solicitation shall include—

(1) A statement that the program and required supporting information must accompany the offer; and

(2) A description of factors to be used in evaluating the proposed program, such as capability, capacity, availability of small, small disadvantaged, and women-owned small business concerns for subcontracting, establishment of new facilities in or near labor surplus areas, delivery or performance schedules, control of technical and schedule interfaces, proprietary processes, technical superiority or exclusiveness, and technical risks involved.

(e) *Program requirements.* To support a make-or-buy program, the following information shall be supplied by the contractor in its proposal:

(1) *Items and work included.* The information required from a contractor in a make-or-buy program shall be confined to those major items or work efforts that normally would require company management review of the make-or-buy decision because they are complex, costly, needed in large quantities, or require additional facilities to produce. Raw materials, commercial items (see 2.101), and off-the-shelf items (see 46.101) shall not be included, unless their potential impact on contract cost or schedule is critical. Normally, make-or-buy programs should not include items or work efforts estimated to cost less than 1 percent of the total estimated contract price or any minimum dollar amount set by the agency.

(2) The offeror's program should include or be supported by the following information:

(i) A description of each major item or work effort.

(ii) Categorization of each major item or work effort as "must make," "must buy," or "can either make or buy."

(iii) For each item or work effort categorized as "can either make or buy," a proposal either to "make" or to "buy."

(iv) Reasons for categorizing items and work efforts as "must make" or "must buy," and proposing to "make" or to "buy" those categorized as "can either make or buy." The reasons must include the consideration given to the evaluation factors described in the solicitation and must be in sufficient detail to permit the contracting officer to evaluate the categorization or proposal.

(v) Designation of the plant or division proposed to make each item or perform each work effort, and a statement as to whether the existing or proposed new facility is in or near a labor surplus area.

(vi) Identification of proposed subcontractors, if known, and their location and size status (also see Subpart 19.7 for subcontracting plan requirements).

(vii) Any recommendations to defer make-or-buy decisions when categorization of some items or work efforts is impracticable at the time of submission.

(viii) Any other information the contracting officer requires in order to evaluate the program.

(f) *Evaluation, negotiation, and agreement.* Contracting officers shall evaluate and negotiate proposed make-or-buy programs as soon as practicable after their receipt and before contract award.

(1) When the program is to be incorporated in the contract and the design status of the product being acquired does not permit accurate precontract identification of major items or work efforts, the contracting officer shall notify the prospective contractor in writing that these items or efforts, when identifiable, shall be added under the clause at 52.215-9, Changes or Additions to Make-or-Buy Program.

(2) Contracting officers normally shall not agree to proposed "make items" when the products or services are not regularly manufactured or provided by the contractor and are available—quality, quantity, delivery, and other essential factors considered—from another firm at equal or lower prices, or when they are regularly manufactured or provided by the contractor, but are available—quality, quantity, delivery, and other essential factors considered—from another firm at lower prices. However, the contracting officer may agree to these as "make items" if an overall lower Governmentwide cost would result or it is otherwise in the best interest of the Government. If this situation occurs in any fixed-price incentive or cost-plus-incentive-fee contract, the contracting officer shall specify these items in the contract and state that they are subject to paragraph (d) of the clause at 52.215-9, Changes or Additions to Make-or-Buy Program (see 15.408(a)). If the contractor proposes to reverse the categorization of such items during contract performance, the contract price shall be subject to equitable reduction.

(g) *Incorporating make-or-buy programs in contracts.* The contracting officer may incorporate the make-or-buy program in negotiated contracts for—

(1) Major systems (see Part 34) or their subsystems or components, regardless of contract type; or

(2) Other supplies and services if—

(i) The contract is a cost-reimbursable contract, or a cost-sharing contract in which the contractor's share of the cost is less than 25 percent; and

(ii) The contracting officer determines that technical or cost risks justify Government review and approval of changes or additions to the make-or-buy program.

### 15.407-3 Forward pricing rate agreements.

(a) When cost or pricing data are required, offerors are required to describe any forward pricing rate agreements (FPRA's) in each specific pricing proposal to which the rates apply and to identify the latest cost or pricing data already submitted in accordance with the agreement. All data submitted in connection with the agreement, updated as necessary, form a part of the total data that the offeror certifies to be accu-

rate, complete, and current at the time of agreement on price for an initial contract or for a contract modification.

(b) Contracting officers will use FPRA rates as bases for pricing all contracts, modifications, and other contractual actions to be performed during the period covered by the agreement. Conditions that may affect the agreement's validity shall be reported promptly to the ACO. If the ACO determines that a changed condition invalidates the agreement, the ACO shall notify all interested parties of the extent of its effect and status of efforts to establish a revised FPRA.

(c) Contracting officers shall not require certification at the time of agreement for data supplied in support of FPRA's or other advance agreements. When a forward pricing rate agreement or other advance agreement is used to price a contract action that requires a certificate, the certificate supporting that contract action shall cover the data supplied to support the FPRA or other advance agreement, and all other data supporting the action.

**15.407-4 Should-cost review.**

(a) *General.* (1) Should-cost reviews are a specialized form of cost analysis. Should-cost reviews differ from traditional evaluation methods because they do not assume that a contractor's historical costs reflect efficient and economical operation. Instead, these reviews evaluate the economy and efficiency of the contractor's existing work force, methods, materials, facilities, operating systems, and management. These reviews are accomplished by a multi-functional team of Government contracting, contract administration, pricing, audit, and engineering representatives. The objective of should-cost reviews is to promote both short and long-range improvements in the contractor's economy and efficiency in order to reduce the cost of performance of Government contracts. In addition, by providing rationale for any recommendations and quantifying their impact on cost, the Government will be better able to develop realistic objectives for negotiation.

(2) There are two types of should-cost reviews—program should-cost review (see paragraph (b) of this subsection) and overhead should-cost review (see paragraph (c) of this subsection). These should-cost reviews may be performed together or independently. The scope of a should-cost review can range from a large-scale review examining the contractor's entire operation (including plant-wide overhead and selected major subcontractors) to a small-scale tailored review examining specific portions of a contractor's operation.

(b) *Program should-cost review.* (1) A program should-cost review is used to evaluate significant elements of direct costs, such as material and labor, and associated indirect costs, usually associated with the production of major systems. When a program should-cost review is conducted relative to a contractor proposal, a separate audit report on the proposal is required.

(2) A program should-cost review should be considered, particularly in the case of a major system acquisition (see Part 34), when—

(i) Some initial production has already taken place;

(ii) The contract will be awarded on a sole source basis;

(iii) There are future year production requirements for substantial quantities of like items;

(iv) The items being acquired have a history of increasing costs;

(v) The work is sufficiently defined to permit an effective analysis and major changes are unlikely;

(vi) Sufficient time is available to plan and adequately conduct the should-cost review; and

(vii) Personnel with the required skills are available or can be assigned for the duration of the should-cost review.

(3) The contracting officer should decide which elements of the contractor's operation have the greatest potential for cost savings and assign the available personnel resources accordingly. The expertise of on-site Government personnel should be used, when appropriate. While the particular elements to be analyzed are a function of the contract work task, elements such as manufacturing, pricing and accounting, management and organization, and subcontract and vendor management are normally reviewed in a should-cost review.

(4) In acquisitions for which a program should-cost review is conducted, a separate program should-cost review team report, prepared in accordance with agency procedures, is required. The contracting officer shall consider the findings and recommendations contained in the program should-cost review team report when negotiating the contract price. After completing the negotiation, the contracting officer shall provide the ACO a report of any identified uneconomical or inefficient practices, together with a report of correction or disposition agreements reached with the contractor. The contracting officer shall establish a follow-up plan to monitor the correction of the uneconomical or inefficient practices.

(5) When a program should-cost review is planned, the contracting officer should state this fact in the acquisition plan or acquisition plan updates (see Subpart 7.1) and in the solicitation.

(c) *Overhead should-cost review.* (1) An overhead should-cost review is used to evaluate indirect costs, such as fringe benefits, shipping and receiving, facilities and equipment, depreciation, plant maintenance and security, taxes, and gen-

eral and administrative activities. It is normally used to evaluate and negotiate an FPRA with the contractor. When an overhead should-cost review is conducted, a separate audit report is required.

(2) The following factors should be considered when selecting contractor sites for overhead should-cost reviews:

(i) Dollar amount of Government business.

(ii) Level of Government participation.

(iii) Level of noncompetitive Government contracts.

(iv) Volume of proposal activity.

(v) Major system or program.

(vi) Corporate reorganizations, mergers, acquisitions, or takeovers.

(vii) Other conditions (*e.g.*, changes in accounting systems, management, or business activity).

(3) The objective of the overhead should-cost review is to evaluate significant indirect cost elements in-depth, and identify and recommend corrective actions regarding inefficient and uneconomical practices. If it is conducted in conjunction with a program should-cost review, a separate overhead should-cost review report is not required. However, the findings and recommendations of the overhead should-cost team, or any separate overhead should-cost review report, shall be provided to the ACO. The ACO should use this information to form the basis for the Government position in negotiating an FPRA with the contractor. The ACO shall establish a follow-up plan to monitor the correction of the uneconomical or inefficient practices.

**15.407-5 Estimating systems.**

(a) Using an acceptable estimating system for proposal preparation benefits both the Government and the contractor by increasing the accuracy and reliability of individual proposals. Cognizant audit activities, when it is appropriate to do so, shall establish and manage regular programs for reviewing selected contractors' estimating systems or methods, in order to reduce the scope of reviews to be performed on individual proposals, expedite the negotiation process, and increase the reliability of proposals. The results of estimating system reviews shall be documented in survey reports.

(b) The auditor shall send a copy of the estimating system survey report and a copy of the official notice of corrective action required to each contracting office and contract administration office having substantial business with that contractor. Significant deficiencies not corrected by the contractor shall be a consideration in subsequent proposal analyses and negotiations.

**15.408 Solicitation provisions and contract clauses.**

(a) *Changes or Additions to Make-or-Buy Program.* The contracting officer shall insert the clause at 52.215-9, Changes or Additions to Make-or-Buy Program, in solicitations and contracts when it is contemplated that a make-or-buy program will be incorporated in the contract. If a less economical "make" or "buy" categorization is selected for one or more items of significant value, the contracting officer shall use the clause with—

(1) Its Alternate I, if a fixed-price incentive contract is contemplated; or

(2) Its Alternate II, if a cost-plus-incentive-fee contract is contemplated.

(b) *Price Reduction for Defective Cost or Pricing Data.* The contracting officer shall, when contracting by negotiation, insert the clause at 52.215-10, Price Reduction for Defective Cost or Pricing Data, in solicitations and contracts when it is contemplated that cost or pricing data will be required from the contractor or any subcontractor (see 15.403-4).

(c) *Price Reduction for Defective Cost or Pricing Data—Modifications.* The contracting officer shall, when contracting by negotiation, insert the clause at 52.215-11, Price Reduction for Defective Cost or Pricing Data—Modifications, in solicitations and contracts when it is contemplated that cost or pricing data will be required from the contractor or any subcontractor (see 15.403-4) for the pricing of contract modifications, and the clause prescribed in paragraph (b) of this section has not been included.

(d) *Subcontractor Cost or Pricing Data.* The contracting officer shall insert the clause at 52.215-12, Subcontractor Cost or Pricing Data, in solicitations and contracts when the clause prescribed in paragraph (b) of this section is included.

(e) *Subcontractor Cost or Pricing Data—Modifications.* The contracting officer shall insert the clause at 52.215-13, Subcontractor Cost or Pricing Data—Modifications, in solicitations and contracts when the clause prescribed in paragraph (c) of this section is included.

(f) *Integrity of Unit Prices.* (1) The contracting officer shall insert the clause at 52.215-14, Integrity of Unit Prices, in solicitations and contracts except for-

(i) Acquisitions at or below the simplified acquisition threshold;

(ii) Construction or architect-engineer services under Part 36;

(iii) Utility services under Part 41;

(iv) Service contracts where supplies are not required;

(v) Acquisitions of commercial items; and

(vi) Contracts for petroleum products.

(2) The contracting officer shall insert the clause with its Alternate I when contracting without adequate price competition or when prescribed by agency regulations.

(g) *Pension Adjustments and Asset Reversions.* The contracting officer shall insert the clause at 52.215-15, Pension Adjustments and Asset Reversions, in solicitations and contracts for which it is anticipated that cost or pricing data will

be required or for which any preaward or postaward cost determinations will be subject to Part 31.

(h) *Facilities Capital Cost of Money.* The contracting officer shall insert the provision at 52.215-16, Facilities Capital Cost of Money, in solicitations expected to result in contracts that are subject to the cost principles for contracts with commercial organizations (see Subpart 31.2).

(i) *Waiver of Facilities Capital Cost of Money.* If the prospective contractor does not propose facilities capital cost of money in its offer, the contracting officer shall insert the clause at 52.215-17, Waiver of Facilities Capital Cost of Money, in the resulting contract.

(j) *Reversion or Adjustment of Plans for Postretirement Benefits (PRB) Other Than Pensions.* The contracting officer shall insert the clause at 52.215-18, Reversion or Adjustment of Plans for Postretirement Benefits (PRB) Other Than Pensions, in solicitations and contracts for which it is anticipated that cost or pricing data will be required or for which any preaward or postaward cost determinations will be subject to Part 31.

(k) *Notification of Ownership Changes.* The contracting officer shall insert the clause at 52.215-19, Notification of Ownership Changes, in solicitations and contracts for which it is contemplated that cost or pricing data will be required or for which any preaward or postaward cost determination will be subject to Subpart 31.2.

(l) *Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data.* Considering the hierarchy at 15.402, the contracting officer may insert the provision at 52.215-20, Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data, in solicitations if it is reasonably certain that cost or pricing data or information other than cost or pricing data will be required. This provision also provides instructions to offerors on how to request an exception. The contracting officer shall—

(1) Use the provision with its Alternate I to specify a format for cost or pricing data other than the format required by Table 15-2 of this section;

(2) Use the provision with its Alternate II if copies of the proposal are to be sent to the ACO and contract auditor;

(3) Use the provision with its Alternate III if submission via electronic media is required; and

(4) Replace the basic provision with its Alternate IV if cost or pricing data are not expected to be required because an exception may apply, but information other than cost or pricing data is required as described in 15.403-3.

(m) *Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data—Modifications.* Considering the hierarchy at 15.402, the contracting officer may insert the clause at 52.215-21, Requirements for Cost or Pricing Data or Information Other Than Cost or Pricing Data—Modifications, in solicitations and contracts if it is reasonably certain that cost or pricing data or information other than cost or pricing data will be required for modifications. This clause also provides instructions to contractors on how to request an exception. The contracting officer shall—

(1) Use the clause with its Alternate I to specify a format for cost or pricing data other than the format required by Table 15-2 of this section;

(2) Use the clause with its Alternate II if copies of the proposal are to be sent to the ACO and contract auditor;

(3) Use the clause with its Alternate III if submission via electronic media is required; and

(4) Replace the basic clause with its Alternate IV if cost or pricing data are not expected to be required because an exception may apply, but information other than cost or pricing data is required as described in 15.403-3.

**TABLE 15-2—INSTRUCTIONS FOR SUBMITTING COST/PRICE PROPOSALS WHEN COST OR PRICING DATA ARE REQUIRED**

This document provides instructions for preparing a contract pricing proposal when cost or pricing data are required.

**NOTE 1.** There is a clear distinction between submitting cost or pricing data and merely making available books, records, and other documents without identification. The requirement for submission of cost or pricing data is met when all accurate cost or pricing data reasonably available to the offeror have been submitted, either actually or by specific identification, to the Contracting Officer or an authorized representative. As later information comes into your possession, it should be submitted promptly to the Contracting Officer in a manner that clearly shows how the information relates to the offeror's price proposal. The requirement for submission of cost or pricing data continues up to the time of agreement on price, or an earlier date agreed upon between the parties if applicable.

**NOTE 2.** By submitting your proposal, you grant the Contracting Officer or an authorized representative the right to examine records that formed the basis for the pricing proposal. That examination can take place at any time before award. It may include those books, records, documents, and other types of factual information (regardless of form or whether the information is specifically referenced or included in the proposal as the basis for pricing) that will permit an adequate evaluation of the proposed price.

**I. General Instructions**

A. You must provide the following information on the first page of your pricing proposal:

(1) Solicitation, contract, and/or modification number;

(2) Name and address of offeror;

(3) Name and telephone number of point of contact;

(4) Name of contract administration office (if available);

**TABLE 15-2—INSTRUCTIONS FOR SUBMITTING COST/PRICE PROPOSALS WHEN COST OR PRICING DATA ARE REQUIRED**

(5) Type of contract action (that is, new contract, change order, price revision/redetermination, letter contract, unpressed order, or other);

(6) Proposed cost; profit or fee; and total;

(7) Whether you will require the use of Government property in the performance of the contract, and, if so, what property;

(8) Whether your organization is subject to cost accounting standards; whether your organization has submitted a CASB Disclosure Statement, and if it has been determined adequate; whether you have been notified that you are or may be in noncompliance with your Disclosure Statement or CAS (other than a noncompliance that the cognizant Federal agency official has determined to have an immaterial cost impact), and, if yes, an explanation; whether any aspect of this proposal is inconsistent with your disclosed practices or applicable CAS, and, if so, an explanation; and whether the proposal is consistent with your established estimating and accounting principles and procedures and MMAR Part 31, Cost Principles, and, if not, an explanation;

(9) The following statement:

This proposal reflects our estimates and/or actual costs as of this date and conforms with the instructions in MMAR 15.403-5(b)(1) and Table 15-2. By submitting this proposal, we grant the Contracting Officer and authorized representative(s) the right to examine, at any time before award, those records, which include books, documents, accounting procedures and practices, and other data, regardless of type and form or whether such supporting information is specifically referenced or included in the proposal as the basis for pricing, that will permit an adequate evaluation of the proposed price.

(10) Date of submission; and

(11) Name, title, and signature of authorized representative.

B. In submitting your proposal, you must include an index, appropriately referenced, of all the cost or pricing data and information accompanying or identified in the proposal. In addition, you must annotate any future additions and/or revisions, up to the date of agreement on price, or an earlier date agreed upon by the parties, on a supplemental index.

C. As part of the specific information required, you must submit, with your proposal, cost or pricing data (that is, data that are verifiable and factual and otherwise as defined at MMAR 2.101). You must clearly identify on your cover sheet that cost or pricing data are included as part of the proposal. In addition, you must submit with your proposal any information reasonably required to explain your estimating process, including—

(a) The judgmental factors applied and the mathematical or other methods used in the estimate, including those used in projecting from known data; and

(b) The nature and amount of any contingencies included in the proposed price.

D. You must show the relationship between contract line item prices and the total contract price. You must attach cost-element breakdowns for each proposed line item, using the appropriate format prescribed in the "Formats for Submission of Line Item Summaries" section of this table. You must furnish supporting breakdowns for each cost element, consistent with your cost accounting system.

E. When more than one contract line item is proposed, you must also provide summary total amounts covering all line items for each element of cost.

F. Whenever you have incurred costs for work performed before submission of a proposal, you must identify those costs in your cost/price proposal.

G. If you have reached an agreement with Government representatives on use of forward pricing rates/factors, identify the agreement, include a copy, and describe its nature.

H. As soon as practicable after final agreement on price or an earlier date agreed to by the parties, but before the award resulting from the proposal, you must, under the conditions stated in MMAR 15.406-2, submit a Certificate of Current Cost or Pricing Data.

**II. Cost Elements**

Depending on your system, you must provide breakdowns for the following basic cost elements, as applicable:

A. *Materials and services.* Provide a consolidated priced summary of individual material quantities included in the various tasks, orders, or contract line items being proposed and the basis for pricing (vendor quotes, invoice prices, etc.). Include raw materials, parts, components, assemblies, and services to be produced or performed by others. For all items proposed, identify the item and show the source, quantity, and price. Conduct price analyses of all subcontractor proposals. Conduct cost analyses for all subcontracts when cost or pricing data are submitted by the subcontractor. Include these analyses as part of your own cost or pricing data submissions for subcontracts expected to exceed the appropriate threshold in MMAR 15.403-4. Submit the subcontractor cost or pricing data as part of your own cost or pricing data as required in paragraph IIA(2) of this table. These requirements also apply to all subcontractors if required to submit cost or pricing data.

*(1) Adequate Price Competition.* Provide data showing the degree of competition and the basis for establishing the source and reasonableness of price for those acquisitions (such as subcontracts, purchase orders, material order, etc.) exceeding, or expected to exceed, the appropriate threshold set forth at MMAR 15.403-4 priced on the basis of adequate price competition. For interorganizational transfers priced at other than the cost of comparable competitive commercial work of the division, subsidiary, or affiliate of the contractor, explain the pricing method (see MMAR 31.205-26(e)).

**TABLE 15-2—INSTRUCTIONS FOR SUBMITTING COST/PRICE PROPOSALS WHEN COST OR PRICING DATA ARE REQUIRED**

*(2) All Other.* Obtain cost or pricing data from prospective sources for those acquisitions (such as subcontracts, purchase orders, material order, etc.) exceeding the threshold set forth in MMAR 15.403-4 and not otherwise exempt, in accordance with MMAR 15.403-1(b) (i.e., adequate price competition, commercial items, prices set by law or regulation or waiver). Also provide data showing the basis for establishing source and reasonableness of price. In addition, provide a summary of your cost analysis and a copy of cost or pricing data submitted by the prospective source in support of each subcontract, or purchase order that is the lower of either $10,000,000 or more, or both more than the pertinent cost or pricing data threshold and more than 10 percent of the prime contractor's proposed price. The Contracting Officer may require you to submit cost or pricing data in support of proposals in lower amounts. Subcontractor cost or pricing data must be accurate, complete and current as of the date of final price agreement, or an earlier date agreed upon by the parties, given on the prime contractor's Certificate of Current Cost or Pricing Data. The prime contractor is responsible for updating a prospective subcontractor's data. For standard commercial items fabricated by the offeror that are generally stocked in inventory, provide a separate cost breakdown, if priced based on cost. For interorganizational transfers priced at cost, provide a separate breakdown of cost elements. Analyze the cost or pricing data and submit the results of your analysis of the prospective source's proposal. When submission of a prospective source's cost or pricing data is required as described in this paragraph, it must be included along with your own cost or pricing data submission, as part of your own cost or pricing data. You must also submit any other cost or pricing data obtained from a subcontractor, either actually or by specific identification, along with the results of any analysis performed on that data.

B. *Direct Labor.* Provide a time-phased (*e.g.*, monthly, quarterly, etc.) breakdown of labor hours, rates, and cost by appropriate category, and furnish bases for estimates.

C. *Indirect Costs.* Indicate how you have computed and applied your indirect costs, including cost breakdowns. Show trends and budgetary data to provide a basis for evaluating the reasonableness of proposed rates. Indicate the rates used and provide an appropriate explanation.

D. *Other Costs.* List all other costs not otherwise included in the categories described above (e.g., special tooling, travel, computer and consultant services, preservation, packaging and packing, spoilage and rework, and Federal excise tax on finished articles) and provide bases for pricing.

E. *Royalties.* If royalties exceed $1,500, you must provide the following information on a separate page for each separate royalty or license fee:

(1) Name and address of licensor.
(2) Date of license agreement.
(3) Patent numbers.
(4) Patent application serial numbers, or other basis on which the royalty is payable.
(5) Brief description (including any part or model numbers of each contract item or component on which the royalty is payable)
(6) Percentage or dollar rate of royalty per unit.
(7) Unit price of contract item.
(8) Number of units.
(9) Total dollar amount of royalties.
(10) If specifically requested by the Contracting Officer, a copy of the current license agreement and identification of applicable claims of specific patents (see MMAR 27.204 and 31.205-37).

F. *Facilities Capital Cost of Money.* When you elect to claim facilities capital cost of money as an allowable cost, you must submit Form CASB-CMF and show the calculation of the proposed amount (see MMAR 31.205-10).

**III. Formats for Submission of Line Item Summaries**

A. *New Contracts (including letter contracts).*

| COST ELEMENTS | PROPOSED CONTRACT ESTIMATE—TOTAL COST | PROPOSED CONTRACT ESTIMATE—UNIT COST | REFERENCE |
|---|---|---|---|
| (1) | (2) | (3) | (4) |

| Column | Instruction |
|---|---|
| (1) | Enter appropriate cost elements. |

**TABLE 15-2—INSTRUCTIONS FOR SUBMITTING COST/PRICE PROPOSALS WHEN COST OR PRICING DATA ARE REQUIRED**

| | |
|---|---|
| (2) | Enter those necessary and reasonable costs that, in your judgment, will properly be incurred in efficient contract performance. When any of the costs in this column have already been incurred (*e.g.*, under a letter contract), describe them on an attached supporting page. When preproduction or startup costs are significant, or when specifically requested to do so by the Contracting Officer, provide a full identification and explanation of them. |
| (3) | Optional, unless required by the Contracting Officer. |
| (4) | Identify the attachment in which the information supporting the specific cost element may be found. |

(Attach separate pages as necessary.)

B. *Change Orders, Modifications, and Claims.*

| COST ELEMENTS (1) | ESTIMATED COST OF ALL WORK DELETED (2) | COST OF DELETED WORK ALREADY PERFORMED (3) | NET COST TO BE DELETED (4) | COST OF WORK ADDED (5) | NET COST OF CHANGE (6) | REFERENCE (7) |
|---|---|---|---|---|---|---|
| | | | | | | |

| Column | Instruction |
|---|---|
| (1) | Enter appropriate cost elements. |
| (2) | Include the current estimates of what the cost would have been to complete the deleted work not yet performed (not the original proposal estimates), and the cost of deleted work already performed. |
| (3) | Include the incurred cost of deleted work already performed, using actuals incurred if possible, or, if actuals are not available, estimates from your accounting records. Attach a detailed inventory of work, materials, parts, components, and hardware already purchased, manufactured, or performed and deleted by the change, indicating the cost and proposed disposition of each line item. Also, if you desire to retain these items or any portion of them, indicate the amount offered for them. |
| (4) | Enter the net cost to be deleted, which is the estimated cost of all deleted work less the cost of deleted work already performed. Column (2) minus Column (3) equals Column (4). |
| (5) | Enter your estimate for cost of work added by the change. When nonrecurring costs are significant, or when specifically requested to do so by the Contracting Officer, provide a full identification and explanation of them. When any of the costs in this column have already been incurred, describe them on an attached supporting schedule. |
| (6) | Enter the net cost of change, which is the cost of work added, less the net cost to be deleted. Column (5) minus Column (4) equals Column (6). When this result is negative, place the amount in parentheses. |
| (7) | Identify the attachment in which the information supporting the specific cost element may be found. |

(Attach separate pages as necessary.)

C. *Price Revision/Redetermination.*

| CUTOFF DATE (1) | NUMBER OF UNITS COMPLETED (2) | NUMBER OF UNITS TO BE COMPLETED (3) | CONTRACT AMOUNT (4) | REDERTERMINATION PROPOSAL AMOUNT (5) | DIFFERENCE (6) |
|---|---|---|---|---|---|
| | | | | | |

| COST ELEMENTS (7) | INCURRED COST—PREPRODUCTION (8) | INCURRED COST—COMPLETED UNITS (9) | INCURRED COST—WORK IN PROGRESS (10) | TOTAL INCURRED COST (11) | ESTIMATED COST TO COMPLETE (12) | ESTIMATED TOTAL COST (13) | REFERENCE (14) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

(Use as applicable)

| Column | Instruction |
|---|---|
| (1) | Enter the cutoff date required by the contract, if applicable. |

**TABLE 15-2—INSTRUCTIONS FOR SUBMITTING COST/PRICE PROPOSALS WHEN COST OR PRICING DATA ARE REQUIRED**

| | |
|---|---|
| (2) | Enter the number of units completed during the period for which experienced costs of production are being submitted. |
| (3) | Enter the number of units remaining to be completed under the contract. |
| (4) | Enter the cumulative contract amount. |
| (5) | Enter your redetermination proposal amount. |
| (6) | Enter the difference between the contract amount and the redetermination proposal amount. When this result is negative, place the amount in parentheses. Column (4) minus Column (5) equals Column (6). |
| (7) | Enter appropriate cost elements. When residual inventory exists, the final costs established under fixed-price-incentive and fixed-price-redeterminable arrangements should be net of the fair market value of such inventory. In support of subcontract costs, submit a listing of all subcontracts subject to repricing action, annotated as to their status. |
| (8) | Enter all costs incurred under the contract before starting production and other nonrecurring costs (usually referred to as startup costs) from your books and records as of the cutoff date. These include such costs as preproduction engineering, special plant rearrangement, training program, and any identifiable nonrecurring costs such as initial rework, spoilage, pilot runs, etc. In the event the amounts are not segregated in or otherwise available from your records, enter in this column your best estimates. Explain the basis for each estimate and how the costs are charged on your accounting records (*e.g.*, included in production costs as direct engineering labor, charged to manufacturing overhead). Also show how the costs would be allocated to the units at their various stages of contract completion. |
| (9) | Enter in Column (9) the production costs from your books and records (exclusive of preproduction costs reported in Column (8)) of the units completed as of the cutoff date. |
| (10) | Enter in Column (10) the costs of work in process as determined from your records or inventoriesat the cutoff date. When the amounts for work in process are not available in your records but reliable estimates for them can be made, enter the estimated amounts in Column (10) and enter in column (9) the differences between the total incurred costs (exclusive of preproduction costs) as of the cutoff date and these estimates. Explain the basis for the estimates, including identification of any provision for experienced or anticipated allowances, such as shrinkage, rework, design changes, etc. Furnish experienced unit or lot costs (or labor hours) from inception of contract to the cutoff date, improvement curves, and any other available production cost history pertaining to the item(s) to which your proposal relates. |
| (11) | Enter total incurred costs (Total of Columns (8), (9), and (10)). |
| (12) | Enter those necessary and reasonable costs that in your judgment will properly be incurred in completing the remaining work to be performed under the contract with respect to the item(s) to which your proposal relates. |
| (13) | Enter total estimated cost (Total of Columns (11) and (12)). |
| (14) | Identify the attachment in which the information supporting the specific cost element may be found. |

(Attach separate pages as necessary.)

## Subpart 15.5—Preaward, Award, and Postaward Notifications, Protests, and Mistakes

**15.501 Definition.**

"Day," as used in this subpart, has the meaning set forth at 33.101.

**15.502 Applicability.**

This subpart applies to competitive proposals, as described in 6.102(b), and a combination of competitive procedures, as described in 6.102(c). The procedures in 15.504, 15.506, 15.507, 15.508, and 15.509, with reasonable modification, should be followed for sole source acquisitions and acquisitions described in 6.102(d)(1) and (2).

**15.503 Notifications to unsuccessful offerors.**

(a) *Preaward notices*—(1) *Preaward notices of exclusion from competitive range.* The contracting officer shall notify offerors promptly in writing when their proposals are excluded from the competitive range or otherwise eliminated from the competition. The notice shall state the basis for the determination and that a proposal revision will not be considered.

(b) *Postaward notices.* (1) Within 3 days after the date of contract award, the contracting officer shall provide written notification to each offeror whose proposal was in the competitive range but was not selected for award (10 U.S.C. 2305(b)(5) and 41 U.S.C. 253b(c)) or had not been previously notified under paragraph (a) of this section. The notice shall include—

(i) The number of offerors solicited;

(ii) The number of proposals received;

(iii) The name and address of each offeror receiving an award;

(iv) The items, quantities, and any stated unit prices of each award. If the number of items or other factors makes listing any stated unit prices impracticable at that time, only the total contract price need be furnished in the notice. However, the items, quantities, and any stated unit prices of each award shall be made publicly available, upon request; and

(v) In general terms, the reason(s) the offeror's proposal was not accepted, unless the price information in paragraph (b)(1)(iv) of this section readily reveals the reason. In no event shall an offeror's cost breakdown, profit, overhead rates, trade secrets, manufacturing processes and techniques, or other confidential business information be disclosed to any other offeror.

(2) Upon request, the contracting officer shall furnish the information described in paragraph (b)(1) of this section to unsuccessful offerors in solicitations using simplified acquisition procedures in Part 13.

(3) Upon request, the contracting officer shall provide the information in paragraph (b)(1) of this section to unsuccessful offerors that received a preaward notice of exclusion from the competitive range.

**15.504 Award to successful offeror.**

The contracting officer shall award a contract to the successful offeror by furnishing the executed contract or other notice of the award to that offeror.

(a) If the award document includes information that is different than the latest signed proposal, as amended by the offeror's written correspondence, both the offeror and the contracting officer shall sign the contract award.

(b) When an award is made to an offeror for less than all of the items that may be awarded and additional items are being withheld for subsequent award, each notice shall state that the Government may make subsequent awards on those additional items within the proposal acceptance period.

**15.505 Preaward debriefing of offerors.**

Offerors excluded from the competitive range or otherwise excluded from the competition before award may request a debriefing before award.

(a)(1) The offeror may request a preaward debriefing by submitting a written request for debriefing to the contracting officer within 3 days after receipt of the notice of exclusion from the competition.

(2) At the offeror's request, this debriefing may be delayed until after award. If the debriefing is delayed until after award, it shall include all information normally provided in a postaward debriefing (see 15.506(d)). Debriefings delayed pursuant to this paragraph could affect the timeliness of any protest filed subsequent to the debriefing.

(3) If the offeror does not submit a timely request, the offeror need not be given either a preaward or a postaward debriefing. Offerors are entitled to no more than one debriefing for each proposal.

(b) The contracting officer shall make every effort to debrief the unsuccessful offeror as soon as practicable, but may refuse the request for a debriefing if, for compelling reasons, it is not in the best interests of the Government to conduct a debriefing at that time. The rationale for delaying the debriefing shall be documented in the contract file. If the contracting officer delays the debriefing, it shall be provided no later than the time postaward debriefings are provided under 15.506. In that event, the contracting officer shall include the information at 15.506(d) in the debriefing.

(c) Debriefings may be done orally, in writing, or by any other method acceptable to the contracting officer.

(d) The contracting officer should normally chair any debriefing session held. Individuals who conducted the evaluations shall provide support.

(e) At a minimum, preaward debriefings shall include—

(1) The agency's evaluation of significant elements in the offeror's proposal;

(2) A summary of the rationale for eliminating the offeror from the competition; and

(3) Reasonable responses to relevant questions about whether source selection procedures contained in the solicitation, applicable regulations, and other applicable authorities were followed in the process of eliminating the offeror from the competition.

(f) Preaward debriefings shall not disclose—

(1) The number of offerors;

(2) The identity of other offerors;

(3) The content of other offerors' proposals;

(4) The ranking of other offerors;

(5) The evaluation of other offerors; or

(6) Any of the information prohibited in 15.506(e).

(g) An official summary of the debriefing shall be included in the contract file.

**15.506 Postaward debriefing of offerors.**

(a)(1) An offeror, upon its written request received by the agency within 3 days after the date on which that offeror has received notification of contract award in accordance with 15.503(b), shall be debriefed and furnished the basis for the selection decision and contract award.

(2) To the maximum extent practicable, the debriefing should occur within 5 days after receipt of the written request. Offerors that requested a postaward debriefing in lieu of a preaward debriefing, or whose debriefing was delayed for compelling reasons beyond contract award, also should be debriefed within this time period.

(3) An offeror that was notified of exclusion from the competition (see 15.505(a)), but failed to submit a timely request, is not entitled to a debriefing.

(4)(i) Untimely debriefing requests may be accommodated.

(ii) Government accommodation of a request for delayed debriefing pursuant to 15.505(a)(2), or any untimely debriefing request, does not automatically extend the deadlines for filing protests. Debriefings delayed pursuant to 15.505(a)(2) could affect the timeliness of any protest filed subsequent to the debriefing.

(b) Debriefings of successful and unsuccessful offerors may be done orally, in writing, or by any other method acceptable to the contracting officer.

(c) The contracting officer should normally chair any debriefing session held. Individuals who conducted the evaluations shall provide support.

(d) At a minimum, the debriefing information shall include—

(1) The Government's evaluation of the significant weaknesses or deficiencies in the offeror's proposal, if applicable;

(2) The overall evaluated cost or price (including unit prices) and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror;

(3) The overall ranking of all offerors, when any ranking was developed by the agency during the source selection;

(4) A summary of the rationale for award;

(5) For acquisitions of commercial items, the make and model of the item to be delivered by the successful offeror; and

(6) Reasonable responses to relevant questions about whether source selection procedures contained in the solicitation, applicable regulations, and other applicable authorities were followed.

(e) The debriefing shall not include point-by-point comparisons of the debriefed offeror's proposal with those of other offerors. Moreover, the debriefing shall not reveal any information prohibited from disclosure by 24.202 including—

(1) Trade secrets;

(2) Privileged or confidential manufacturing processes and techniques;

(3) Commercial and financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information; and

(4) The names of individuals providing reference information about an offeror's past performance.

(f) An official summary of the debriefing shall be included in the contract file.

**15.507 Protests against award.**

(a) Protests against award in negotiated acquisitions shall be handled in accordance with Part 33. Use of agency protest procedures that incorporate the alternative dispute resolution provisions of Executive Order 12979 is encouraged for both preaward and postaward protests.

(b) If a protest causes the agency, within 1 year of contract award, to—

(1) Issue a new solicitation on the protested contract award, the contracting officer shall provide the information in paragraph (c) of this section to all prospective offerors for the new solicitation; or

(2) Issue a new request for revised proposals on the protested contract award, the contracting officer shall provide the information in paragraph (c) of this section to offerors that were in the competitive range and are requested to submit revised proposals.

(c) The following information will be provided to appropriate parties:

(1) Information provided to unsuccessful offerors in any debriefings conducted on the original award regarding the successful offeror's proposal; and

(2) Other nonproprietary information that would have been provided to the original offerors.

**15.508 Discovery of mistakes.**

Mistakes in a contractor's proposal that are disclosed after award shall be processed substantially in accordance with the procedures for mistakes in bids at 14.407-4.

**15.509 Forms.**

Optional Form 307, Contract Award, GPO Form 3201B, Award/Contract, or SF 33, Solicitation, Offer and Award, may be used to award negotiated contracts in which the signature of both parties on a single document is appropriate. If these forms are not used, the award document shall incorporate the agreement and award language from the OF 307.

## Subpart 15.6—Unsolicited Proposals

### 15.600 Scope of subpart.

This subpart sets forth policies and procedures concerning the submission, receipt, evaluation, and acceptance or rejection of unsolicited proposals.

### 15.601 Definitions.

As used in this subpart—

"Advertising material" means material designed to acquaint the Government with a prospective contractor's present products, services, or potential capabilities, or designed to stimulate the Government's interest in buying such products or services.

"Commercial item offer" means an offer of a commercial item that the vendor wishes to see introduced in the Government's supply system as an alternate or a replacement for an existing supply item. This term does not include innovative or unique configurations or uses of commercial items that are being offered for further development and that may be submitted as an unsolicited proposal.

"Contribution" means a concept, suggestion, or idea presented to the Government for its use with no indication that the source intends to devote any further effort to it on the Government's behalf.

### 15.602 Policy.

It is the policy of the Government to encourage the submission of new and innovative ideas in response to Broad Agency Announcements, Program Research and Development Announcements, or any other Government-initiated solicitation or program. When the new and innovative ideas do not fall under topic areas publicized under those programs or techniques, the ideas may be submitted as unsolicited proposals.

### 15.603 General.

(a) Unsolicited proposals allow unique and innovative ideas or approaches that have been developed outside the Government to be made available to Government agencies for use in accomplishment of their missions. Unsolicited proposals are offered with the intent that the Government will enter into a contract with the offeror for research and development or other efforts supporting the Government mission, and often represent a substantial investment of time and effort by the offeror.

(b) Advertising material, commercial item offers, or contributions, as defined in 15.601, or routine correspondence on technical issues, are not unsolicited proposals.

(c) A valid unsolicited proposal must—

(1) Be innovative and unique;

(2) Be independently originated and developed by the offeror;

(3) Be prepared without Government supervision, endorsement, direction, or direct Government involvement;

(4) Include sufficient detail to permit a determination that Government support could be worthwhile and the proposed work could benefit the agency's research and development or other mission responsibilities; and

(5) Not be an advance proposal for a known agency requirement that can be acquired by competitive methods.

(d) Unsolicited proposals in response to a publicized general statement of agency needs are considered to be independently originated.

(e) MMS must evaluate unsolicited proposals for energy-savings performance contracts in accordance with the procedures in 10 CFR 436.33(b).

### 15.604 Agency points of contact.

(a) Preliminary contact with agency technical or other appropriate personnel before preparing a detailed unsolicited proposal or submitting proprietary information to the Government may save considerable time and effort for both parties (see 15.201). Agencies must make available to potential offerors of unsolicited proposals at least the following information:

(1) Definition (see 2.101) and content (see 15.605) of an unsolicited proposal acceptable for formal evaluation.

(2) Requirements concerning responsible prospective contractors (see Subpart 9.1), and organizational conflicts of interest (see Subpart 9.5).

(3) Guidance on preferred methods for submitting ideas/concepts to the Government.

(4) Agency points of contact for information regarding advertising, contributions, and other types of transactions similar to unsolicited proposals.

(5) Information sources on agency objectives and areas of potential interest.

(6) Procedures for submission and evaluation of unsolicited proposals.

(7) Instructions for identifying and marking proprietary information so that it is protected and restrictive legends conform to 15.609.

(b) Only the cognizant contracting officer has the authority to bind the Government regarding unsolicited proposals.

### 15.605 Content of unsolicited proposals.

Unsolicited proposals should contain the following information to permit consideration in an objective and timely manner:

(a) Basic information including—

(1) Offeror's name and address and type of organization; *e.g.*, profit, nonprofit, educational, small business;

(2) Names and telephone numbers of technical and business personnel to be contacted for evaluation or negotiation purposes;

(3) Identification of proprietary data to be used only for evaluation purposes;

(4) Names of other Federal, State, or local agencies or parties receiving the proposal or funding the proposed effort;

(5) Date of submission; and

(6) Signature of a person authorized to represent and contractually obligate the offeror.

(b) Technical information including—

(1) Concise title and abstract (approximately 200 words) of the proposed effort;

(2) A reasonably complete discussion stating the objectives of the effort or activity, the method of approach and extent of effort to be employed, the nature and extent of the anticipated results, and the manner in which the work will help to support accomplishment of the agency's mission;

(3) Names and biographical information on the offeror's key personnel who would be involved, including alternates; and

(4) Type of support needed from the agency; *e.g.*, facilities, equipment, materials, or personnel resources.

(c) Supporting information including—

(1) Proposed price or total estimated cost for the effort in sufficient detail for meaningful evaluation;

(2) Period of time for which the proposal is valid (a 6-month minimum is suggested);

(3) Type of contract preferred;

(4) Proposed duration of effort;

(5) Brief description of the organization, previous experience, relevant past performance, and facilities to be used;

(6) Other statements, if applicable, about organizational conflicts of interest, security clearances, and environmental impacts; and

(7) The names and telephone numbers of agency technical or other agency points of contact already contacted regarding the proposal.

**15.606 Procedures.**

(a) MMS shall establish procedures for controlling the receipt, evaluation, and timely disposition of unsolicited proposals consistent with the requirements of this subpart. The procedures shall include controls on the reproduction and disposition of proposal material, particularly data identified by the offeror as subject to duplication, use, or disclosure restrictions.

(b) MMS shall establish agency points of contact (see 15.604) to coordinate the receipt and handling of unsolicited proposals.

**15.606-1 Receipt and initial review.**

(a) Before initiating a comprehensive evaluation, the agency contact point shall determine if the proposal—

(1) Is a valid unsolicited proposal, meeting the requirements of 15.603(c);

(2) Is suitable for submission in response to an existing agency requirement (see 15.602);

(3) Is related to the agency mission;

(4) Contains sufficient technical and cost information for evaluation;

(5) Has been approved by a responsible official or other representative authorized to obligate the offeror contractually; and

(6) Complies with the marking requirements of 15.609.

(b) If the proposal meets these requirements, the contact point shall promptly acknowledge receipt and process the proposal.

(c) If a proposal is rejected because the proposal does not meet the requirements of paragraph (a) of this subsection, the agency contact point shall promptly inform the offeror of the reasons for rejection in writing and of the proposed disposition of the unsolicited proposal.

**15.606-2 Evaluation.**

(a) Comprehensive evaluations shall be coordinated by the agency contact point, who shall attach or imprint on each unsolicited proposal, circulated for evaluation, the legend required by 15.609(d). When performing a comprehensive evaluation of an unsolicited proposal, evaluators shall consider the following factors, in addition to any others appropriate for the particular proposal:

(1) Unique, innovative, and meritorious methods, approaches, or concepts demonstrated by the proposal;

(2) Overall scientific, technical, or socioeconomic merits of the proposal;

(3) Potential contribution of the effort to the agency's specific mission;

(4) The offeror's capabilities, related experience, facilities, techniques, or unique combinations of these that are integral factors for achieving the proposal objectives;

(5) The qualifications, capabilities, and experience of the proposed principal investigator, team leader, or key personnel critical to achieving the proposal objectives; and

(6) The realism of the proposed cost.

(b) The evaluators shall notify the agency point of contact of their recommendations when the evaluation is completed.

**15.607 Criteria for acceptance and negotiation of an unsolicited proposal.**

(a) A favorable comprehensive evaluation of an unsolicited proposal does not, in itself, justify awarding a contract without providing for full and open competition. The agency point of contact shall return an unsolicited proposal to the offeror, citing reasons, when its substance—

(1) Is available to the Government without restriction from another source;

(2) Closely resembles a pending competitive acquisition requirement;

(3) Does not relate to the activity's mission; or

(4) Does not demonstrate an innovative and unique method, approach, or concept, or is otherwise not deemed a meritorious proposal.

(b) The contracting officer may commence negotiations on a sole source basis only when—

(1) An unsolicited proposal has received a favorable comprehensive evaluation;

(2) A justification and approval has been obtained (see 6.302-1(a)(2)(i) for research proposals or other appropriate provisions of Subpart 6.3, and 6.303-2(b));

(3) The agency technical office sponsoring the contract furnishes the necessary funds; and

(4) The contracting officer has complied with the synopsis requirements of Subpart 5.2.

### 15.608 Prohibitions.

(a) Government personnel shall not use any data, concept, idea, or other part of an unsolicited proposal as the basis, or part of the basis, for a solicitation or in negotiations with any other firm unless the offeror is notified of and agrees to the intended use. However, this prohibition does not preclude using any data, concept, or idea in the proposal that also is available from another source without restriction.

(b) Government personnel shall not disclose restrictively marked information (see 3.104 and 15.609) included in an unsolicited proposal. The disclosure of such information concerning trade secrets, processes, operations, style of work, apparatus, and other matters, except as authorized by law, may result in criminal penalties under 18 U.S.C. 1905.

### 15.609 Limited use of data.

(a) An unsolicited proposal may include data that the offeror does not want disclosed to the public for any purpose or used by the Government except for evaluation purposes. If the offeror wishes to restrict the data, the title page must be marked with the following legend:

USE AND DISCLOSURE OF DATA

This proposal includes data that shall not be disclosed outside the Government and shall not be duplicated, used, or disclosed—in whole or in part—for any purpose other than to evaluate this proposal. However, if a contract is awarded to this offeror as a result of—or in connection with—the submission of these data, the Government shall have the right to duplicate, use, or disclose the data to the extent provided in the resulting contract. This restriction does not limit the Government's right to use information contained in these data if they are obtained from another source without restriction. The data subject to this restriction are contained in Sheets [*insert numbers or other identification of sheets*].

(b) The offeror shall also mark each sheet of data it wishes to restrict with the following legend: Use or disclosure of data contained on this sheet is subject to the restriction on the title page of this proposal.

(c) The agency point of contact shall return to the offeror any unsolicited proposal marked with a legend different from that provided in paragraph (a) of this section. The return letter will state that the proposal cannot be considered because it is impracticable for the Government to comply with the legend and that the agency will consider the proposal if it is resubmitted with the proper legend.

(d) The agency point of contact shall place a cover sheet on the proposal or clearly mark it as follows, unless the offeror clearly states in writing that no restrictions are imposed on the disclosure or use of the data contained in the proposal:

UNSOLICITED PROPOSAL—USE OF DATA LIMITED

All Government personnel must exercise extreme care to ensure that the information in this proposal is not disclosed to an individual who has not been authorized access to such data in accordance with MMAR 3.104, and is not duplicated, used, or disclosed in whole or in part for any purpose other than evaluation of the proposal, without the written permission of the offeror. If a contract is awarded on the basis of this proposal, the terms of the contract shall control disclosure and use. This notice does not limit the Government's right to use information contained in the proposal if it is obtainable from another source without restriction. This is a Government notice, and shall not by itself be construed to impose any liability upon the Government or Government personnel for disclosure or use of data contained in this proposal.

(e) Use the notice in paragraph (d) of this section solely as a manner of handling unsolicited proposals that will be compatible with this subpart. However, do not use this notice to justify withholding of a record, or to improperly deny the public access to a record, where an obligation is imposed by the Freedom of Information Act (5 U.S.C. 552). An offeror should identify trade secrets, commercial or financial information, and privileged or confidential information to the Government (see paragraph (a) of this section).

(f) When an agency receives an unsolicited proposal without any restrictive legend from an educational or nonprofit organization or institution, and an evaluation outside the Government is necessary, the agency point of contact shall—

(1) Attach a cover sheet clearly marked with the legend in paragraph (d) of this section;

(2) Change the beginning of this legend to read "All Government and non-Government personnel . . . ."; and

(3) Require any non-Government evaluator to agree in writing that data in the proposal will not be disclosed to others outside the Government.

(g) If the proposal is received with the restrictive legend (see paragraph (a) of this section), the modified cover sheet shall also be used and permission shall be obtained from the offeror before release of the proposal for evaluation by non-Government personnel.

(h) When an agency receives an unsolicited proposal with or without a restrictive legend from other than an educational or nonprofit organization or institution, and evaluation by Government personnel outside the agency or by experts outside of the Government is necessary, written permission must be obtained from the offeror before release of the proposal for evaluation. The agency point of contact shall—

(1) Clearly mark the cover sheet with the legend in paragraph (d) or as modified in paragraph (f) of this section; and

(2) Obtain a written agreement from any non-Government evaluator stating that data in the proposal will not be disclosed to persons outside the Government.

* * * * * *