**AGREED-UPON REDACTED COPY**
**- MAY BE MADE PUBLIC**

**THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | |
|---|---|
| OTI AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Civil Action No. 06-571-C<br>(Judge Lettow) |

**STATEMENT OF FACTS IN SUPPORT OF PLAINTIFF OTI AMERICA, INC.'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Pursuant to RCFC 52.1, Plaintiff, OTI America, Inc. ("OTI"), by its undersigned attorney, hereby submits this Statement of Facts in support of its Motion for Judgment on the Administrative Record, filed herewith.

***The GPO's Solicitation for Offers and Selection of Vendors***

1. In June 2004, the United States Government Printing Office (the "GPO") issued Solicitation for Offers EP-2004 (the "Solicitation"). The Solicitation called for proposals to provide electronic, integrated circuit-embedded passport covers. While the GPO is the procuring agency, these covers will eventually be used as part of the Department of State's electronic passport system. Administrative Record 2005[1] ("AR 2005") Tabs A1 at 25, A26 at 272).

2. The United States Government (the "Government") chose to create electronic passports in response to Section 303 of the Enhanced Border Security and Visa Entry Reform Act of 2002 (the "Act"). The Act imposes a new electronic-passport requirement on foreign

[1] The Administrative Record from OTI Am., Inc. v. United States, 68 Fed. Cl. 646 (2005) has been incorporated into the Administrative Record of this current bid protest per order of this Court.

**AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC**

countries participating in the United States' Visa Waiver Program. Specifically, foreign countries must use electronic (i.e. integrated-circuit embedded) passports if their citizens are to be permitted to travel to the United States without a visa. AR 2005 Tab A1 at 24.

3. Section 303 of the Enhanced Border Security and Visa Entry Reform Act of 2002 (Enhanced Border Security Act) states that by October 26, 2004, all Visa Waiver Program (VWP) participant states must adopt electronic passports as the Act requires. AR 2005 Tabs A1, at 24, A26, at 272. Likewise, these states will impose similar requirements on American nationals. In 2004, the administration asked Congress to extend the deadline from October 26, 2004 to October 26, 2005 and Congress granted the request. AR 2005 Tab A26 at 272. Subsequently, in 2005, the European Union requested another extension. The Department of Homeland Security responded that all VWP passports must have digital photographs by October of 2005 and must submit an "acceptable plan" for introducing electronic passports by October of 2006. OTI Am. v. United States, No. 05-904K, Judge Lettow, October 14, 2005 (with attached press release). The Government has acknowledged that the Enhanced Border Security Act does not require the United States itself to implement an electronic-passport program. The Government has chosen, however, to comply with the same requirements that the United States has imposed on Visa Waiver Program countries. AR Tab A1 at 24-25.

4. Pursuant to the Solicitation, the competition to supply electronic-passport covers was to be "a full and open competition." AR 2005 Tab A1 at 25. The Solicitation required that the ePassport be "an international interoperable EP compliant with the recommendations of the International Civil Aviation Organization (ICAO)." AR 2005 Tab A, at 29 (Solicitation § C2).

5. The contract or contracts issued pursuant to the Solicitation were to last for up to five years, including various contract options. AR 2005 Tab A1 at 25.

**AGREED-UPON REDACTED COPY**
**- MAY BE MADE PUBLIC**

6. In August 2004, OTI submitted a proposal in response to the Solicitation. AR 2005 Tab E generally.

7. On October 11, 2004, the GPO notified OTI that it planned to award contracts to four bidders. OTI was not among those four, and thus OTI had not been selected for an award. AR Tab A2 at 209.

8. On December 20, 2004, after OTI filed a bid protest at the Government Accountability Office ("GAO"), Contracting Officer Albertha Broadnax ("Broadnax") notified OTI by e-mail that the GPO had reversed its earlier decision and now intended to award a contract to OTI. In addition to the original four awardees, four new bidders, including OTI, were awarded contracts. AR 2005 Tabs A2 at 209; A65 at 449-51. In March of 2005, the GPO sent a letter to OTI informing it of its deselection. AR 2005 Tab A3 at 210-11.

9. After protesting the deselection of OTI at the GAO, on August 30, 2005, OTI filed a bid protest in the United States Court of Federal Claims asserting that GPO eliminated OTI based on unreasonable and undisclosed evaluation criteria and that GPO had treated contractors unequally. On November 30, 2005, this Court (Lettow, J.) issued an Opinion and Order Under Seal (and reissued the opinion and order not under seal December 7, 2005). See OTI Am., Inc. v. United States, 68 Fed. Cl. 646 (2005).

10. The Court found that "there were errors in GPO's procurement of electronic passport covers that materially prejudiced OTI. Applying 28 U.S.C. § 1491(b)(2), the Court orders a limited measure of equitable relief, requiring that GPO reinstate OTI and resume testing OTI's products at the same contractual state at which OTI was previously and improperly eliminated." Id. at 647.

11. The Court found that "contrary to the government's contention, the Evaluation Rules appear to have been applied by GPO in a binding manner against OTI in determining whether it should be eliminated from consideration at future states . . . [t]he Evaluation Rules were neither set out in the Solicitation nor separately provided to the parties." Id. at 655.

12. The Court held that "during the testing states of the procurement, GPO applied the Evaluation Rules inconsistently to products supplied by multiple contractors, including OTI . . . the administrative record demonstrates that GPO did not apply its evaluation criteria in an even-handed and fair way. The record provides an inadequate explanation as to the rationale underlying GPO's termination of OTI while keeping other contractors in the competition despite repeated and ostensibly comparable test failures with their products." Id. at 657. Given the GPO's prior conduct, there should be no presumption of regularity by the GPO. As well as the GPO disparately treating competing contractors, the GPO abused its discretion that "GPO's contracting officer did not apply the discretion she possessed under the Evaluation Rules." Id. at 658.

13. Accordingly, in December of 2005, the GPO reinstated OTI along with two other competitors into the competition. AR Tabs 1 at 1-2; 10 at 304-306; 13 at 312-13.

***The Production Portion of the Procurement***

14. Section M.2 of the Solicitation (Bases for Award and Ordering) set forth the process and evaluation criteria for the production portion of the procurement. According to this provision, the products of those vendors to whom the GPO had granted contracts would be put through a battery of multi-agency laboratory and field tests. AR 2005 Tab A1 at 205-06.

15. The Solicitation stated that evaluations during the testing stages would be made on a "best value" basis. AR 2005 Tab A1 at 205, 207.

**AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC**

16. Section C of the Solicitation (Specifications/Statement of Work) provided contractors with detailed specifications and a "road map" to the production portion of the contract. AR 2005 Tab A1 at 20-52. In particular, at Section C1.2.4 (Assembly of Test Passports by the GPO), the Government assumed responsibility for the assembly of test books by GPO personnel on GPO production equipment, based on material provided by the contractors. Specifically, the GPO would receive sample circuit-embedded passport covers from the contractors, which GPO would attach to passport books using GPO machinery. AR 2005 Tab A1 at 26.

17. Pilot programs, in which vendors' covers would be used on a limited number of actual passports, would follow the assembly and laboratory testing. AR 2005 Tab A1 at 26.

18. The GPO would obtain the vendors' samples for each stage of testing by issuing orders under the contracts, or, in the language of the procurement, by exercising a series of contract line items ("CLINs"). CLINs 1 through 5 are various test-and-evaluation CLINs, while CLIN 6 is the multi-million unit production order. AR 2005 Tab A1 at 29-32.

19. At Section C1.2.8 (Future Purchases) of the Solicitation, the GPO laid out its procurement strategy for the stages beyond the assembly-and-testing stage. The GPO stated that while it would ultimately award multiple production orders, it would purchase a high volume of passports from one vendor and low volumes from one or more other vendors. AR 2005 Tab A1 at 26-27.

20. Section C7.2.3 (EP Book Cover Testing & Inspection) stated that "[t]he Offeror shall work with the Government in solving problems that might be identified in Government testing." AR 2005 Tab A1 at 40.

**AGREED-UPON REDACTED COPY - MAY BE MADE PUBLIC**

***The Disclosed Evaluation Criteria in the Solicitation***

21. The Solicitation requires that the contactless Integrated Circuit (IC)/antenna assembly (the "ePassport") be compliant with standards set by the International Civil Aviation Organization ("ICAO") which incorporates the standards set by the International Organization for Standardization ("ISO"). See AR 2005 Tab A1 at 67 (Solicitation § C2). These international standards allow interoperability among all types of electronic passports. Id. Broadnax stated that these standards were the technical standards against which the offerors' products were to be evaluated. Broadnax Dep. at 50:10 -51:5.

22. According to the Solicitation, the State Department, by and through the National Institute of Standards and Technology ("NIST"), tests the ePassport according to ISO and ICAO internationally recognized standards. See AR 2005 Tab A1 at 79 (Solicitation § C7.2.3.1); September 11, 2006 deposition of Albertha Broadnax ("Broadnax Dep.") at 14:3-20. The latest version of the standards are available at a particular website and the nonpublic versions will be provided to contractors. Id.

23. [

]

24. [

]

25. [

]

26. [

]

27. [

]

28. [

]

*Contrary to the Disclosed ICAO Standard, NIST Used Undisclosed Testing Criteria*

29. [

]

30. [

]

---

[2] AR references the 2006 Administrative Record filed in the current bid protest which incorporates the AR 2005.

31. [

]

32. [

]

33. [

]

### ***International Testing Criteria***[3]

34. The ICAO standards, against which offerors's products were to be evaluated, for Impact Testing are found in the Durability of Machine Readable Passports, at 15-17, ICAO TF4 Doc. N0156 (Feb 9, 2006). The author is ISO/IEC/JTC1/SC17/WG3/TF4 (International Standards Organization and International Electrotechnical Commission, Joint Technical Committee on Information Technology, Sub-Committee 17, Working Group 3, Task Force 4) and published by ICAO. See generally ISO/IEC/JTC1/SC17 Website at http://www.sc17.com.

35. ICAO set the standards for Bend Testing in the Durability of Machine Readable Passports, at 15-17, ICAO TF4 Doc. N0156 (Feb 9, 2006). The author is ISO/IEC/JTC1/SC17/WG3/TF4 (International Standards Organization and International

**AGREED-UPON REDACTED COPY
- MAY BE MADE PUBLIC**

Electrotechnical Commission, Joint Technical Committee on Information Technology, Sub-Committee 17, Working Group 3, Task Force 4) and published by ICAO. See generally ISO/IEC/JTC1/SC17 Website at http://www.sc17.com.

36. The international standards for Electromagnetic/Static Electricity Testing are set forth in International Electrotechnical Commission ("IEC") 61000-4-2. International Electrotechnical Commission [IEC], 61000-4-2, Electromagnetic compatibility (EMC) – Part 4-2: Testing and measurement techniques – Electrostatic discharge immunity test, IEC Doc. CEI/IEC 61000-4-2:1995+A1:1998+A2:2000, available at http://www.iec.ch/.

37. ICAO standards for Load Modulation Testing are set forth in International Civil Aviation Organization [ICAO], RF Protocol and Application Test Standard for E-Passport – Part 2, Tests for Air Interface, Initialisation, Anticollision and Transport Protocol, at 12-14, ICAO TF4 Doc. WG3TF4_SDXX_RF protocol and application test standard ePP Part 2.doc (Feb. 10, 2006). See generally ISO/IEC/JTC1/SC17 Website at http://www.sc17.com.

***OTI Is Eliminated From the Competition***

38. [ ]

39. [ ]

---

[3] The two documents mentioned below are ICAO international standards that are available through members of Working Group 3 of the Joint Task Committee, Subcommittee 17 of the ICAO. The United States is a member of the Working Group.

40. [

]

41. [

]

*Other Vendors' Products Suffered From Much More Serious Problems*

42 [

]

43. [

] Nothing in the Solicitation detailed the relative weight of one test versus another.

44. [

]

45. [

]

46. [

**AGREED-UPON REDACTED COPY**
**- MAY BE MADE PUBLIC**

]

***The Contracting Officer's Reliance on Others and Lack of Independent Judgment***

47. [

]

48. [

]

49. [

]

50. [

]

51. [

]

52. [

]

**AGREED-UPON REDACTED COPY
- MAY BE MADE PUBLIC**

53. [

]

54. [

]

55. [

]

56. [

]

57. [

]

58. [

]

**AGREED-UPON REDACTED COPY**
**- MAY BE MADE PUBLIC**

59. [

]

Respectfully submitted,

OTI AMERICA, INC.

By its attorneys,

Electronically filed on
October 11, 2006

/s/ William M. Weisberg
William M. Weisberg
SULLIVAN & WORCESTER LLP
1666 K Street, NW
Washington, DC 20006
(202) 775-1200
(202) 293-2275 (fax)

*Counsel of Record for Plaintiff OTI America, Inc.*

Beth L. Jacobson
Joyce L. Tong
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, MA 02109
(617) 338-2800
(617) 338-2880 (fax)

*Of Counsel for Plaintiff OTI America, Inc.*