**Agreed-Upon Redacted Copy –
May Be Made Public**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-571C (Bid Protest)
(Judge Lettow)

OTI AMERICA, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE OF COURT TO SUPPLEMENT ADMINISTRATIVE RECORD

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DONALD E. KINNER
Assistant Director

OF COUNSEL:

JENNIFER R. SEIFERT
Assistant General Counsel
Government Printing Office

RICHARD B. EVANS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 353-7760
Facsimile: (202) 305-7643

August 29, 2006

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE(S)**

I. This Case Should Be Decided Based Upon The Administrative Record .......................... 2

II. OTI Has Failed To Meet Its Heavy Burden For The Requested Discovery ...................... 3

A. The Administrative Record Contains All Materials Required By This Court's Rules ........................................................................................ 4

1. OTI's Request To Depose The Contracting Officer Should Be Denied ........................................................................ 4

2. Testimony Regarding The Berlin Conference Is Irrelevant To The Present Case, This OTI's Request To Depose Individuals From That Conference Should Be Denied .............................. 6

3. OTI's Request To Depose Richard Grasso Is Unfounded ......................... 9

4. OTI's Request To Depose Personnel From NIST Should Be Denied ........................................................................ 9

B. OTI's Discovery Request Is Not "Narrowly Tailored" ...................................... 10

C. If Permitted, Depositions Should Be Strictly Limited ........................................ 11

III. OTI's Request To Supplement The Administrative Record Makes A Mockery Of What A Bid Protest Is Designed To Accomplish ...................................................... 13

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

## CASES

**PAGE(S)**

Camp v. Pitts,
411 U.S. 138 (1973) .......... 2

Citizens to Preserve Overton Park, Inc. v. Volpe,
401 U.S. 402 (1971) .......... 11

Cochran v. United States,
3 Cl. Ct. 3 (1983) .......... 12

Cubic Applic'n, Inc. v. United States,
37 Fed. Cl. 339 (1997) .......... 12

Doraiswamy v. Secretary of Labor,
555 F.2d 832 (D.C. Cir. 1976) .......... 3

Florida Power & Light Co. v. Lorion,
470 U.S. 729 (1985) .......... 2

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) .......... 3, 4, 9, 12

Orion International Technicians. v. United States,
60 Fed. Cl. 338 (2004) .......... 11

Stapp Towing Inc. v. United States,
34 Fed. Cl. 300 (1995) .......... 4

Terrell v. United States,
7 Cl. Ct. 171 (1984) .......... 11

United Intl. Investig. Serv., Inc. v. United States,
41 Fed. Cl. 312 (1998) .......... 12

United States v. Morgan,
313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) .......... 12

Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,
435 U.S. 519 (1978) .......... 2

## STATUTES

5 U.S. C. §§ 702 .......... 2

5 U.S. C. § 706(2)(A) .......... 2

28 U.S.C. § 1491(b)(1) .......... 2

28 U.S.C. § 1491(b)(4) .......... 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| OTI AMERICA, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 06-571C **(Bid Protest)**<br>(Judge Lettow)<br><br>**Agreed-Upon Redacted Copy – May Be Made Public** |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE OF COURT TO SUPPLEMENT ADMINISTRATIVE RECORD**

Pursuant to Rule 26 of the Court's Rules and the Court's order of August 8, 2006, defendant, the United States, respectfully submits this response to the "Motion for Leave of Court to Supplement Administrative Record" filed by plaintiff, OTI America, Inc. ("OTI"). As we demonstrate below, OTI's motion should be denied because it has failed to make an initial showing of evidence of wrongdoing sufficient to overcome the Court's strong presumption against supplementing the agency record through depositions or other testimony. As set forth more fully below, the administrative record in this action provides a completely adequate basis upon which the Court may judge the contracting officer's decision in this case and decide the merits of this protest. See Administrative Record ("AR") (filed August 18, 2006).[1] Because this case can be decided based solely upon the administrative record, discovery or supplementation of the record is not necessary. Moreover, OTI has failed to meet its heavy burden that discovery is warranted. For these reasons, OTI's motion should be denied.

---

[1] See also the administrative record from the previous related case which, at the hearing on August 9, 2006, the parties stipulated would apply to this case. Tr. 38.

## I. This Case Should Be Decided Based Upon The Administrative Record

The Court possesses jurisdiction to entertain this action pursuant to the bid protest jurisdiction of the Tucker Act, 28 U.S.C. § 1491(b)(1). Section 1491(b)(4) requires the Court to "review the agency's decision pursuant to the standards set forth in section 706 of Title 5," the Administrative Procedure Act ("APA").

It is well-settled that the APA does not permit the Court to undertake a de novo review of agency action, but rather limits the Court to a consideration of whether the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," based solely upon the record before the agency. 5 U.S. C. §§ 702, 706(2)(A).[2] In reviewing agency action pursuant to this deferential standard, "'the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)).

Limiting judicial review of agency action to the administrative record reflects the ultimate standard of review under the APA, which presumes the validity of agency action and precludes the judiciary from substituting its judgment for that of the agencies entrusted by Congress to implement and administer various governmental programs. See e.g., Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 557-58 (1978). "'To permit an administrative determination to be attacked or supported in court by new evidence,' the Supreme Court admonished, 'would substitute the court [for] the administrative

[2] Section 706(2) of the APA provides that, in reviewing the validity of agency action, "the court shall review the whole record or those parts of it cited by a party."

tribunal . . . .'" Doraiswamy v. Secretary of Labor, 555 F.2d 832, 840 (D.C. Cir. 1976) (citation omitted).

Therefore, in determining whether to look outside of the record for an explanation of an agency decision, the Court must start its analysis with the presumption of regularity that attaches to agency decision-making. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1338 (Fed. Cir. 2001) ("Because of that presumption of regularity, the agency should not be required to provide an explanation unless that presumption has been rebutted by record evidence suggesting that the agency decision is arbitrary and capricious. The litigant challenging that presumption necessarily bears a heavy burden.") (citation and footnote omitted).

Although the court in Impresa allowed the taking of one limited deposition to obtain an explanation for the contracting officer's determination, it noted that "[t]his is a most unusual case." Id. at 1341. As the court expressly cautioned: "[W]e wish to make clear that we are not ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision. Such inquiries are inappropriate." Id. at 1329. Emphasizing the point, the court further stated, "we wish to emphasize that such discovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's . . . determination." Id. at 1340-41.

## **II. OTI Has Failed To Meet Its Heavy Burden For The Requested Discovery**

As explained above, the issue before the Court is whether OTI has made a sufficiently strong preliminary showing that the decision of the Government Printing Office ("GPO") to [ ] was arbitrary or capricious in order to justify any or all of the six requested depositions. In view of the foregoing standards,

OTI has not met its "heavy burden" to justify deposing any of the six individuals it has identified and, thus, it's motion should be denied.

**A. The Administrative Record Contains All Materials Required By This Court's Rules**

This case does not present the special circumstances in Impresa, i.e., an explanation for the contracting officer's action was not apparent from the record. 238 F.3d at 1337. The record before the Court contains the information necessary for the Court to ascertain the basis for the contracting officer's decision challenged by OTI.

As indicated above, augmenting the administrative record through depositions and other testimony is the exception, and not the rule. See also Stapp Towing Inc. v. United States, 34 Fed. Cl. 300, 307-08 (1995) (discovery outside the administrative record is the exception rather than the rule in bid protests). Yet, OTI claims just the opposite – that "[d]epositions and testimony are regularly allowed to enhance the information before the Court." Pl. Br. at 9. OTI's suggestion that depositions are appropriate in the context of this APA review is a fundamental misstatement of law. It is obvious from OTI's description of the depositions it seeks that OTI is not asking the Court to supplement the record but to create a new record. OTI's request to "enhance" the information before the Court and "shed light" upon its arguments clearly demonstrates that it seeks to create a new record. OTI utterly fails to identify the "gaps and silences" it seeks to fill. OTI cannot identify any error by GPO, it hopes to find one.

**1. OTI's Request To Depose The Contracting Officer Should Be Denied**

As reflected in the administrative record, all three contractors, OTI, [ ], passed all of the initial testing phases at GPO, the Department of State, and APTISS. The administrative record also contains all of the National Institute of Standards and Technology

("NIST") testing methods, procedures, applicable standards, and test results, which are contained in the NIST report. AR 188-297. This information was relied upon and interpreted by both the contracting officer and the contracting officer's technical representative. Their reasoning, as well as every piece of information relied upon, are clearly and explicitly stated in their respective reports and memoranda. Thus, the administrative record is complete in its present state.

Nevertheless, OTI attempts to create some ambiguity in the record in order to improperly supplement it. It does so by claiming that the record contains "post-hoc rationalizations" which must be explained. Pl. Br. at 7. The sole record evidence of this is the fact that the contracting officer's Determination and Findings ("D&F") regarding OTI is undated. AR 40. OTI claims that the only way to clarify this matter is to depose the contracting officer, Albertha Broadnax. Id. at 7-8. OTI is wrong. Indeed, the D&F was created by the contracting officer following her receipt of the report from the contracting officer's technical representative ("COTR"), Richard Grasso, and prior to the transmittal of the letter to OTI notifying it that [

]. It is absurd to suggest that the contracting officer's decision to convey notice of OTI's failure of the tests conducted by NIST is a "post hoc rationalization." Had the contracting officer never created that D&F, the result would be the same – OTI's elimination for failing the NIST tests. It was a mere oversight by the contracting officer that she did not date the D&F regarding OTI at the time she signed it, unlike when she signed and dated the D&F for [

].[3] At most, this fact can be verified by a one-page affidavit.

---

[3] These two D&Fs establish the contracting officer's practice of finalizing and memorializing her decisions prior to sending out the vendor notification letters. This pattern is entitled to a presumption of regularity that cannot be overcome by OTI's mere suspicion that something improper, i.e., a post-hoc rationalization, occurred.

Additionally, there is no missing e-mail correspondence as alleged by OTI. OTI claims that there was no e-mail response from Richard Grasso to Albertha Broadnax regarding e-mail messages from December 2005 and January 2006, both more than six months prior to OTI's [ ]. To begin, there is no relation between these e-mail messages and [ ]. The December 2005 e-mail was sent prior to OTI's third submission for testing under the Solicitation. In it, the contracting officer discusses whether OTI is entitled to a further schedule accommodation in the testing process as well as the overall testing schedule for the other contract awardees. The January 24, 2006 e-mail is equally irrelevant as it is nothing more than the contracting officer's attempt to verify what is essentially a promotional e-mail by OTI touting the alleged benefits of its product and its compliance with the Solicitation's specifications.

Additionally, Mr. Grasso did not respond to these e-mail messages by e-mail, but instead he responded verbally. Again, although it is irrelevant, this fact can be verified in a short affidavit, if necessary. Thus, there is no need for any deposition of Ms. Broadnax, let alone a four-hour deposition.

**2. Testimony Regarding The Berlin Conference Is Irrelevant To The Present Case, Thus OTI's Request To Depose Individuals From That Conference Should Be Denied**

OTI also seeks to depose three individuals, Tracy L. Minter, Curtis Nielson, and Frank Moss, regarding events alleged to have occurred at the "Berlin Conference." Pl. Br. at 8-10. OTI's request for the depositions of these individuals is even more indefensible. In its complaint OTI claims that at a conference in May 2006, it was unable to read one of the e-passports produced by Infineon, and that somehow this is an indication of disparate treatment between the contract awardees. Compl. ¶¶ 44-50; Pl. Br. at 9. OTI's request is a blatant fishing expedition.

It is entirely irrelevant that OTI was purportedly unable to read Infineon's product at the "Berlin Conference" last May. Not only was this conference outside the testing criteria and processes contained in, and established by, the Solicitation, the conference was not a part of the RFP in any way. The irrelevance of the conference is further cemented by the fact that the contracting officer – as demonstrated by her explicit D&Fs – did not consider the conference's results. Indeed, there is not a single shred of evidence that the contracting officer had any knowledge of the conference or its results.

OTI ignores the fact that more than a year ago Infineon successfully completed the very testing at NIST, [ ]. Any comparison that OTI attempts to draw between it and Infineon is of no import. Infineon successfully completed all testing under the Solicitation in order to receive an award under CLIN 5 by this time last year. Indeed, Infineon has already completed the CLIN 5 testing and has been issued a further contract award under CLIN 6, which is the production phase of the Solicitation.

As this Court indicated at the TRO hearing earlier this month, Infineon is in an entirely different position from the other three contract awardees who recently completed testing at NIST.[4] Tr. 32-33. Indeed, the only relevant inquiry for the Court at this time is whether the record reveals a rational basis for GPO's [ ]. The record currently before the Court reveals that the three remaining contract awardees were notified that they would have one final opportunity to submit passport covers that complied with the Solicitation for testing. AR 1-2; AR 304-06; AR 312. The record also reveals that all three contractors passed the preliminary phases of testing at

4 For this reason, OTI's request to supplement the administrative record with Infineon's test results (Pl. Br. at 5-6) should also be denied.

GPO, the Department of State and APTISS, and that all three contractors' products were forwarded to NIST for testing as contemplated by the Solicitation. The record further reveals that NIST conducted blind testing of the three products without knowing which product was from which contractor (AR 188-297), and that only [ ]. AR 41-42; AR 308-09; AR 316-17.

The GPO's decision regarding which company was entitled to further contract awards under the Solicitation was a direct result of how the contractors performed during the Solicitation-specified testing process. This process included the blind testing conducted by NIST. The NIST test report, the COTR report regarding each contractor's performance, and the contracting officer's decisions – which are the only documents that form the basis of the GPO's decisions – are all contained in the administrative record currently before the Court. These documents spell out the full reasoning for the contracting officer's, the COTR's, and NIST's conclusions and identify all testing results relied upon as support for their decisions. Importantly, the "Berlin Conference" results are not identified in any of these documents for any purpose, including as a means for evaluating vendor performance. Thus, the "Berlin Conference" is irrelevant.

Assuming <u>arguendo</u> that these three individuals would testify that [ ], such testimony was not considered by the contracting officer in her evaluation of which contractors were eligible for further contract awards pursuant to CLIN 5, nor is it relevant to the testing that was done pursuant to the Solicitation. Indeed, any testimony regarding the "Berlin Conference" would be irrelevant to the inquiry before the Court. Thus, it is quite clear that OTI is asking this Court to disregard the clear instruction of the Federal Circuit and to create a new record to review, rather than base its

decision upon the administrative record created by the decision process of the agency. Discovery should not be ordered unless evidence in the existing record raises serious questions of the rationality of the contracting officer's decision. Impresa, 238 F.3d at 1338. OTI's irrelevant inquiries are a far cry from serious questions regarding the rationality of eliminating OTI because it failed the independent tests necessary to continue under the Solicitation. Accordingly, this Court should not aid OTI in its attempted perversion of the bid protest process and this Court's mandate of limited record review.

**3. OTI's Request To Depose Richard Grasso Is Unfounded**

OTI also seeks to depose the COTR, Richard Grasso, regarding how he "interpreted the NIST test results," "what he considered to come to his conclusions," and alleged "gaps and silences in the administrative record." Pl. Br. at 7, 10. Again, OTI wants to embark upon a fishing expedition. It is plain to see upon the face of Mr. Grasso's report to the contracting officer how he came to his conclusions and recommendations – he did so based upon all of the test results, including the NIST test results. AR 188-297. His report (AR 129-303) is unambiguous and is derived directly form the NIST test report. Additionally, as explained above, there are no unexplained "gaps or silences in the AR" which would necessitate a deposition. Pl. Br. at 10. OTI's dissatisfaction with its performance at NIST, as fully supported by the thorough and detailed NIST test results, does not alone create a "gap" or "silence" in the administrative record. Accordingly, the Court should deny OTI's request to depose Richard Grasso.

**4. OTI's Request To Depose Personnel From NIST Should Be Denied**

Finally, OTI seeks to depose the "NIST testers," ostensibly because the administrative record is "silent as to precisely how the NIST testing was performed." Pl. Br. at 11. Again, such

depositions are not necessary given the detailed test procedures and results delineated in the NIST report. See, e.g., AR 212-215, 289-297. Indeed, the NIST test report is more than 100 pages in length (AR 188-297) and details the methods, processes, and procedures undertaken for the various tests as well as the standards for such tests. In addition to its detailed findings, it contains pictures as well as graphs of test results. As demonstrated by the administrative record, the NIST test report is comprehensive and complete.

Nevertheless, OTI seeks to challenge the completeness of the NIST report as well as the blind testing conducted by the professionals at NIST; however, OTI has failed to identify any record evidence that the tests were performed incorrectly or that there was any other reason for OTI's failure in the load modulation testing other than its product was defective. Accordingly, OTI is unable to identify any basis upon which this Court could order depositions to supplement the administrative record. The Court should deny OTI's request to depose the "NIST testers."[5]

**B. OTI's Discovery Request Is Not "Narrowly Tailored"**

OTI claims that its discovery requests are "narrowly tailored" (Pl. Br. at 14); however, it seeks multiple depositions covering a myriad of irrelevant topics. As detailed above, OTI seeks no fewer than six depositions, each a half-day in duration. Pl. Br. at 15. That is a minimum of three full days of depositions. OTI's request to supplement an administrative record which is essentially based upon an independent test report with three days of depositions is outlandish. The transcripts would likely exceed the volume of the administrative record by several fold. That is exactly what this Court should not do – create a new record.

---

[5] Moreover, the NIST Electromagnetics Division that conducted the load modulation testing is located in Boulder, Colorado. Thus, it would be burdensome to require multiple individuals to travel to Washington, D.C. for OTI's requested depositions.

In support of its request, OTI cites Orion International Technicians. v. United States, 60 Fed. Cl. 338, 345 (2004); however, Orion does not support OTI's request for the half dozen depositions it seeks. The plaintiff in Orion requested four depositions, including that of a key contracting officer, a request which the court denied. Id. at 344-47. Instead, the court permitted the plaintiff to submit certain court-approved interrogatories to only two of the four witnesses whom plaintiff wished to depose. Moreover, OTI has requested the depositions of more individuals (at least six) than were granted in any of the cases cited by OTI in support of its motion. See Pl. Br. at 9-10.

Accordingly, we request that the Court deny OTI's request for leave to take depositions. In the alternative, should the Court determine that there are specific questions that must be answered to clarify the existing record, we propose that the contracting officer execute a short affidavit clarifying the Court's specific questions.

**C. If Permitted, Depositions Should Be Strictly Limited**

Contrary to its assertion (Pl. Br. at 2, n.1), several of the issues about which OTI seeks to depose the identified witnesses touch directly upon their decision making processes. Because OTI fails to make a "strong preliminary showing of bad faith" or malice upon the part of any proposed deponent or any other Government employee, no such questioning should be permitted. See Terrell v. United States, 7 Cl. Ct. 171, 174 n.2 (1984). See generally Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420-21 (1971).

As previously indicated, OTI seeks to inquire about the deponents' thought processes in reaching the decision to [ ]. See, e.g., Pl. Br. at 10 ("what he considered to come to his conclusions and recommendations"). Such an inquiry is improper.

Even when this Court allows limited discovery to "clarify" the administrative record in bid protests, it generally strictly limits the scope of such discovery. E.g., United Intl. Investig. Serv., Inc. v. United States, 41 Fed. Cl. 312, 319 (1998) (depositions limited to four narrow issues); Cubic Applic'n, Inc. v. United States, 37 Fed. Cl. 339, 344-45 (1997) (permitting deposition only of contracting officer, only with respect to contents of affidavit filed in litigation). Indeed, the Federal Circuit in Impresa, finding the facts in that particular case to be one of those "rare occasions" where a deposition of the contracting officer was appropriate, stated:

> In ordering the deposition of the contracting officer, we wish to make clear that *we are not ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision. Such inquiries are inappropriate.* See, e.g., United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). The deposition is to be confined strictly to placing on the record the basis for the contracting officer's responsibility determination, that is, his grounds for concluding that JVC had a "satisfactory record of performance, integrity, and business ethics," including most particularly his assessment of the control issue."

238 F.3d at 1339 (emphasis added).

Given the Federal Circuit's express limitations in Impresa, OTI should not be permitted to inquire into any of the deponents' thought processes in making [ ]. OTI has failed to demonstrate any showing of bad faith, let alone "a strong preliminary showing of bad faith" in this case. Accordingly, "it is improper to permit inquiry into the mental processes or method by which an administrative decision maker reached his conclusions." Cochran v. United States, 3 Cl. Ct. 3, 4 (1983) (emphasis added).

Thus, should the Court determine, despite the above demonstration, that OTI has established that this is one of those "rare occasions" where the administrative record should be

augmented by deposition testimony, such testimony should be narrowly tailored. Indeed, it should be strictly limited to clarifying only those genuine issues that the Court determines are raised by the existing evidentiary record.

As indicated above, OTI magnanimously states that it "would not object to limiting the depositions to four hours per witness." Pl. Br. at 15. However, a half-day deposition for each witness is excessive. Subjecting any of these individuals to half-day depositions would be burdensome and excessive. Accordingly, no deposition should exceed one hour in length.

**III. OTI's Request To Supplement The Administrative Record Makes A Mockery Of What A Bid Protest Is Designed To Accomplish**

OTI also seeks to supplement the administrative record with documents that the contracting officer, Ms. Broadnax, did not consider in arriving at her decision that [

5]. Specifically, OTI seeks to supplement the record with test results of its product from three laboratories it retained for other purposes. Such supplementation would be wrong and antithetic to the very notion of record review. There is no clearer evidence of OTI's request for de novo review than its request to include its test results from laboratories that it retained to test its own product. These test results were not before the GPO [

].

OTI claims that the admission of its own test results by the laboratories it retained would not be proffered for "the Court to evaluate the sufficiency of OTI's product," but rather to demonstrate that the GPO "did not abide by international standards" or that it "performed an incorrect technical evaluation." Pl. Br. at 12. However, OTI's bought and paid for test results

would do neither. Whatever product that was tested by the "independent laboratories" retained by OTI is of no relevance to the product that OTI provided to GPO for testing under the Solicitation. The fact remains that the product [ ], and other tests performed outside of the Solicitation have no bearing on the performance of OTI's product, or lack their of, during formal testing by GPO. Supplementing the administrative record with the irrelevant test results would, in no way, assist the Court with its review of the record in this matter. It would serve only to encumber it with irrelevant material.

Additionally, OTI seeks leave of the Court "to permit its expert consultant to testify (in the form or a declaration, report and/or live testimony)" regarding numerous topics related to the testing conducted by NIST. Pl. Br. at 13-14. Again, OTI attempts to encumber the record, this time with irrelevant testimony from its unidentified paid consultant/expert. OTI provides scant support for its request for such supplementation other than to state that it would "assist the Court's understanding of the technical evaluation and will address Plaintiff's alleged prejudice." Pl. Br. at 14. Neither justification warrants the relief that OTI seeks.

It is not necessary for the Court to understand the specific ISO/ICAO standards and how such testing for these standards is conducted in order to conduct its review of the record to determine if the GPO's [ ]. Yet, by requesting that its paid expert testify in this matter, upon the topics that it has identified, OTI is essentially asking this Court to substitute its judgement for not only that of the contracting officer, but for that of the professionals at NIST as well.

Because the record contains the information that GPO used in making its decision in this matter, the proper response to OTI's bid protest is not to add additional deposition testimony,

documentation, or expert testimony to that record, but simply to weigh the information already in the record in order to determine whether the GPO's decision as to OTI complied with APA standards, i.e., whether it was rationally based. In this instance, given the present administrative record, there can be no doubt that it was indeed rational.

As currently constituted, the administrative record contains the agency's explanations, prepared at the time it made its decision. To the extent OTI argues that GPO's actions are arbitrary or capricious, it may do so in its motion for judgment on the administrative record, but the record filed with the Court contains the agency's decisions and reasoning with respect to its [ ].

## CONCLUSION

For the reasons stated above, we respectfully request that the Court deny OTI's motion for leave of the Court to supplement the administrative record. Not only should the Court deny OTI's request for any depositions, it should deny OTI's request to supplement the administrative record by other means including the addition of its own test results of its product and testimony of its paid expert. Supplementation of the record in this manner, with copious materials that were never considered by the contracting officer in making her decision, would turn this limited record review into an impermissible de novo review by this Court.

Alternatively, we request that the Court authorize us to supplement the record with a short affidavit from the contracting officer, Ms. Broadnax, verifying the date of the D&F and the fact that there were no responsive e-mail messages that are absent for the record.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Donald E. Kinner

DONALD E. KINNER
Assistant Director

s/Richard B. Evans

OF COUNSEL:
JENNIFER R. SEIFERT
Assistant General Counsel
Government Printing Office

RICHARD B. EVANS
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tele: (202) 353-7760
Fax: (202) 305-7643

August 29, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on October 25, 2006, an agreed-upon redacted copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE OF COURT TO SUPPLEMENT ADMINISTRATIVE RECORD " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Richard B. Evans